J. Randall Jones, Esq. (#1927)
r.jones@kempjones.com
Michael J. Gayan, Esq. (#11135)
m.gayan@kempjones.com
KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
Facsimile: (702) 385-6001

Robin L. Cohen, Esq. (*pro hac vice* to follow)
Marc T. Ladd, Esq. (*pro hac vice* to follow)
Jason D. Meyers, Esq. (*pro hac vice* to follow)
COHEN ZIFFER FRENCHMAN
& MCKENNA LLP
1350 Avenue of the Americas
New York, NY 10019
Telephone: (212) 584-1890
Facsimile: (212) 584-1891
rcohen@cohenziffer.com
mladd@cohenziffer.com
jmeyers@cohenziffer.com

*Attorneys for Plaintiffs Las Vegas Sands, Inc. n/k/a Las Vegas Sands, LLC & Las Vegas Sands Corp.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LAS VEGAS SANDS, INC. n/k/a LAS VEGAS SANDS, LLC; and LAS VEGAS SANDS CORP.<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

Las Vegas Sands, Inc. n/k/a Las Vegas Sands, LLC and Las Vegas Sands Corp. (collectively, "LVS"), by and through its undersigned counsel, for its Complaint against Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("AIG"), alleges as follows:

## INTRODUCTION

1. This action seeks declaratory relief and damages for breach of contract, violations of the Nevada Unfair Claims Practices Act, and breach of the covenant of good faith and fair dealing, arising out of AIG's long-standing, bad faith refusal to acknowledge and then honor its contractual obligations under a private company liability insurance policy to pay LVS's defense and settlement costs incurred in an underlying lawsuit styled *Richard Suen & Round Square Co. v. Las Vegas Sands Corp., et al.*, No. A493744 (Nev. Dist. Ct., Clark Cnty.) (the "*Suen* Action").

2. AIG's willful ignorance of its obligations to LVS began almost immediately after the *Suen* Action was first filed in Nevada state court in October 2004. The *Suen* Action alleged, *inter alia*, that the plaintiffs had negotiated with LVS in 2001 to assist LVS in obtaining a gaming concession to conduct gambling-related activities in the Macau Special Administrative Region ("Macau SAR"), such as by introducing LVS to prominent government officials. The plaintiffs also alleged that after LVS obtained a subconcession from the Macau SAR in 2002, LVS would not compensate plaintiffs for the value of the alleged services that they claimed they had rendered to LVS.

3. The *Suen* Action plaintiffs' original complaint alleged that the plaintiffs had an enforceable contract with LVS for these services, which LVS breached, and that LVS had committed fraud upon the plaintiffs when they refused to pay. However, and in the alternative assuming there was no contract, plaintiffs also alleged that LVS was liable under quantum meruit for the value of the alleged work they had performed for LVS. In May 2005, the plaintiffs filed an amended complaint that elaborated upon these allegations and added a new claim for breach of the covenant of good faith and fair dealing.

4. At the time the *Suen* Action was filed, LVS was an insured under a Directors, Officers and Private Company Liability Insurance (Including Employment Practices and

Securities Liability) Policy, No. 360-88-71 (the "Policy") sold by AIG. The Policy covers, *inter alia*, Claims made against LVS for any alleged Wrongful Act, defined to include any "error, misstatement, misleading statement, omission or act" by LVS.

5. Because the allegations in the *Suen* Action fell squarely within the coverage grant of the Policy, LVS immediately gave notice to AIG of the *Suen* Action after it was filed so AIG could fulfill its broad duty to defend LVS and/or pay LVS's defense costs under the Policy. And, almost as quickly as it received that notice, AIG made up its mind to deny all coverage.

6. In a terse letter sent in November 2004, AIG contended that any coverage for the entire *Suen* Action was excluded under a Policy exclusion for liability under an "express contract or agreement," ignoring that LVS's potential liability for plaintiffs' quantum meruit claim only existed in the *absence* of an express contract. In fact, AIG did not even address LVS's coverage for the fraud count in the complaint, and then never followed up again with its insured.

7. Without any support from its insurer AIG, LVS defended itself against the allegations in the *Suen* Action for the next fifteen years, until the Action finally settled in 2019.

8. AIG only revisited its obligations one more time, two years earlier in 2017, when LVS again sought coverage for the *Suen* Action. Even though at this point in the *Suen* Action it had been confirmed there was no express contract between the *Suen* plaintiffs and LVS, AIG nevertheless again denied coverage to LVS based on the Policy's exclusion for contractual liability. AIG also cited additional exclusions for illegal profit and "intentional fraudulent or criminal conduct," even though neither applied, nor had such conduct been established in the *Suen* Action as required by these exclusions. AIG did, however, acknowledge potential coverage for plaintiffs' fraud count—thirteen years too late.

9. At the time of settlement in the *Suen* Action, LVS incurred defense and settlement costs well in excess of the Policy's $20 million limit, none of which have been paid by AIG, despite the fact that AIG had a contemporaneous, years-long continuing obligation to defend LVS and/or pay LVS's defense costs incurred in the *Suen* Action. With the *Suen* Action resolved, LVS is seeking to recoup those amounts that AIG should have been paying the entire time.

10. None of the defenses raised by AIG, including the Policy's narrow contractual liability exclusion, provide a basis for AIG to deny coverage for the *Suen* Action, nor did AIG have any grounds to ignore unjustifiably the existence of other covered claims in the *Suen* Action, including claims for fraud and quantum meruit.

11. Because AIG's denial of coverage was erroneous and in bad faith, LVS brings this action for breach of contract and declaratory judgment that it is entitled to the full amount of the Policy limit for the *Suen* Action, punitive damages, and for violations of NRS 686A.310 and breach of the covenant of good faith and fair dealing due to AIG's incomplete and bad faith handling and denial of LVS's covered claim without a reasonable basis.

## THE PARTIES

12. The Policy was sold to Interface Group Holding Company, Inc. ("Interface") as the Named Entity and covered "Company." The Policy was amended via Endorsement to include Las Vegas Sands, Inc. as a covered "Company" under the Policy. On July 28, 2005, Las Vegas Sands, Inc. converted into Las Vegas Sands, LLC, whose sole member and parent corporation is Las Vegas Sands Corp., a Nevada corporation with its principal place of business in Nevada. LVS is a preeminent developer and operator of world-class integrated resorts.

13. Upon information and belief, Defendant AIG is a corporation organized and existing under the laws of Pennsylvania with its principal place of business in New York, New York. Upon information and belief, AIG is authorized to sell or write insurance in Nevada and, at all material times, has conducted and continues to conduct substantial insurance business in Nevada.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties to the action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

15. This Court has personal jurisdiction over AIG because AIG is authorized either to sell or to write insurance in the State of Nevada and/or, at all relevant times, has conducted business within the State of Nevada.

KEMP JONES, LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

16. Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391(b).

17. This Court has the power to declare the parties' rights and obligations under 28 U.S.C. § 2201.

## FACTUAL ALLEGATIONS

**A.    THE POLICY**

18. As part of its risk management efforts, Interface/LVS annually purchased insurance, including directors and officers and private company insurance coverage, that was intended to insure LVS for claims alleging Wrongful Acts on the part of LVS and/or any of its directors and officers.

19. In exchange for a significant premium, AIG issued the Policy for the policy period of October 6, 2003 to October 6, 2004, which period was subsequently extended by AIG to December 31, 2004. The Policy provides $20 million in coverage in excess of a $250,000 self-insured retention for claims against the insured Company, *i.e.*, LVS.

20. The Policy provides broad coverage for both LVS and its executives. Specifically, the Policy provides that AIG "shall pay the Loss of [LVS] arising from a:

(i)    Claim first made against [LVS], or

(ii)   Claim first made against an Individual Insured,

during the Policy Period or the Discovery Period (if applicable) and reported to [AIG] pursuant to the terms of this policy for any actual or alleged Wrongful Act, but, in the case of (ii) above, only when and to the extent that [LVS] has indemnified the Individual Insured for such Loss[.]"

21. The coverage grant further provides that AIG "shall, in accordance with and subject to Clause 8 [Defense Costs, Settlements, Judgments (Including the Advancement of Defense Costs)], advance Defense Costs of such Claim prior to its final disposition."

22. The Policy defines a Claim, in relevant part, as "a civil . . . proceeding for monetary or non-monetary relief which is commenced by . . . service of a complaint or similar proceeding."

23. Wrongful Act is defined as, "with respect to [LVS], any breach of duty, neglect, error, misstatement, misleading statement, omission or act by [LVS]."

5

24. Loss is defined in the Policy, in relevant part, as "damages . . . judgments, settlements, pre- and post-judgment interest, and Defense Costs."

25. The Policy defines Defense Costs, in relevant part, as the "reasonable and necessary fees, costs and expenses consented to by [AIG] resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries of officers or Employees of [LVS]."

26. Under the Policy, while AIG does not automatically assume the defense, AIG "shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent," if the insured tenders the defense to AIG within thirty days of a Claim being first made. The Policy further provides that, "[r]egardless of whether the defense is so tendered, [AIG] shall advance Defense Costs (excess of the applicable retention amount) of such Claim prior to its final disposition."

27. Indeed, the Policy repeatedly provides that AIG has a continuing obligation to defend or pay LVS's Defense Costs while the underlying Claim is ongoing, *i.e.* that AIG "shall advance nevertheless at the written request of [LVS], Defense Costs prior to the final disposition of a Claim" and "[i]n all events, [AIG] must advance Defense Costs payments pursuant to the terms herein prior to the final disposition of a claim."

28. The Policy also defines Individual Insureds, in relevant part, as "any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of [LVS], but only in their capacities as such."

29. AIG has based its denial of coverage solely on Exclusion 4(h) of the Policy. Exclusion 4(h), as amended by Endorsement, states, in relevant part, that AIG "shall not be liable to make any payment for Loss in connection with a Claim made against an Insured alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company under any express contract or agreement" (the "Contract Exclusion").

30. AIG also has cited Exclusions 4(a) and 4(c) in the Policy, both amended by Endorsement to include "Final Determination Wording." As amended, Exclusion 4(a) provides, in relevant part, that AIG shall not be liable to make any payment for Loss in connection with a

Claim "arising out of, based upon or attributable to the gaining of any profit or advantage to which a final adjudication adverse to the Insured(s) or an alternative dispute resolution proceeding establishes the Insured(s) were not legally entitled" (the "Illegal Profit Exclusion").

31. Exclusion 4(c), as amended by Endorsement, provides that AIG will not be liable for Loss in connection with a Claim "arising out of, based upon or attributable to the committing of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law, if a judgment or other final adjudication adverse to the Insured(s) or an alternative dispute resolution proceeding establishes that such criminal, fraudulent, dishonest act or willful violation of any statute, rule or law occurred" (the "Criminal Conduct Exclusion").

B. **THE *SUEN* ACTION**

32. On or about October 15, 2004, plaintiffs Richard Suen and Round Square Company Limited ("Round Square") filed the *Suen* Action in the District Court of Clark County, Nevada, against LVS, LVS Chairman and Chief Executive Officer Sheldon Adelson, and former LVS executive William Weidner. See **Exhibit A**, attached hereto. During the relevant times, Mr. Suen conducted business in Hong Kong, the Macau SAR, and the People's Republic of China ("PRC") and Round Square was a company registered in Hong Kong, partially owned by Suen.

33. The *Suen* plaintiffs' complaint alleged that in the early 2000s, they reached out to LVS and Messrs. Adelson and Weidner, telling LVS they had government connections in the Macau SAR and could provide assistance to LVS in obtaining a concession to begin conducting gaming, casino, and resort activities within the Macau SAR in light of the Macau SAR's newly announced intentions to liberalize the government's gaming laws.

34. According to the *Suen* plaintiffs they, *inter alia*, set up meetings between LVS and high-ranking government officials with the PRC, after which LVS and plaintiffs exchanged faxes about potential compensation for plaintiffs' alleged efforts. However, negotiations between LVS and plaintiffs concerning any payment for plaintiffs' alleged efforts fell through.

35. Ultimately in 2002, the Macau SAR gave LVS a subconcession that permitted LVS to build, finance, and operate casinos, and two years later, Suen and Round Square brought suit for claims of breach of contract, fraud, and quantum meruit. On or about May 17, 2005, the

*Suen* plaintiffs filed an amended complaint that largely tracked the allegations of the original complaint, and added a cause of action for breach of the covenant of good faith and fair dealing (the "Amended Complaint," attached hereto as **Exhibit B**).

36.  Prior to the first trial in the *Suen* Action, the trial court granted summary judgment to LVS on the breach of contract claim holding there was no contract, and also dismissed the breach of the covenant of good faith and fair dealing and fraud causes of action. The *Suen* Action went to trial, and the jury awarded plaintiffs approximately $43 million on the claim for quantum meruit, not including prejudgment interest.

37.  Both parties appealed. On or about November 17, 2010, the Supreme Court of Nevada issued a decision that affirmed in part and reversed in part the trial court's summary judgment rulings. First, the Supreme Court affirmed the dismissal of the plaintiffs' fraud count, rejecting plaintiffs' argument that there was evidence of intentional wrongful conduct by LVS. Second, however, the Court held that dismissal of the breach of contract claim was in error. The Court held there was a genuine issue of material fact as to whether LVS believed it "was dealing with Suen or with Suen acting on behalf of a group that included Round Square," such that a contract could have potentially been formed between the parties. The Supreme Court ordered a new trial.

38.  At the second trial in the spring of 2013, the existence of any express contract between plaintiffs and LVS was again rejected. However, the jury awarded plaintiff Round Square approximately $70 million on the quantum meruit claim.

39.  LVS appealed the 2013 verdict. On or about July 22, 2016, the Supreme Court of Nevada again ordered a new trial, agreeing with LVS that the jury's quantum meruit award was not supported by the evidence. LVS continued defending itself against the claims in the *Suen* Action until 2019, when the parties entered into a confidential settlement resolving the case.

C.  **AIG'S WRONGFUL DENIAL OF COVERAGE FOR THE *SUEN* ACTION**

40.  After it was sued in the *Suen* Action in October 2004, LVS, through its broker Aon, gave prompt notice of the *Suen* Action to AIG, and attached the *Suen* plaintiffs' original complaint.

8

41.     In a short letter dated November 30, 2004 (the "November 2004 Letter"), AIG denied coverage to LVS for the *Suen* Action. AIG acknowledged that LVS and Messrs. Adelson and Weidner were Insureds under the Policy, that the *Suen* Action was a "Claim," and that its allegations would trigger the Policy's coverage grant, but stated that "[r]egardless . . . the Policy does not provide coverage for the Complaint." According to AIG, "[a]s, the [*Suen*] plaintiffs' Claim is totally based upon and attributable to the alleged agreement [in the *Suen* Action], the Policy does not provide coverage for the Complaint" under the Contract Exclusion, Exclusion 4(h).

42.     While AIG's denial was based on the Contract Exclusion, the November 2004 Letter also cited various other exclusions as potentially applying, including the Illegal Profit and Criminal Conduct Exclusions, but AIG attempted no real analysis to justify those positions. For example, AIG claimed that the definition for "Loss" in the Policy would not include any amounts owed to the *Suen* plaintiffs, because Loss did not include "civil or criminal fines" or "matters . . . deemed uninsurable," without explaining how such damages would qualify as either.

43.     In truth, AIG quickly decided it would not cover any part of the *Suen* Action under the Contract Exclusion and washed its hands of LVS. The November 2004 Letter did not even address coverage for the fraud count, and AIG neglected to realize that the *Suen* plaintiffs brought a separate claim for quantum meruit, incorrectly stating that "[t]he [*Suen*] Complaint states two claims for relief, breach of contract and fraud." See **Exhibit C**.

44.     While the Contract Exclusion may have applied to the *Suen* plaintiffs' claim against LVS for breach of contract, AIG's obligation to defend and/or pay LVS's and Messrs. Adelson and Weidner's Defense Costs attached immediately upon the allegations for the quantum meruit and fraud causes of action.

45.     Indeed, a claim for quantum meruit exists only in the *absence* of an express contract or agreement (contrary to the terms of the Contract Exclusion), and the Policy specifically covers the alleged "Wrongful Acts" as the *Suen* plaintiffs alleged in the fraud count. With such little care given to its claim for coverage, LVS turned its focus toward defending itself against the *Suen* Action without the support of its insurer AIG.

46. Nevertheless, in 2017, following the Nevada Supreme Court's second decision in *Suen*, LVS again tried to get AIG to fulfill its contractual obligations for *Suen*. Despite claiming that it was "committed to working closely with [LVS] in the defense of" the *Suen* Action, in a letter dated June 29, 2017, AIG again denied coverage for the *Suen* Action. In reviewing the Amended Complaint that largely tracked the allegations in the original complaint, AIG now asserted that the Contract Exclusion applied to the quantum meruit claim, in addition to the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. However, AIG acknowledged potential coverage for the fraud claim. AIG requested additional documentation from the *Suen* Action, including billings by LVS's defense counsel. **Exhibit D**.

47. LVS wrote back one week later on July 6, 2017, providing the requested documentation, and challenging AIG's position that the Contract Exclusion, which applied only to Company liability under an "express contract or agreement," precluded coverage for the quantum meruit claim.

48. On or about August 8, 2017, AIG sent a letter arguing that LVS's reading of the Contract Exclusion was too narrow, and the Contract Exclusion excluded coverage for the quantum meruit claim because it applied to Loss from a Claim "***alleging, arising out of, based upon or attributable*** to" liability under an express contract or agreement. **Exhibit E**. AIG again ignored that *twice* the factfinders in the *Suen* Action found there was no express contract between the parties. *Id.*

49. In the August 8, 2017 letter, AIG again acknowledged potential coverage for the fraud claim that was dismissed years earlier, but claimed it was continuing its investigation. Lastly, AIG claimed that LVS's delay in following up with AIG all these years later—after AIG had issued a heedless denial that did not even address all the potentially covered allegations in the *Suen* Action—"violate[d], at a minimum" Clause 8 in the Policy, which required LVS to obtain AIG's consent before LVS paid for its own Defense Costs, costs that AIG had refused to cover.

50. The quantum meruit claim was not an allegation of "liability under an express contract or agreement," and it did not "arise out of" and was not "based upon" or "attributable to"

10

such an express contract, as required by the Contract Exclusion. Quantum meruit is a separate claim that only exists where there is no express contract.

51. Moreover, the Contract Exclusion by its plain terms, applied only to the liability of the "Company," and did not apply to any costs incurred—including Defense Costs for the breach claims—by Individual Insureds Messrs. Adelson and Weidner in the *Suen* Action.

52. Additionally, to the extent AIG relies on them, neither the Illegal Profit nor Criminal Conduct Exclusions ever applied to the *Suen* Action. No final adjudication or alternative dispute resolution proceeding established that LVS or Messrs. Adelson or Weidner ever profited illegally or engaged in criminal, fraudulent, dishonest acts, or willfully violated any statute, rule or law in the *Suen* Action.

53. Furthermore, AIG acted in bad faith by ignoring the covered allegations for fraud and quantum meruit in the *Suen* Action by hastily denying coverage in 2004, which LVS accepted at face value from its insurer to its detriment, and then was forced to defend itself for the next fifteen years in the *Suen* Action.

54. AIG's bad faith was only compounded in 2017, when LVS again reached out for coverage, and AIG attempted to backfill a denial for the quantum meruit claim—that it never denied coverage for in the first place in 2004—based on the Contract Exclusion, and AIG admitted that, at a minimum, Defense Costs were potentially covered for the fraud claim. But even in the face of this concession, AIG still contended that LVS breached Clause 8 of the Policy, even though, by denying coverage in 2004, AIG had no right to enforce Clause 8 in the first place.

55. The Policy constitutes a valid and enforceable contract between LVS and AIG. LVS has complied with all terms, conditions, and prerequisites to coverage set forth in the Policy, including payment of all premiums and exhaustion of the applicable retention.

56. Despite ignoring covered allegations in 2004, and then finally acknowledging potential coverage for the *Suen* Action in 2017, to this day, AIG has not paid a dime to LVS for the *Suen* Action.

11

**FIRST CAUSE OF ACTION**
**(Declaratory Relief)**

57. LVS repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

58. The Policy constitutes a valid and enforceable contract between LVS and AIG.

59. Pursuant to the terms of the Policy, AIG is obligated to pay LVS's losses, including LVS's and Messrs. Adelson and Weidner's Defense Costs and LVS's settlement of the *Suen* Action, up to the limit of the Policy.

60. Upon information and belief, AIG disputes its obligations to pay LVS for such losses.

61. An actual controversy of a justiciable nature presently exists between LVS and AIG concerning the proper construction of the Policy, and the rights and obligations of the parties thereto, with respect to losses incurred in connection with the *Suen* Action.

62. The issuance of declaratory relief by this Court will terminate the existing controversy among the parties.

63. Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment in favor of LVS and against AIG, declaring that AIG is obligated to pay all losses incurred in connection with the *Suen* Action, subject to the Policy limit, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper.

**SECOND CAUSE OF ACTION**
**(Breach Of Contract Against AIG For Duty To Defend/Defense Costs Coverage)**

64. LVS repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

65. Pursuant to the terms of the Policy, AIG is obligated to defend and/or pay LVS's losses, including LVS's and Messrs. Adelson and Weidner's Defense Costs, up to the limit of the Policy.

66. AIG has breached its obligations under the Policy by failing and refusing to defend and/or pay LVS for such Defense Costs.

12

67. LVS has complied with all terms, conditions, and prerequisites to coverage set forth in the Policy, including payment of all premiums and exhaustion of the applicable retention.

68. No conditions, exclusions, or provisions of the Policy bar coverage for any Defense Costs related to the *Suen* Action.

69. As a result of AIG's breach, LVS has suffered damages in an amount in excess of the Policy limit of $20 million, before prejudgment interest.

## THIRD CAUSE OF ACTION
### (Breach Of Contract Against AIG For Settlement Coverage)

70. LVS repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

71. Pursuant to the terms of the Policy, AIG is obligated to pay LVS's losses, including its settlement of the *Suen* Action, up to the limit of the Policy.

72. AIG has breached its obligations under the Policy by failing and refusing to pay LVS for such losses.

73. LVS has complied with all terms, conditions, and prerequisites to coverage set forth in the Policy, including payment of all premiums and exhaustion of the applicable retention.

74. No conditions, exclusions, or provisions of the Policy bar coverage for LVS's settlement of the *Suen* Action.

75. As a result of AIG's breach, LVS has suffered damages in excess of the Policy limit of $20 million, before prejudgment interest.

## FOURTH CAUSE OF ACTION
### (Violations Of The Nevada Unfair Claims Practices Act, NRS 686A.310)

76. LVS repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

77. It is an improper and unfair claims practice for an insurer transacting business in the State of Nevada to engage in certain activities in violation of NRS 686A.310, also known as the Nevada Unfair Claims Practices Act (the "Act").

78. AIG violated the Act by, among other things, misrepresenting to LVS and ignoring pertinent facts and/or insurance policy provisions regarding LVS's claim for coverage.

79. AIG violated the Act by, among other things, failing to effectuate prompt, fair, and equitable settlements of claims in which its liability has become reasonably clear.

80. AIG violated the Act by failing to adopt and implement reasonable standards for the prompt and full investigation and processing of LVS's claim.

81. AIG violated the Act by, among other things, failing to comply with various provisions of NAC 686A.660 by misrepresenting and failing to disclose all pertinent benefits, coverages, and other provisions of the Policy, and indeed, advising LVS that its claim for coverage was unsupported.

82. AIG's conduct constitutes oppression, fraud, and/or malice. Specifically, AIG, by acting as alleged above, consciously and without cause disregarded LVS's rights in bad faith during a time of crisis as LVS sustained substantial losses, and LVS is entitled to an award of punitive damages therefor in an amount to be determine at trial.

83. As a direct and proximate result of AIG's conduct, LVS has suffered and will continue to suffer damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

**FIFTH CAUSE OF ACTION**
**(Contractual Breach Of The Covenant Of Good Faith And Fair Dealing)**

84. LVS repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

85. The Policy constitutes a valid and enforceable contract between LVS and AIG.

86. Every contract imposes upon the contracting parties the duty of good faith and fair dealing, which requires that one party refrain from conduct that would prevent the other party from achieving its benefit in the bargain.

87. In breach of the implied covenant of good faith and fair dealing, AIG committed the acts alleged above for the purpose of consciously withholding from LVS the rights and benefits to which it is entitled under the Policy and without consideration of the interest of LVS

at least to the same consideration as its own interest.  In doing so, AIG breached the spirit of the contract between it and LVS.

88. AIG has breached the implied covenant of good faith and fair dealing by, among other things, (i) denying coverage without reviewing all the causes of action in the *Suen* Action, including quantum meruit, and forcing LVS to defend itself; (ii) neglecting to analyze coverage for the fraud cause of action until years later when it should have been defending LVS the entire time; (iii) asserting that LVS breached Clause 8 of the Policy even though AIG had wrongfully denied coverage and thus was without a basis to assert rights under that provision; (iv) asserting the Policy's Contract Exclusion even after it had been confirmed that there was no express contract between the underlying plaintiffs and LVS; and (v) willfully ignoring facts that were contrary to its position in rejecting LVS's claim, such as the basis for the quantum meruit claim.

89. AIG, by its conduct, has rejected LVS's claim without any reasonable basis and with knowledge, or reckless disregard of the fact, that no reasonable basis exists to withhold payment for LVS's claim.  AIG's acts are inconsistent with the reasonable expectations of its insured and are contrary to established claims practices and legal requirements and constitute bad faith.

90. As a direct and proximate result of AIG's conduct, LVS has suffered and will continue to suffer damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

**SIXTH CAUSE OF ACTION**
**(Tortious Breach Of The Covenant Of Good Faith And Fair Dealing)**

91. LVS repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

92. The Policy constitutes a valid and enforceable contract between LVS and AIG.

93. By virtue of AIG's relationship with LVS, a special relationship existed between AIG and LVS.  The relationship involved an insurance policy and was one characterized by elements of public interest, adhesion, and/or fiduciary responsibility.  AIG was in a superior and entrusted position and engaged in grievous and perfidious misconduct with respect to LVS.

15

94. Every contract imposes upon the contracting parties the duty of good faith and fair dealing, which requires that one party refrain from conduct that would prevent the other party from achieving its benefit in the bargain.

95. In tortious breach of the implied covenant of good faith and fair dealing, AIG committed the acts alleged above for the purpose of consciously withholding from LVS the rights and benefits to which it is entitled under the Policy and without consideration of the interest of LVS at least to the same consideration as its own interest. In doing so, AIG breached the spirit of the contract between it and LVS.

96. AIG has tortiously breached the implied covenant of good faith and fair dealing by, among other things, (i) denying coverage without reviewing all the causes of action in the *Suen* Action, including quantum meruit, and forcing LVS to defend itself; (ii) neglecting to analyze coverage for the fraud cause of action until years later when it should have been defending LVS the entire time; (iii) asserting that LVS breached Clause 8 of the Policy even though AIG had wrongfully denied coverage and thus was without a basis to assert rights under that provision; (iv) asserting the Policy's Contract Exclusion even after it had been confirmed that there was no express contract between the underlying plaintiffs and LVS; and (v) willfully ignoring facts that were contrary to its position in rejecting LVS's claim, such as the basis for the quantum meruit claim.

97. AIG's conduct constitutes oppression, fraud, and/or malice. Specifically, AIG, by acting as alleged above, consciously and without cause disregarded LVS's rights in bad faith during a time of crisis as LVS sustained substantial losses, and LVS is entitled to an award of punitive damages therefor in an amount to be determined at trial.

98. AIG, by its conduct, has rejected LVS's claim without any reasonable basis and with knowledge, or reckless disregard of the fact, that no reasonable basis exists to withhold payment for LVS's claim. AIG's acts are inconsistent with the reasonable expectations of its insured and are contrary to established claims practices and legal requirements and constitute bad faith.

99. As a direct and proximate result of AIG's conduct, LVS has suffered and will continue to suffer damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

**PRAYER FOR RELIEF**

**WHEREFORE**, LVS requests the following relief:

i. On the First Cause of Action, LVS requests that the Court enter a declaratory judgment in favor of LVS and against AIG that LVS's losses are covered under the Policy, declaring that AIG is obligated to pay LVS, subject to the Policy limit, for any losses incurred by LVS in connection with the *Suen* Action;

ii. On the Second Cause of Action, LVS requests that the Court enter judgment in favor of LVS and against AIG, awarding LVS damages in the amount of the full Policy limit of $20 million, plus consequential damages, and pre- and post-judgment interest to the extent permitted by law;

iii. On the Third Cause of Action, LVS requests that the Court enter judgment in favor of LVS and against AIG, awarding LVS damages in the amount of the full Policy limit of $20 million, plus consequential damages, and pre- and post-judgment interest to the extent permitted by law;

iv. On the Fourth Cause of Action, LVS requests that the Court enter judgment in favor of LVS and against AIG that AIG's conduct violates the Nevada Unfair Claims Practices Act, NRS 686A.310, awarding LVS damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, punitive damages, and pre- and post-judgment interest to the extent permitted by law;

v. On the Fifth Cause of Action, LVS requests that the Court enter judgment in favor of LVS and against AIG that AIG has violated the implied covenant of good faith and fair dealing, awarding LVS damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law;

vi. On the Sixth Cause of Action, LVS requests that the Court enter judgment in favor of LVS and against AIG that AIG has violated the implied covenant of good faith and fair dealing,

1  awarding LVS damages in an amount to be determined at trial, plus consequential damages,
2  attorneys' fees, punitive damages, and pre- and post-judgment interest to the extent permitted by
3  law;

4  vii.   On all Causes of Action, all pre-judgment and post-judgment interest as allowed by
5  law and all LVS's costs incurred as a consequence of having to prosecute this lawsuit, including
6  attorneys' fees; and

7  viii.   On all Causes of Action, awarding such other and further relief as the Court deems
8  just and proper.

### JURY DEMAND

LVS hereby demands a trial by jury on all issues so triable.

DATED this 14th day of March, 2022.

KEMP JONES, LLP

 /s/ J. Randall Jones
J. Randall Jones, Esq. (#1927)
Michael J. Gayan, Esq. (#11135)
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169

Robin L. Cohen, Esq. (*pro hac vice* to follow)
Marc T. Ladd, Esq. (*pro hac vice* to follow)
Jason D. Meyers, Esq. (*pro hac vice* to follow)
COHEN ZIFFER FRENCHMAN
& MCKENNA LLP
1350 Avenue of the Americas
New York, NY 10019

*Attorneys for Plaintiffs Las Vegas Sands, Inc. n/k/a Las Vegas Sands, LLC & Las Vegas Sands Corp.*