# EXHIBIT A

National Union's Production of the Directors, Officers and Private Company Liability Insurance Policy No. 360-88-71, Policy Period October 6, 2003 to October 6, 2004

# EXHIBIT A

**FORMS SCHEDULE**

Policy Number: 360-88-71
Division No:    4
Insured Name:  INTERFACE GROUP HOLDING COMPANY, INC.
               c/o ASSET PROTECTION SERVICES GROUP, INC.

Effective  Date: October 6, 2003
Expiration Date: December 6, 2004

Print date:   Oct 28, 2004
Printed by: Thomas R. Roginson
Phone # : 2136893910

Underwriter Name: Thomas R. Roginson
Underwriter Phone # : 213-689-3910

---

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ MNSCPT | MNSCPT | RELIANCE ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | SEVERABILITY OF APPLICATION |
| ☐ QE1978 | PENMAN | POLICY PERIOD EXPANDED |
| ☐ QE0470 | | POLICY EXTENSION ENDORSEMENT |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |

*Archive Copy*

ENDORSEMENT# 21

This endorsement, effective  *12:01 a.m.    October 6, 2003*          forms a part of
policy number  *360-88-71*
issued to     *INTERFACE GROUP HOLDING COMPANY, INC.*
              *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### RELIANCE ENDORSEMENT
### (STANDARD FORM)

In consideration of the premium charged, it is hereby understood and agreed that this
policy is issued in reliance upon the statements made and materials furnished to the
Insurer by the Named Entity in connection with all Directors, and Officers and Private
Company Insurance applications or requests furnished to the Insurer including prior
insurance applications or requests, and all statements made and materials incorporated in
the following specific documents issued or filed by the Company whether furnished
directly to the Insurer or indirectly to the Insurer from public sources available to the
Insurer at the time of such request(s):

1.    The Company's Annual report(s);
2.    The Company's Quarterly reports;
3.    The Company's interim financial statements;
4.    The Company's proxy statement(s)(or other Notices to Shareholders);
5.    The Company's indemnification provisions (and contracts, if any).


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*BRANCH*  Archive Copy  END 21

APP002

NU00011497

ENDORSEMENT# 22

This endorsement, effective  *12:01 a.m.    October 6, 2003*            forms a part of
policy number  *360-88-71*
issued to    *INTERFACE GROUP HOLDING COMPANY, INC.*
             *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SEVERABILITY OF APPLICATION

In consideration of the premium charged, it is hereby understood and agreed that in granting coverage under this policy to any one of the Insured(s), the Insurer has relied upon the declarations, and statements in the written application for coverage.

All such declarations and statements are the basis of such coverage and shall be considered as incorporated in and constituting part of the policy.

The written application for coverage shall be construed as separate applications for coverage by each Insured. With respects to the declarations and statements contained in such written applications for coverage, no statement in the application, or knowledge possessed, by any Insured(s) (other than knowledge or information possessed by the person(s) executing the application) shall be imputed to any other Insured(s) for the purpose of determining the availability of coverage with respect to Claims made against such other Insured(s).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*BRANCH* *Archive Copy* *END 22*

APP003

NU00011498

**ENDORSEMENT#** *23*

This endorsement, effective *12:01 a.m.    September 30, 2004*    forms a part of
policy number *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
            *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**POLICY PERIOD EXPANDED**

In consideration of the additional premium of ⌐**Redacted**⌐    (pro rata amount of the
annual premium), it is hereby understood and agreed that the Item on the Declarations
page entitled POLICY PERIOD is deleted in its entirety and replaced with the following:

POLICY PERIOD:        FROM: *October 6, 2003*    TO: *November 6, 2004*
(12:01 A.M. standard time at the address stated in Item 1.)

It is further understood and agreed that the Limit of Liability for the expanded Policy
Period shall be part of and not in addition to the Limit of Liability stated in the
Declarations page.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 023*

**BRANCH** *Archive Copy*

ENDORSEMENT# *24*

This endorsement, effective *12:01 a.m.    November 6, 2004*        forms a part of
policy number   *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
        *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### POLICY EXTENSION ENDORSEMENT

In consideration of the additional premium of    [Redacted] charged, it is hereby
understood and agreed Item 3. of the Declarations page is amended to read as follows:

ITEM 3.    POLICY PERIOD:    FROM: *October 6, 2003*    TO: *December 6, 2004*
        (12:01 A.M. standard time at the address stated in Item 1)

It is further understood and agreed that the extended Policy Period above shall in no way
be construed to provide a new limit of liability or an increase in the Limit of Liability as
stated in Item 4. of the Declarations page.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE


*END 024*

BRANCHive Copy

APP005

NU00011500

**FORMS SCHEDULE**

Policy Number: 360-88-71
Division No:    4
Insured Name:  INTERFACE GROUP HOLDING COMPANY, INC.
               c/o ASSET PROTECTION SERVICES GROUP, INC.

Effective  Date: October 6, 2003
Expiration Date: January 15, 2005

Print date:   Feb 7, 2005
Printed by: Thomas R. Roginson
Phone # :  2136893910

Underwriter Name: Thomas R. Roginson
Underwriter Phone # :  213-689-3910

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ QE1978 | PENMAN | POLICY PERIOD EXPANDED |
| ☐ QE0470 | | POLICY EXTENSION ENDORSEMENT |
| ☐ QE1978 | PENMAN | POLICY PERIOD EXPANDED |
| ☐ QE0470 | | POLICY EXTENSION ENDORSEMENT |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |

*Archive Copy*

**ENDORSEMENT#** *23*

This endorsement, effective *12:01 a.m.    September 30, 2004*    forms a part of
policy number  *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
        *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**POLICY PERIOD EXPANDED**

In consideration of the additional premium of ┌──────────┐ (pro rata amount of the
│ Redacted │
annual premium), it is hereby understood and agreed that the Item on the Declarations
page entitled POLICY PERIOD is deleted in its entirety and replaced with the following:

POLICY PERIOD:        FROM:*October 6, 2003*    TO:*November 6, 2004*
(12:01 A.M. standard time at the address stated in Item 1.)


It is further understood and agreed that the Limit of Liability for the expanded Policy
Period shall be part of and not in addition to the Limit of Liability stated in the
Declarations page.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*[signature]*

_____
AUTHORIZED REPRESENTATIVE


*END 023*

BRANCHive Copy

APP007
NU00011502

**ENDORSEMENT#** *24*

This endorsement, effective *12:01 a.m.    November 6, 2004*        forms a part of
policy number   *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
          *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### POLICY EXTENSION ENDORSEMENT

In consideration of the additional premium of   Redacted   charged, it is hereby
understood and agreed Item 3. of the Declarations page is amended to read as follows:

ITEM 3.    POLICY PERIOD:    FROM: *October 6, 2003*    TO: *December 6, 2004*
            (12:01 A.M. standard time at the address stated in Item 1)

It is further understood and agreed that the extended Policy Period above shall in no way
be construed to provide a new limit of liability or an increase in the Limit of Liability as
stated in Item 4. of the Declarations page.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 024*

BRANCHive Copy

**ENDORSEMENT#** *23*

This endorsement, effective *12:01 a.m.     September 30, 2004*     forms a part of
policy number  *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
          *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**POLICY PERIOD EXPANDED**

In consideration of the additional premium of  **Redacted**     (pro rata amount of the
annual premium), it is hereby understood and agreed that the Item on the Declarations
page entitled POLICY PERIOD is deleted in its entirety and replaced with the following:

POLICY PERIOD:          FROM:*October 6, 2003*     TO:*November 6, 2004*
(12:01 A.M. standard time at the address stated in Item 1.)

It is further understood and agreed that the Limit of Liability for the expanded Policy
Period shall be part of and not in addition to the Limit of Liability stated in the
Declarations page.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 023*

BRANCH Archive Copy

APP009

NU00011504

**ENDORSEMENT#** *24*

This endorsement, effective *12:01 a.m.    November 6, 2004*        forms a part of
policy number  *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
        *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### POLICY EXTENSION ENDORSEMENT

In consideration of the additional premium of    Redacted  charged, it is hereby
understood and agreed Item 3. of the Declarations page is amended to read as follows:

ITEM 3.    POLICY PERIOD:    FROM: *October 6, 2003*    TO: *December 6, 2004*
            (12:01 A.M. standard time at the address stated in Item 1)

It is further understood and agreed that the extended Policy Period above shall in no way
be construed to provide a new limit of liability or an increase in the Limit of Liability as
stated in Item 4. of the Declarations page.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 024*

BRANCH Archive Copy

APP010

NU00011505

## FORMS SCHEDULE

Policy Number: 360-88-71
Division No:   4
Insured Name: INTERFACE GROUP HOLDING COMPANY, INC.
              c/o ASSET PROTECTION SERVICES GROUP, INC.

Effective  Date: October 6, 2003
Expiration Date: October 6, 2004

Underwriter Name:Thomas R. Roginson
Underwriter Phone # : 213-689-3910

Print date:  Nov 3, 2003
Printed by:LETICIA MACAIRAN
Phone # : 2136893982

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ ENVPGE | LETTER | Envelope Page |
| ☐ CLETR2 | LETTER | Regular Broker Cover Letter |
| ☐ QE1718 | | EPL Pak Plus Insured Letter |
| ☐ NUSSUR | SURVEY | Policy Service Survey |
| ☐ QD0415 | 68461 | Private Edge Admitted DEC |
| ☐ QT0001 | 81285 | Tria Dec Disclosure Form |
| ☐ QS0424 | 68461 | DEC SIGNATURE FORM |
| ☐ QP0416 | 68462 | Private Edge admitted Policy Pages |
| ☐ QE1731 | APPMAN | Appendix A Securities Claim Panel Counsel List |
| ☐ QE2070 | APPMAN | Appendix A Employment Practices Claim Panel Counsel |
| ☐ QE0187 | 52160 | Nevada Amendatory - Cancellation/Nonrenewal |
| ☐ QE0534 | | Outside Entity Endorsement |
| ☐ QE0535 | 62739 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (broad form) |
| ☐ MNSCPT | MNSCPT | FINAL DETERMINATION WORDING |
| ☐ MNSCPT | MNSCPT | EXCLUSION (J) AMENDED TO SOLELY APPLY |
| ☐ MNSCPT | MNSCPT | CONTRACT EXCLUSION AMENDED |
| ☐ MNSCPT | MNSCPT | EXCLUSION K AMENDED |
| ☐ MNSCPT | MNSCPT | EXCLUSION L AMENDED |
| ☐ MNSCPT | MNSCPT | CLAUSE 8 AMENDED |
| ☐ MNSCPT | MNSCPT | PUNITIVE EXEMPLARY AND MULTIPLE DAMAGES COVERAGE |
| ☐ MNSCPT | MNSCPT | AMEND DEFINITION OF SUBSIDIARY |
| ☐ MNSCPT | MNSCPT | AMEND DEFINITION OF COMPANY |
| ☐ MNSCPT | MNSCPT | AMEND DEFINITION OF SECURITIES CLAIMS |
| ☐ QE0322 | | NO LIABILITY  PROVISION DELETED |
| ☐ MNSCPT | MNSCPT | AMEND DISCOVERY - ONE YEAR BILATERAL PREMIUM @ [Redacted] |
| ☐ MNSCPT | MNSCPT | FAILURE TO EFFECT AND/OR MAINTAIN INSURANCE EXCLUSION |
| ☐ QE3247 | PENMAN | Separate Retention For Third Party Employment Practices Claims |
| ☐ QE3066 | PENMAN | Exclusion (O) Amended (FLSA) |
| ☐ QE3071 | 80332 | TRAVEL ACCIDENT INSURANCE ENDORSEMENT (Business Trip) |
| ☐ QE3164 | 81288 | Terrorism Exclusion - Except TRIA Endorsement |
| ☐ F2261L | LETTER | 2261 cover letter to Broker for ALL LOBS' |
| ☐ F2261B | LETTER | 2261 cover letter to CS agent |
| ☐ F2261A | 2261 | C/S Endorsement to be sent to c/s agent for all LOBS. |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |
| ☐ | | |

*Archive Copy*

**National Union Fire Insurance Company of Pittsburgh, Pa.**
777 SOUTH FIGUEROA STREET
17TH FL
LOS ANGELES, CA 90017
213- 689- 3500



November 3, 2003

Direct Dial:   213- 689- 3910

JOE MCMANUS
AON RISK SVCS, INC. OF SO. CA.
707 WILSHIRE BLVD., SUITE 6000
LOS ANGELES, CA 90017

RE:  **INTERFACE GROUP HOLDING COMPANY, INC.**
     **c/o ASSET PROTECTION SERVICES GROUP, INC.**

Policy Number:   **360- 88- 71**

Dear JOE

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

Thomas R. Roginson
Underwriter

Enc.

310307

**BRANCH**Archive Copy

APP012
NU00011507

**AIG** **AMERICAN INTERNATIONAL COMPANIES** ®

175 Water Street
New York, NY 10038

*November 3, 2003*

*INTERFACE GROUP HOLDING COMPANY, INC.*
*c/o ASSET PROTECTION SERVICES GROUP, INC.*

*3355 LAS VEGAS BOULEVARD SOUTH*
*LAS VEGAS, NV 89109*

Policy Type: *DOP0897*
Policy Period From: *October 6, 2003*    To: *October 6, 2004*
Policy Number: *360-88-71*

EPL Pak ID#:    *310307*

Thank you for purchasing the above-referenced insurance policy from the member companies of American International Group, Inc. (AIG). The policy includes many outstanding and unique features, including coverage for 12 named perils and third party initiated claims[1] Equally important, it provides you - at no additional charge - with the powerful loss prevention benefits. Our expanded package of employment practices loss prevention services builds on our highly successful EPL Pak®, with expanded services that respond specifically to legislative changes. These include:

- ***HR Comply Title VII Plus: Harassment and Discrimination Prevention Training[TM]***
  *Title VII Plus* is comprehensive workforce training courseware that teaches employees and supervisors about Title VII, ADA, and ADEA issues. In an Internet-based, interactive format, *Title VII Plus* provides verifiable proof of training, thus helping you build an "affirmative defense" in case of litigation. The courseware presents employees with a series of workplace scenarios and then tests them to ensure learning objectives are understood.

- ***Supervisor Discrimination Prevention Training***
  The Internet-based *Supervisor Discrimination Prevention Training* is comprehensive supervisor training courseware that deals with all forms of discrimination prohibited by either federal or state law. The program provides in-depth analysis of relevant civil rights laws, and focuses on specific problems of compliance in the workplace. The courseware is designed to provide employers with compelling evidence of the *Kolstad*-required good faith compliance effort, thus helping to protect employers against vicarious punitive liability damages.

**It is important to note that information shared between you and the company providing Title VII Plus will be held in confidence by such company and will not be shared with AIG.**

And, the following services continue to be available as part of the EPL Pak Plus package:

---

[1] The coverage may be modified by endorsement. Please see your policy for a complete description of terms, conditions and exclusions.

*Archive Copy*

- **HR Comply™ Employment Guide**
  Your keyword searchable HR Comply™ *Employment Guide* comes to you on the Internet with CD-ROM archive. The Guide contains significant federal laws and regulations. It features *Federal Employment Law and Regulations*, a 37-chapter summary of all employment laws and how to comply with them, as well as other explanations and publications from SHRM and Seyfarth Shaw. The *Guide* includes one State Law Summary, which explains and clarifies relevant laws for your state, HR Comply's *Wage and Hour Manual: A State and Federal Guide*, and HR Comply's *Essential Payroll Guide*. *If you do not receive a call within six weeks or have any questions, please call: 1-800-643-5999.*

- Regular newsletters and alerts detailing new developments in the employment practices area.

- A free telephone consultation of up to one hour with a leading employer practices attorney. To contact the attorney, call 1-888-377-COUN(SEL).

- Two options for fixed-price legal review and analysis of your corporate employment practices policies:

  - The basic review and assessment of your written human resources policies and manuals on EEO, sexual harassment, termination and FMLA policies, for $750.
  - The broad review of all of your company's personnel policies and practices, including an on-site consultation for $2,000 per day plus expenses.

    To access these services, contact:

    Seyfarth, Shaw, Fairweather, Geraldson
    55 East Monroe Street
    Chicago, IL 60603
    312-346-8000

The availability of the policy review and telephone consulting services is subject to the selected firm's satisfactory completion of a conflict of interest screening procedure.

Remember -- these services are included with your policy. They are available to you at no additional cost!

With these services, and your AIG insurance policy, you bring powerful new advantages to your organization. We thank you again for choosing the member companies of American International Group, Inc. (AIG). If you have any questions or would like additional information, please contact your broker, the American International Companies office nearest you or e-mail us at managementliability@aig.com.

Sincerely,

**Thomas R. Roginson**
American International Companies®

***Archive Copy***

APP014
NU00011509

# AIG American International Companies®

POLICY NUMBER:
360-88-71
REPLACEMENT OF
POLICY NUMBER:
569-34-01

# DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE POLICY
## Including Employment Practices and Securities Liability

### PrivateEdge<sup>sm</sup>

☐ AIU Insurance Company
☐ American Home Assurance Company
☐ American International Pacific Insurance Company
☐ American International South Insurance Company
☐ Birmingham Fire Insurance Company of Penns.

☐ Granite State Insurance Company
☐ Illinois National Insurance Company
☒ National Union Fire Insurance Company of Pitts., Pa®
☐ National Union Fire Insurance Company of Louisiana
☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

NOTICE:  EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.  PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

NOTICE:  THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE.  AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

NOTICE:  THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. HOWEVER THE INSUREDS MAY UNDER CERTAIN CONDITIONS TENDER THE DEFENSE OF A CLAIM. IN ALL EVENTS, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

## DECLARATIONS

ITEM 1.    NAMED ENTITY:    *INTERFACE GROUP HOLDING COMPANY, INC.*
*c/o ASSET PROTECTION SERVICES GROUP, INC.*

MAILING ADDRESS:    *3355 LAS VEGAS BOULEVARD SOUTH*
*LAS VEGAS, NV 89109*

STATE OF INCORPORATION OR STATE OF FORMATION OF THE NAMED ENTITY:
*Nevada*

ITEM 2.    SUBSIDIARY COVERAGE: any past, present or future Subsidiary of the Named Entity

ITEM 3.    POLICY PERIOD:    From: *October 6, 2003*    To: *October 6, 2004*
(12:01 A.M. standard time at the address stated in Item 1.)

ITEM 4.    LIMIT OF LIABILITY:    *$20,000,000*
aggregate for all Loss combined (including Defense Costs)

*310307*

68461 (8/97)    **BRANCHive Copy**

ITEM 5.   RETENTION:

Judgments, Settlements and
Defense Costs (non- Indemnifiable Loss)         None

Employment Practices Claims
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)

*$350,000*

for Loss arising from Claims
alleging the same Wrongful Act
or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

Security Claims (other than private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)

*$250,000*

for Loss arising from Claims
alleging the same Wrongful Act
or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

All Other Claims (including private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)

*$250,000*

for Loss arising from Claims
alleging the same Wrongful Act
or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

ITEM 6.   CONTINUITY DATES:

A.   Coverages A and B(ii):         *October 6, 1997*

B.   Coverage B(i):                 *October 6, 1997*

C.   Outside Entity Coverage: Per Outside Entity,
              see endorsement #  *2*

ITEM 7.   PREMIUM:   **Redacted**

*Premium for Certified Acts of Terrorism Coverage under Terrorism
Risk Insurance Act 2002:* Redacted *included in policy premium.
Any coverage provided for losses caused by an act of terrorism as
defined by TRIA (TRIA Losses) may be partially reimbursed by the
United States under a formula established by TRIA as follows:  90% of
TRIA Losses in excess of the insurer deductible mandated by TRIA, the
deductible to be based on a percentage of the insurer's direct earned
premiums for the year preceding the act of terrorism.
      A copy of the TRIA disclosure sent with the original quote is
attached hereto.*

*310307*

68461 (8/97)   **BRANCHive Copy**

APP016
NU00011511

ADDITIONAL PREMIUM FOR PUNITIVE, EXEMPLARY AND
MULTIPLIED DAMAGES:        [ Redacted ] (included in above)
(No punitive damages coverage provided:      )


ITEM 8.   NAME AND ADDRESS OF INSURER (hereinafter "Insurer"):
          (This policy is issued only by the insurance company indicated below.)

          *National Union Fire Insurance Company of Pittsburgh, Pa.*

          *175 Water Street*

          *New York, NY 10038*

*310307*

APP017

NU00011512

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage.  The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review.  There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act.  Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

Unless you sign this form and return it to us rejecting Terrorism Coverage under the Federal Act, you will be covered for Terrorism as defined in the Act and your premium for that coverage is Redacted _____ .

_____  I hereby reject coverage in accordance with the Act.


_____
Signature of Insured


_____
Print Name/Title


_____
Date

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *INTERFACE GROUP HOLDING COMPANY, INC.*
*c/o ASSET PROTECTION SERVICES GROUP, INC.*

Policy Number: *360-88-71*
Policy Period Effective Date From: *October 6, 2003*       To: *October 6, 2004*

81285 (1/03)          **Archive Copy**

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.

_Elizabeth M. Tuck_
_____
SECRETARY

_[signature]_
_____
PRESIDENT

_____
AUTHORIZED REPRESENTATIVE

_____
COUNTERSIGNATURE DATE

_____
COUNTERSIGNED AT

AON RISK SVCS, INC. OF SO. CA.
707 WILSHIRE BLVD., SUITE 6000
LOS ANGELES, CA 90017

_310307_

68461 (8/97)    **BRANCH**ive Copy

NU00011514



# AMERICAN  INTERNATIONAL  COMPANIES®

## DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE POLICY
### Including Employment Practices and Securities Liability

### *PrivateEdge*<sup>SM</sup>

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the insurance company designated in Item 8 of the Declarations, herein called the Insurer, agrees as follows:

## 1. INSURING AGREEMENTS

### COVERAGE  A: INDIVIDUAL  INSURED INSURANCE

This policy shall pay the Loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors, Officers or Employees of the Company  except when and to the extent that the Company has indemnified  such Insureds.  The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

### COVERAGE  B: PRIVATE COMPANY  INSURANCE

This policy shall pay the Loss of the Company arising from a:

    (i)      Claim first made against the Company, or

    (ii)     Claim first made against an Individual Insured,

during the Policy Period or the Discovery Period (if applicable)  and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act, but, in the case of (ii) above, only when and to the extent that the Company has indemnified the Individual Insured for such Loss pursuant to law, common or statutory, or contract, or the Charter or By- laws of the Company duly effective under such law which determines and defines such rights of indemnity. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

### DEFENSE PROVISIONS

The Insurer does not assume any duty to defend, provided, however, the Named Entity may at its sole option tender to the Insurer the defense of a Claim for which coverage is provided by this policy to the Insurer in accordance with Clause 8 of the policy. Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs (excess of the applicable   retention amount) of such Claim prior to its final disposition. Selection of counsel to defend a "Designated Claim" shall be made in accordance with Clause 9 of the policy.

## 2. DEFINITIONS

(a)    "Affiliate" means: (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries,  is a successor in interest to another person or entity.

APP020
NU00011515

(b)   "Claim" means:

    (1)   a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations); or

    (2)   a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

        (i)    service of a complaint or similar pleading; or

        (ii)   return of an indictment (in the case of a criminal proceeding); or

        (iii)  receipt or filing of a notice of charges.

    (3)   an administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") (or similar state, local or foreign agency) which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the Insured.  However, in no event shall the term "Claim" include any labor or grievance proceeding  which is subject to a collective bargaining agreement.

The term "Claim" shall include an Employment Practices Claim and a Securities Claim.

(c)   "Company" means the Named Entity and any Subsidiary thereof.

(d)   "Continuity Date" means the date set forth in:

    (1)   Item 6A of the Declarations with respect to Coverages A and B(ii); or

    (2)   Item 6B of the Declarations with respect to Coverage B(i);

    (3)   Item 6C of the Declarations with respect to a Claim made against an Individual Insured(s) arising  out of such Insured's  service as a director, officer, trustee or governor of an Outside Entity.

(e)   "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries of officers or Employees of the Company.

(f)   "Employee(s)" means any past, present or future employee, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee in his or her capacity as such.  An individual who is leased to the Company shall also be an Employee, but only if the Company provides indemnification to such leased individual in the same manner as is provided to the Company's employees.  Any other individual who is contracted to perform work for the Company, or who is an independent contractor for the Company shall also be an Employee, but only if the Company provides indemnification to such individual in the same manner as that provided to the Company's employees, and such individual is scheduled by written endorsement attached  hereto and the Company pays any additional premium required by the Insurer relating to such individual.

(g)   "Employment Practices  Claim" means  a Claim  alleging an Employment Practices Violation.

(h)   "Employment Practices Violation(s)" means any actual or alleged:

    (1)   wrongful dismissal,  discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

APP021

NU00011516

(2)    harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);

(3)    discrimination, (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

(4)    Retaliation (including lockouts);

(5)    employment-related misrepresentation(s) to an Employee or applicant for employment with the Company;

(6)    employment-related libel, slander, humiliation, defamation, invasion of privacy;

(7)    wrongful failure to employ or promote;

(8)    wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(9)    wrongful discipline;

(10)   failure to grant tenure;

(11)   failure to provide or enforce adequate or consistent corporate policies and procedure relating to any Employment Practices Violation;

(12)   violation of an individual's civil rights relating to any of the above,

but only if the Employment Practices Violation relates to an Employee(s), or applicant for employment with the Company or an Outside Entity, whether direct, indirect, intentional or unintentional.

With respect to any customer or client of the Company, whether individually or as a class or group, Employment Practices Violation shall mean only any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

(i)    "Individual Insured(s)" means:

(1)    any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company, but only in their capacities as such. Coverage will automatically apply to all new directors, officers, management committee members or members of the Board of Managers of the Company after the inception date of this policy;

(2)    any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company serving in the capacity as director, officer, trustee or governor of an Outside Entity, but only if such service is at the specific written request or direction of the Company;

(3)    in the event the Company operates outside the United States, then the terms director, officer, management committee member or member of the Board of Managers shall also mean those titles, positions or capacities in such foreign Company which are equivalent to such positions in an organization incorporated or formed within the United States; and

(4)    any Employee(s) of the Company.

APP022

NU00011517

(j)    "Insured(s)" means:

    (1)    an Individual Insured; and

    (2)    the Company.

(k)    "Loss" means damages (including back pay and front pay), judgments, settlements, pre- and post-judgment interest, and Defense Costs; however, Loss shall not include: (1) civil or criminal fines or penalties imposed by law; (2) taxes; (3) any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds; (4) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (5) any liability or costs incurred by any Insured to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an Employment Practices Claim; or (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

If an additional premium is stated in Item 7 of the Declarations page, then Loss shall specifically include, (subject to the policy's other terms, conditions and exclusions, including but not limited to exclusions relating to personal profit or advantage, deliberate fraud, criminal acts or willful violation of any statute, rule or regulation) punitive, exemplary and multiple damages (including the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act). It is further understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages. If an additional premium is not stated in Item 7 of the Declarations then Loss shall not include punitive, exemplary damages or the multiplied portion of multiple damages.

(l)    "Named Entity" means the organization stated in Item 1 of the Declarations whether a corporation, association, limited liability company or other type of business organization.

(m)    "No Liability" means: (1) a final judgment of no liability obtained prior to trial, in favor of all Insureds, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) a final judgment of no liability obtained after trial, in favor of all Insureds, after the exhaustion of all appeals. In no event shall the term "No Liability" apply to a Claim made against an Insured for which a settlement has occurred.

(n)    "Outside Entity" means:

    (1)    a not-for-profit organization under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended); or

    (2)    any other corporation, partnership, joint venture or other organization listed by endorsement to this policy.

(o)    "Policy Period" means the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(p)    "Related Wrongful Acts" shall mean Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from a common nucleus of facts. Claims can allege Related Wrongful Acts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action.

(q)    "Retaliation" means a Wrongful Act of an Insured relating to or alleged to be in response to any of the following activities: (1) the disclosure or threat of disclosure by an Employee to a superior or to any governmental agency of any act by an Insured which act is alleged to be a violation of any federal, state, local or foreign

APP023

NU00011518

law, common or statutory, or any rule or regulation promulgated thereunder; (2) the actual or attempted exercise by an Employee of any right that such Employee has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (3) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (4) Employee strikes.

(r)     "Securities Claim" means a Claim (including a civil lawsuit or criminal proceeding brought by the Securities & Exchange Commission) made against an Insured anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

   (1)     brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the Company, or

   (2)     brought by a securities holder of the Company, whether directly, by class action, or derivatively on the behalf of the Company, or otherwise, alleging any Wrongful Act of an Insured.

(s)     "Subsidiary" means:

   (1)     any for-profit organization which, on or before the inception of the Policy Period, is more than 50% owned by the Named Entity, either directly, or indirectly through one or more of its Subsidiaries;

   (2)     automatically any for-profit organization whose securities are not publicly traded and whose assets total less than 25% of the total consolidated assets of the Company as of the inception date of this policy which becomes a Subsidiary during the Policy Period. The Named Entity shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period; or

   (3)     an organization which becomes a Subsidiary during the Policy Period (other than a for-profit organization described in paragraph (2) above), but only upon the condition that within 90 days of its becoming a Subsidiary, the Named Entity shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to such new Subsidiary.

An organization becomes a Subsidiary when the Named Entity owns more than a 50% ownership interest in such Subsidiary, either directly, or indirectly through one or more of its Subsidiaries. An organization ceases to be a Subsidiary when the Named Entity ceases to own more than a 50% ownership in such Subsidiary, either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded under this policy with respect to a Claim made against Individual Insureds or a Claim made against any Subsidiary, shall only apply to Claims for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

APP024

NU00011519

(t)   "Wrongful Act" means:

   (1)   with respect to Individual  Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors,  officers or Employees  of the Company;

   (2)   with respect to the Company, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Company;

   (3)   with respect to service on an Outside Entity, any matter claimed against an Individual Insured as defined in definition (i)(2) arising out of his or her serving as a director, officer, trustee or governor of an Outside Entity in such capacity, but only if such service is at the specific written request or direction of the Company.

   With respect to an Employment Practices Claim, the term "Wrongful Act" shall include any Employment Practices Violation.

## 3.  EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover Loss arising from any Claims made against the estates, heirs, or legal representatives of deceased  Individual Insureds, and the  legal representatives  of Individual  Insureds in the event of incompetency, insolvency or bankruptcy, who were Individual Insureds at the time the Wrongful Act upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from all Claims made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an Individual Insured for all Claims arising solely out of his or her status as the spouse of an Individual Insured, including  a Claim that seeks damages recoverable from marital community property, property jointly held by the Individual Insured and the spouse, or property transferred from the Individual Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of an Individual Insured, subject to the policy's terms, conditions and exclusions.

## 4.  EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

(a)   arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;

(b)   arising out of, based upon or attributable to: (1) profits in fact made from the purchase or sale by an Insured of securities of the Company within the meaning of Section 16(b) of the Securities Exchange  Act of 1934 and amendments  thereto or similar provisions of any state statutory law; or (2) payments to an Insured of any remuneration  without the previous  approval of the stockholders  of the Company, which payment  without such previous approval shall be held to have been illegal;

(c)   arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law;

   [The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c).]

APP025
NU00011520

(d)     alleging, arising out of, based upon or attributable to the facts alleged,  or to the same or Related Wrongful Act alleged or contained  in any claim which has been reported,  or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e)     alleging, arising out of, based upon or attributable to as of the Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory  proceeding or investigation of which an Insured had notice,  or alleging any Wrongful Act which is the same or Related Wrongful Act to that alleged in such pending or prior litigation or administrative  or regulatory  proceeding  or investigation;

(f)     alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Insured  serving in any capacity, other than a director, officer, management committee member, member of the Board of Managers or Employee of the Company, or as a director, officer, trustee or governor of an Outside Entity;

(g)     for any Wrongful Act arising out of an Individual Insured serving in a capacity as a director, officer, trustee or governor of an Outside Entity if such Claim is brought by the Outside Entity or a director, officer, trustee or governor thereof;

(h)     alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement; provided, however, that with respect to Employment Practice Claims, this exclusion shall not apply to the extent any liability does not arise under such express employment contract or agreement;

(i)     which is brought by any Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured; provided, however, this exclusion shall not apply to:

        (1)     any Claim brought by an Individual Insured where such Claim is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of this policy; or

        (2)     an Employment Practices Claim brought by an Employee of the Company other than an Employee who is or was a director, member of the  Board of Managers  or management committee member of the Named Entity;

(j)     alleging, arising out of, based upon or attributable to any public offering of securities by the Company, an Outside Entity or an Affiliate or alleging  a purchase  or sale of such securities subsequent to such public offering;

        provided, however, that this exclusion will not apply to:

        (1)     any purchase or sale of securities exempted pursuant to section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; however, the Named Entity shall give the Insurer written notice of any public offering exempted pursuant to section 3(b), together with full particulars and as soon as practicable, but not later than 30 days after the effective date of the public offering;

        (2)     to any public offering of securities (other than a public offering described in paragraph (1) above), as well as any purchase or sale of such securities subsequent to such public offering, in the event that within 30 days prior to the effective time of  such public offering: (i) the Named Entity shall give the

APP026

NU00011521

Insurer written notice of such public offering together with full particulars and underwriting information required thereto and (ii) the Named Entity accepts such terms, conditions and additional premium required by the Insurer for such coverage. Such coverage is also subject to the Named Entity paying when due any such additional premium. In the event the Company gives written notice with full particulars and underwriting information pursuant to (i) above, then the Insurer must offer a quote for coverage under this paragraph;

(k)     alleging, arising out of, based upon or attributable to the purchase by the Company of securities of a "publicly traded entity" in a transaction which resulted, or would result, in such entity becoming an Affiliate or Subsidiary of the Company; provided, however, this exclusion shall not apply in the event that within 30 days prior to it becoming an Affiliate or Subsidiary, the Named Entity gives written notice of the transaction to the Insurer together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this policy required by the Insurer relating to the transaction. Further, coverage as shall be afforded to the transaction is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to the transaction. An entity is a "publicly traded entity" if any securities of such entity have previously been subject to a public offering;

(l)     alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this exclusion shall not apply to Securities Claims;

(m)     for emotional distress, or for injury from libel or slander, or defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to any Securities Claim or Employment Practices Claim;

(n)     for any actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or for any direction or request to test, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants; provided, however, this exclusion shall not apply to any Claim brought by a securities holder of the Company in its capacity as such or to any Employment Practices Claim;

(o)     for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, local or foreign statutory law or common law; provided, however, that this exclusion shall not apply to Loss arising from a Claim for Retaliation;

(p)     alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, however, this exclusion shall not apply to Loss arising from a Claim for Retaliation;

(q)     with respect to Coverage B(i) only:

    (1)     for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights;

    (2)     for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

APP027

NU00011522

(3)    for the rendering  or failure to render any service to a customer or client of the Insured; provided, however, that this exclusion shall not apply to any:

    (i)    Claim solely alleging Employment Practices Violations;

    (ii)    Securities Claim; or

    (iii)    Claim for the rendering or failure to render any professional service to the extent such professional services errors and omissions  coverage has been added to this policy by written endorsement attached hereto;

(4)    seeking fines or penalties or non-monetary relief against the Company; provided, however, that this exclusion shall not apply to any Securities Claim or Employment Practices Claim.

## 5. LIMIT OF LIABILITY and REINSTATED LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS)

**Defense Costs are not payable by the Insurer in addition to the limit of liability. Defense Costs are part of Loss and as such are subject to the applicable Limit of Liability for Loss.**

### A. General Terms

The Limit of Liability stated in Item 4 of the Declarations is the limit of the Insurer's liability for all Loss, under Coverage A and Coverage B combined, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable);  however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period, or the Reinstated Limit as described below (if elected).  Further, a Claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one applicable aggregate Limit of Liability stated in Item 4 of the Declarations,  or subject to the one aggregate Reinstated Limit if such Reinstated Limit is applicable to such Claim.

### B. Reinstated Limit of Liability

In the event of a Claim under this policy, the Named Entity shall have the right to purchase a Reinstated Limit equal to the Limit of Liability stated in Item 4 of the Declarations.  The Reinstated Limit shall be subject to the following conditions:

1.    The right to elect the Reinstated Limit commences on the date a Claim is reported to the Insurer and expires on the last day of the Policy Period; provided, that in all events, only one reinstatement is permitted under this policy. The effective date of the reinstatement shall be the date on which the Insurer acknowledges receipt of the written notice of the Insured's election to exercise the reinstatement.

2.    If the Policy Period of this policy is more than one year, then the additional premium to elect the Reinstated Limit at any time after one year from the inception date of this policy shall be fixed at 150% of the premium set forth in Item 7 of the Declarations. Regardless of the length of the Policy Period of this policy, the additional premium to elect the Reinstated Limit within one year from the inception date of this policy shall be an amount determined by the Insurer at the time of the election of the Reinstated Limit unless otherwise indicated by written endorsement to this policy.

3.    The Reinstated Limit shall only apply to Claims made against an Insured after the effective date of the reinstatement and prior to the end of the Policy

APP028
NU00011523

Period or the Discovery Period, if applicable, ("Reinstatement Claims"); provided, however, that the Reinstated Limit shall not apply to Claims which allege a Related Wrongful Act to Claim(s) reported to the Insurer prior to the effective date of the reinstatement.

4.    The Reinstated Limit shall be the maximum liability of the Insurer for all Reinstatement Claims. The Limit of Liability described in Clause 5A as applicable to Claims made against the Insureds prior to the effective date of the reinstatement shall not apply to any Reinstatement Claim.

5.    Upon exercise of the Reinstated Limit, the entire premium set forth in Item 7 of the Declarations shall be deemed fully earned; the Insureds shall not be entitled to any return premium as a result of the exercise of the Reinstated Limit nor shall any of the premium paid for the policy be credited toward the additional premium required to exercise the Reinstated Limit.

6.    In no event shall the right to a reinstatement apply if prior to the effective date of the reinstatement, this policy has been cancelled, is otherwise not in effect, or the Discovery Period has been elected.

7.    Other than as stated above, coverage for Reinstatement Claims shall be subject to the same terms, conditions and exclusions of the policy applicable to other Claims under this policy. The Insurer cannot otherwise modify any terms, conditions or exclusions of this policy as a condition of providing the reinstatement.

## 6.  RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 5 of the Declarations, such Retention amount to be borne by the Company or the Insureds and shall remain uninsured, with regard to all Loss under: (1) Coverage A or B(ii) for which the Company has indemnified or is permitted or required to indemnify the Individual Insured(s) ("Indemnifiable Loss"), or (2) Coverage B(i). A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or Related Wrongful Act.

Subject to the above paragraph, the Retention amounts stated in Item 5 of the Declarations shall apply. In the event a Claim triggers more than one amount stated in Item 5 of the Declarations, only the highest such amount shall apply, which amount shall apply to all Loss under such Claim.

The Retention amount shall be reduced in the event that an Insured consents to the first "Settlement Opportunity", as defined in Clause 8, by the percentage described in Clause 8, subject to the conditions described in Clause 8.

No Retention shall apply to a Claim which is in the form of a civil action for monetary relief and the Insurer shall thereupon reimburse the Defense Costs paid by the Insured, in the event of:

(1)    a determination of No Liability of all Insureds; or

(2)    a dismissal or a stipulation to dismiss the civil litigation Claim without prejudice and without the payment of any consideration by any Insured;

provided, however, that in the case of (2) above, such reimbursement shall occur ninety (90) days after the date of dismissal or stipulation as long as the Claim is not re-brought (or any other Claim which is subject to the same single retention by virtue of Clause 6 is not brought) within that time, and further subject to an undertaking by the Company in a form acceptable to the Insurer that such reimbursement shall be paid back by the Company to the Insurer in the event the Claim (or any other Claim which is subject to the same single retention by virtue of Clause 6) is brought after such 90 day period and before the expiration of the statute of limitations for such Claim.

*Archive Copy*

APP029

NU00011524

**7.  NOTICE/CLAIM REPORTING PROVISIONS**

**Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations.**

**If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice. A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Company on the behalf of any Insured or by the Insurer, whichever comes first.**

(a)  The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:

   (1)  anytime during the Policy Period or during the Discovery Period (if applicable); or

   (2)  within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(b)  If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging a Related Wrongful Act to the Claim for which such notice has been given shall be considered made at the time such notice was given.

(c)  If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Related Wrongful Act to such circumstances, shall be considered made at the time such notice of such circumstances was given.

**8.  DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them.

Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by the Named Entity on behalf of all Insureds to the Insurer pursuant to the notice provisions of Clause 7 of this policy. This right shall terminate if not exercised within 30 days of the date the Claim is first made against an Insured, pursuant to Clause 7 of the policy. Further, from the date the Claim is first made against the Insureds to the date when the Insurer accepts the tender of the defense of such Claim, the Insureds shall take no action, or fail to take any required action, that prejudices the rights of the Insureds or the Insurer with respect to such Claim. Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent. The assumption of the defense of the Claim shall be effective upon written confirmation sent thereof by the Insurer to the Named Entity. Once the defense has been so tendered, the Insured shall have the right to effectively associate with the Insurer in the defense and the negotiation of any settlement of any Claim, subject to the provisions of this Clause 8. However, the Insurer shall not be obligated to defend such Claim after the

APP030

NU00011525

Limit of Liability has been exhausted, or after an Insured's rejection of a Settlement Opportunity as defined in this Clause 8.

When the Insurer has not assumed the defense of a Claim pursuant to this Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.

**The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 8, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy.**

The Insurer shall have the right to effectively associate with the Company in the defense of any Claim that appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Company and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

If the Insurer recommends a settlement within the policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity"), and the Insureds consent to such settlement, then the Insured's applicable retention amount shall be retroactively reduced by ten percent (10%) for such Loss. It shall be a condition to such reduction that the Insureds must consent to such settlement within thirty (30) days of the date the Insureds are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made.

However, if a Settlement Opportunity arises and the Insureds do not consent to the settlement within the time prescribed above, the retention amount shall remain the applicable amount set forth in Item 5 of the Declarations even if consent is given to a subsequent Settlement Opportunity.

Furthermore, in the event the Insureds do not consent to the first Settlement Opportunity within the time prescribed, then, subject to the applicable limit of liability, the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer, ("Settlement Opportunity Amount") plus (2) 50% of covered Loss in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 50% of such Loss excess of the Settlement Opportunity Amount shall be carried by the Company and the Insureds at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the Retention amount stated in Item 5 of the Declarations.

**9. PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED CLAIMS**

This clause applies only to an Employment Practices Claim or a Securities Claim (each of the foregoing hereinafter referred to as a "Designated Claim").

APP031

NU00011526

Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms ("Panel Counsel Firms") from which a selection of legal counsel shall be made to conduct the defense of any Designated Claim against an Insured pursuant to the terms set forth below.

In the event the Insurer has assumed the defense pursuant to Clause 8 of this policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds. In the event the Insureds are already defending a Designated Claim, then the Insureds shall select a Panel Counsel Firm to defend the Insureds.

The selection of the Panel Counsel Firm, whether done by the Insurer or the Insureds, shall be from the list of Panel Counsel Firms designated for the type of Claim and be from the jurisdiction  in which the Designated Claim is brought.  In the event a Designated Claim is brought in a jurisdiction not included on the appropriate list, the selection  shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the Designated Claim is maintained or where the corporate headquarters or state of formation of the Named Entity is located.  In such instance, however, the Insurer shall, at the written request of the Named Entity, assign a non- Panel Counsel Firm of the Insurer's choice in the jurisdiction in which the Designated Claim is brought to function as "local counsel" on the Designated Claim to assist the Panel Counsel Firm which will function  as "lead counsel" in conducting the defense of the Designated Claim.

With the express prior written consent of the Insurer, an Insured may select (in the case of the Insured defending the Claim), or cause the Insurer to select (in the case of the Insurer defending the Claim), a Panel Counsel Firm different from that selected by other Insured defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Entity.

## 10. DISCOVERY CLAUSE

Except as indicated below, if the Named Entity shall cancel or the Named Entity or the Insurer shall refuse to renew this policy, the Named Entity shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal upon payment of the respective "Additional Premium Amount" described below (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during said Discovery Period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within 30 days of the effective date of cancellation or nonrenewal. The Additional Premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable.  This clause and the rights contained herein shall not apply to any cancellation resulting from non- payment of premium.

The Additional Premium Amount for: (1) one year shall be [Redacted] of the "full annual premium"; (2) two years shall be [Redacted] of the "full annual premium"; (3) three years shall be a reasonable premium amount to be mutually agreed upon by the Insured and the Insurer. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period.

In the event of a Transaction, as defined in Clause 12, the Named Entity shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than three years or for such

APP032

NU00011527

longer or shorter period as the Named Entity may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the Named Entity at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent.

This policy may be canceled by or on the behalf of the Insurer only in the event of nonpayment of premium by the Named Entity. In the event of non- payment of premium by the Named Entity, the Insurer may cancel this policy by delivering to the Named Entity or by mailing to the Named Entity, by registered, certified, or other first class mail, at the Named Entity's address as shown in Item 1 of the Declarations, written notice stating when, not less than 30 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender. The Insurer shall have the right to the premium amount for the portion of the Policy Period during which the policy was in effect.

If this policy shall be canceled by the Named Entity, the Insurer shall retain the customary short rate proportion of the premium herein.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## 12. CHANGE IN CONTROL  OF NAMED ENTITY

If during the Policy Period:

    a.    the Named Entity shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    b.    any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50% of the voting power for the election of directors of the Named Entity, or acquires the voting rights of such an amount of such securities;

        (either of the above events herein referred to as the "Transaction"),

then this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Named Entity shall also have the right to an offer by the Insurer of a Discovery Period described in Clause 10 of the policy.

The Named Entity shall give the Insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

## 13. SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Company's and the Insureds' rights of recovery thereof, and the Company and the Insureds shall execute all papers required and shall do every- thing that may be necessary to secure such rights, including the execution of such documents necessary to enable the Insurer to effectively bring suit in the name of the

APP033

NU00011528

Company or the Insureds.  In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy unless such Insured has been convicted of a criminal act, or been determined to have committed a dishonest, fraudulent act or willful violation of any statute, rule or law, or obtained any profit or advantage to which such Insured was not legally entitled.

## 14. OTHER INSURANCE  AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance.  This policy specifically shall be excess of any other policy pursuant to which any other insurer has a duty to defend a Claim for which this policy may be obligated to pay Loss.

In the event of a Claim against an Insured arising out of his or her service as a director, officer, trustee or governor of an Outside Entity or an Employment Practices Claim against a leased Employee as described in definition (f) of Clause 2, coverage as is afforded by this policy shall be specifically excess of indemnification provided by such Outside Entity or such leasing company and any insurance provided to such Outside Entity or such leasing company.

Further, in the event other insurance is provided to the Outside Entity or leasing company referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the Insurer or any member company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a Claim) then the Insurer's maximum aggregate Limit of Liability for all Losses combined in connection with a Claim covered, in part or in whole, by this policy and such other insurance policy issued by AIG shall not exceed the greater of the Limit of Liability of this policy or the limit of liability of such other AIG insurance policy.

## 15. NOTICE AND AUTHORITY

It is agreed that the Named Entity shall act on behalf of the Subsidiaries and all Insureds with respect to the giving of notice of a Claim, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a Claim to the Insurer and the exercising or declining of any right to a Discovery Period or Reinstated Limit.

## 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

## 17. DISPUTE RESOLUTION  PROCESS

The Insured shall have the option, in its sole discretion, to submit all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination  of this policy, including any determination of the amount of Loss,  to the alternative dispute resolution process ("ADR") set forth in this clause.

The Insureds may elect the type of ADR discussed below. The Insurer agrees to submit to the ADR process chosen by the Insured.  Once elected, the ADR cannot be terminated prior to a determination without the consent of the Insured and the Insurer.

APP034

NU00011529

There shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Named Entity is incorporated or formed in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations page as the mailing address for the Named Entity. The Named Entity shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Company to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Company or their legal representatives. Bankruptcy or insolvency of the Company or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 19. REPRESENTATIONS AND SEVERABILITY

In granting coverage under this Policy, it is agreed that the Insurer has relied upon the statements and representations contained in the application for this policy (including materials submitted thereto and, if this is a renewal application, all such previous policy applications for which this policy is a renewal) as being accurate and complete. All such statements and representations shall be deemed to be material to the risk assumed by the Insurer, are the basis of this policy and are to be considered as incorporated into this policy.

With respect to such statements and representations, no knowledge or information possessed by any Individual Insured, except for those person or persons who executed the application, shall be imputed to any other Individual Insured. If any person who executed the application knew that such statement or representation was inaccurate or incomplete,

APP035

NU00011530

then this policy will be void as to all Insureds other than Individual Insureds who are "non-employee Directors" of the Company and who did not personally know the statement or representation to be inaccurate or incomplete. (The term "non-employee Director" shall have the meaning described in Securities & Exchange Commission   rules or regulations promulgated pursuant to Section 16 of the Securities Exchange Act of 1934).

## 20. WORLDWIDE TERRITORY

This policy shall apply to Claims made against an Insured anywhere in the world.

## 21. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

APP036

NU00011531

APPENDIX A
SECURITIES CLAIMS PANEL COUNSEL LIST

## ALASKA

DAVIS WRIGHT TREMAINE
701 W. Eighth Avenue, Suite 800,
Anchorage, AK 99501- 3468
Tel: (907) 257- 5300
Contact: David W. Oesting

FOSTER PEPPER & SHEFELMAN
1007 W. Third Ave., Ste. 100,
Anchorage, AK 99501
Tel: (907) 222- 7100
Contact: Tim J. Filer / Roger D. Mellem

## CALIFORNIA

BINGHAM MCCUTCHEN LLP
1900 University Avenue,
East Palo Alto, CA 94303- 1212
Tel: (650) 849- 4914
Contact: Stephen D. Hibbard / Mary T. Huser

BINGHAM MCCUTCHEN LLP
3 Embarcadero Center,
San Francisco, CA 94111
Tel: (415) 393- 2626
Contact: David H. Balabanian /
Stephen D. Hibbard

BINGHAM MCCUTCHEN LLP
355 South Grand Avenue, Suite 4400,
Los Angeles, CA 90071- 1560
Tel: (213) 680- 6416
Contact: John C. Morrissey

BINGHAM MCCUTCHEN LLP
3 Embarcadero Center,
San Francisco, CA 94111
Tel: (415) 393- 2170
Contact: David M. Balabanian

CLIFFORD CHANCE US  LLP
One Market Steuart Tower, Suite 400,
San Francisco, CA 94105
Tel: (415) 778- 4700
Contact: Tower C. Snow / Michael D. Torpey

CLIFFORD CHANCE US  LLP
601 South Figueroa Street,
Los Angeles, CA 90017
Tel: (213) 312- 9400
Contact: Daniel J. Tyukody

COOLEY GODWARD, LLP
One Maritime Plaza, 20th Floor,
San Francisco, CA 94111
Tel: (415) 693- 2073
Contact: Paul A. Renne

COOLEY GODWARD, LLP
One Maritime Plaza, 20th Floor,
San Francisco, CA 94111
Tel: (415) 693- 2092
Contact: Benjamin K. Riley

COOLEY GODWARD, LLP
4401 Eastgate Mall,
San Diego, CA 92121- 1909
Tel: (858) 550- 6050
Contact: William E. Grauer

COOLEY GODWARD, LLP
Five Palo Alto Square,
3000 El Camino Real,
Palo Alto, CA 94306
Tel: (650) 843- 5182
Contact: Stephen C. Neal

COOLEY GODWARD, LLP
Five Palo Alto Square,
3000 El Camino Real,
Palo Alto, CA 94306
Tel: (650) 843- 5037
Contact: William S. Freeman

DAVIS WRIGHT TREMAINE
One Embarcadero Center, Suite 600,
San Francisco, CA 94111- 3834
Tel: (415) 276- 6500
Contact: Martin Fineman

GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue,
Los Angeles, CA 90071- 3197
Tel: (213) 229- 7543
Contact: Phillip L. Bosl

GIBSON, DUNN & CRUTCHER LLP
1530 Page Mill Road,
Palo Alto, CA 94304
Tel: (650) 849- 5300
Contact: John C. Dickey

GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza,
Irvine, CA 92614- 8557
Tel: (949) 451- 3800
Contact: Wayne W. Smith / Meryl L. Young

Revised (7/03)   *BRANCHive Copy*          1 of 10

APP037

NU00011532

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

GRAY CARY
4365 Executive Drive,
San Diego, CA 92121- 2133
Tel: (858) 677- 1400
Contact: Shirli Fabbri Weiss /
Robert W. Brownlie

GRAY CARY
1755 Embarcadero Road,
Palo Alto, CA 94303- 3340
Tel: (650) 833- 2000
Contact: Shirli Fabbri Weiss / David Priebe

IRELL & MANELLA LLP
1800 Ave. of the Stars, Suite 900,
Los Angeles, CA 90067
Tel: (310) 277- 1010
Contact: David Schwarz / David Gindler /
David Siegel / Jim Adler / Richard H. Borow

MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, CA 94105
Tel: (415) 268- 7000
Contact: Melvin R. Goldman / Paul T. Friedman

MORRISON & FOERSTER LLP
555 West 5th Street, Suite 3500,
Los Angeles, CA 90013
Tel: (213) 892- 5200
Contact: B. Scott Silverman / Robert S. Stern

MUNGER, TOLLES & OLSON
355 South Grand Avenue, 35th Floor,
Los Angeles, CA 90071- 1560
Tel: (213) 683- 9264
Contact: Dennis L. Kinnaird

MUNGER, TOLLES & OLSON
355 South Grand Avenue, 35th Floor,
Los Angeles, CA 90071- 1560
Tel: (213) 683- 9152
Contact: John W. Spiegel

MUNGER, TOLLES & OLSON
355 South Grand Avenue, 35th Floor,
Los Angeles, CA 90071- 1560
Tel: (213) 683- 9153
Contact: George M. Garvey

O'MELVENY & MYERS LLP
400 South Hope St., 15th Floor,
Los Angeles, CA 90071
Tel: (213) 430- 6000
Contact: Robert Vanderet / Seth Aronson

O'MELVENY & MYERS LLP
610 Newport Center, 17th Floor,
Newport Beach, CA 92660
Tel: (949) 760- 9600
Contact: Michael G. Yoder / Phillip Kaplan

O'MELVENY & MYERS LLP
275 Battery Street,
San Francisco, CA 94111
Tel: (415) 984- 8700
Contact: Daniel Bookin / Michael F. Tubach

ORRICK HERRINGTON & SUTCLIFFE LLP
Old Federal Reserve Bank Building,
400 Sansome Street,
San Francisco, CA 94111
Tel: (415) 392- 1122
Contact: William F. Alderman

ORRICK HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road,
Menlo Park, CA 94025
Tel: (650) 614- 7400
Contact: W. Reece Bader

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 S. Flower Street, Twenty- Third Floor,
Los Angeles, CA 90071- 2371
Tel: (213) 683- 6000
Contact: J. Allen Maines

PILLSBURY WINTHROP LLP
Pacific Bell Building, 101 W. Broadway,
Suite 1800,
San Diego, CA 92101- 8219
Tel: (619) 234- 5000
Contact: Richard M. Segal

PILLSBURY WINTHROP LLP
2550 Hanover Street,
Palo Alto, CA 94304- 1115
Tel: (650) 233- 4500
Contact: Walter J. Robinson

PILLSBURY WINTHROP LLP
725 South Figueroa Street, Suite 2800,
Los Angeles, CA 90017- 5443
Tel: (213) 488- 7100
Contact: Robert L. Wallan

PILLSBURY WINTHROP LLP
50 Fremont Street,
San Francisco, CA 94105- 2228
Tel: (415) 983- 1000
Contact: Bruce A. Ericson

APP038

NU00011533

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

SIMPSON THACHER & BARTLETT
3373 Hillview Avenue,
Palo Alto, CA 94304
Tel: (650) 251- 5000
Contact: George M. Newcombe /
James G. Kreissman

SIMPSON THACHER & BARTLETT
10 Universal City Plaza, Suite 1850,
Los Angeles, CA 91608
Tel: (818) 755- 7000
Contact: Chet Kronenberg /
Seth A. Ribner

SULLIVAN & CROMWELL
1888 Century Park East,
Los Angeles, CA 90067- 1725
Tel: (310) 712- 6600
Contact: Robert A. Sacks

WILSON, SONSINI, GOODRICH & ROSATI
650 Page Mill Road,
Palo Alto, CA 94304- 1050
Tel: (650) 493- 9300
Contact: Bruce G. Vanyo / Boris Feldman /
Steven M. Schatz

**COLORADO**

COOLEY GODWARD, LLP
380 Interlocken Crescent, Suite 900,
Broomfield, CO  80021- 8023
Tel: (720) 566- 4000
Contact:  James E. Nesland

GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4100,
Denver, CO 80202
Tel: (303) 298- 5700
Contact:  George Curtis

**DISTRICT OF COLUMBIA**

ARNOLD & PORTER
555 Twelfth Street, NW,
Washington, DC 20004- 1202
Tel: (202) 942- 5672
Contact: Scott B. Schreiber

CAHILL GORDON & REINDEL
1990 K Street, N.W., Suite 950,
Washington, DC 20006
Tel: (202) 862- 8900
Contact: Donald J. Mulvihill

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.,
Washington, DC 20036- 5306
Tel: (202) 955- 8500
Contact: F. Joseph Warin / John C. Millian

GREENBERG TRAURIG
800 Connecticut Avenue, N.W., Suite 500,
Washington, DC 20036
Tel: (202) 331- 3100
Contact: Joe R. Reeder

PATTON BOGGS LLP
2550 M Street, N.W.,
Washington, DC 20037
Tel: (202) 457- 6000
Contact: Eric A. Kuwana / Lanny J. Davis /
Ronald S. Liebman

PIPER RUDNICK LLP
1200 Nineteenth Street, NW,
Washington, DC 20036
Tel: (202) 861- 3900
Contact: David Clarke, Jr. / Robert J. Mathias /
James D. Mathias

SULLIVAN & CROMWELL
1701 Pennsylvania Avenue, N.W.,
Washington, DC 20006- 5805
Tel: (202) 956- 7500
Contact: Daryl A. Libow / Margaret K. Pfeiffer

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW,
Washington, DC 20005
Tel: (202) 434- 5000
Contact: John K. Villa

WILLKIE FARR & GALLAGHER
1875 K Street, N.W.,
Washington, DC 20006- 1238
Tel: (202) 303- 1105
Contact: Kevin B. Clark

WILMER, CUTLER & PICKERING
2445 M Street, N.W.,
Washington, DC 20037
Tel: (202) 663- 6000
Contact: Charles A. Davidow / David P.
Donovan

APP039

NU00011534

APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

### DELAWARE

BLANK ROME LLP
1201 Market Street, 21st Floor,
Wilmington, DE 19801
Tel: (302) 425- 6400
Contact: Thomas P. Preston /
Neal C. Belgam

WOLF, BLOCK, SCHORR AND SOLISCOHEN LLP
Wilmington Trust Center,
1100 N. Market Street, Suite 1001,
Wilmington, DE 19801
Tel: (302) 777- 5860
Contact: Barry Klayman

### FLORIDA

AKERMAN SENTERFITT & EIDSON, P.A.
Citrus Center, 17th Floor,
255 South Orange Avenue,
Orlando, FL 32801
Tel: (407) 843- 7860
Contact: J. Thomas Cardwell

AKERMAN SENTERFITT & EIDSON, P.A.
SunTrust International Center, 28th Floor,
Miami, FL 33131
Tel: (305) 374- 5600
Contact: Stanley H. Wakshlag

CARLTON FIELDS
4000 International Place,
100 S.E. Second Street,
Miami, FL 33131- 9101
Tel: (303) 530- 0050
Contact: Steven J. Brodie

CARLTON FIELDS
One Harbour Place,
Tampa, FL 33602- 5790
Tel: (813) 223- 7000
Contact: Richard A. Denmon

GREENBERG TRAURIG
1221 Brickell Avenue,
Miami, FL 33131
Tel: (305) 579- 0500
Contact: Hilarie Bass

GREENBERG TRAURIG
777 South Flagler Drive,
West Palm Beach, FL 33401
Tel: (561) 650- 7900
Contact: Bradford D. Kaufman

HOLLAND & KNIGHT LLP
315 South Calhoun Street, Suite 600,
P.O. Drawer 810 (Zip 32302),
Tallahassee, FL 32301
Tel: (850) 224- 7000
Contact: Robert R. Feagin / Elizabeth
Bevington

HOLLAND & KNIGHT LLP
625 North Flagler Drive, Suite 700,
West Palm Beach, FL 33401
Tel: (561) 833- 2000
Contact: D. Culver (Skip) Smith

HOLLAND & KNIGHT LLP
200 South Orange Avenue, Suite 2600,
P.O. Box 1525 (Zip 32802),
Orlando, FL 32801
Tel: (407) 244- 1115
Contact: William Wilson

HOLLAND & KNIGHT LLP
701 Brickell Avenue - Suite 3000,
P.O. Box 015441 (Zip 33101),
Miami, FL 33131
Tel: (305) 374- 8500
Contact: Greg Baldwin / Tracy A. Nichols

HOLLAND & KNIGHT LLP
400 North Ashley Drive, Suite 2300,
Tampa, FL 33602
Tel: (813) 227- 8500
Contact: Frederick S. Schrils / G. Calvin Hayes

HOLLAND & KNIGHT LLP
50 North Laura Street, Suite 3900,
P.O. Box 52687 (Zip 32201),
Jacksonville, FL 32202
Tel: (904) 353- 2000
Contact: Fred Lotterhos / George E Schulz Jr /
Michael G. Tanner

MCGUIREWOODS LLP
Bank of America Tower,
50 North Laura Street,
Jacksonville, FL 32202
Tel: (904) 798- 3200
Contact: David M. Wells

STEEL HECTOR & DAVIS LLP
200 South Biscayne Boulevard,
Miami, FL 33131- 2398
Tel: (305) 577- 2957
Contact: Lewis F. Murphy, P.A. / Wendy Leavitt

APP040
NU00011535

APPENDIX A

## SECURITIES CLAIMS PANEL COUNSEL LIST

STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Boulevard,
Miami, FL 33131- 2385
Tel: (305) 358- 9900
Contact: Richard B. Simring

WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131- 2352
Tel: (305) 371- 2700
Contact: Charles C. Kline

### GEORGIA

ALSTON & BIRD
One Atlantic Center,
1201 W. Peachtree Street,
Atlanta, GA 30309- 3424
Tel: (404) 881- 7167
Contact: Peter Q. Bassett

ALSTON & BIRD
One Atlantic Center,
1201 W. Peachtree St.,
Atlanta, GA 30309
Tel: (404) 881- 7000
Contact: John Goselin / Mary Gill / Todd R.
David

KING & SPALDING
191 Peachtree Street,
Atlanta, GA 30303- 1763
Tel: (404) 572- 4600
Contact: M. Robert Thornton / Michael R. Smith

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, NE, Suite 5300,
Atlanta, GA 30308
Tel: (404) 527- 4000
Contact: J. David Dantzler, Jr. / David L. Balser

PAUL, HASTINGS, JANOFSKY & WALKER LLP
600 Peachtree Street, N.W., Suite 2400,
Atlanta, GA 30308- 2222
Tel: (404) 815- 2500
Contact: J. Allen Maines

SMITH, GAMBRELL & RUSSELL, LLP
Suite 3100, Promenade II,
1230 Peachtree Rd., N.E.,
Atlanta, GA 30309- 3592
Tel: (404) 815- 3730
Contact: John G. Despriet

### ILLINOIS

KATTEN MUCHIN ZAVIS ROSENMAN
525 W. Monroe Street, Suite 1600,
Chicago, IL 60661- 3693
Tel: (312) 902- 5452
Contact: David H. Kistenbroker

KATTEN MUCHIN ZAVIS ROSENMAN
525 W. Monroe Street, Suite 1600,
Chicago, IL 60661- 3693
Tel: (312) 902- 5200
Contact: Pamela G. Smith / Leah J.
Domitrovic / Steven L. Bashwiner / Mary
Ellen Hennessy / Bonita L. Stone

KIRKLAND & ELLIS
200 East Randolph Drive,
Chicago, IL 60601
Tel: (312) 861- 2000
Contact: Robert J. Kopecky

PIPER RUDNICK, LLP
203 North LaSalle Street, Suite 1800,
Chicago, IL 60601- 1293
Tel: (312) 368- 4000
Contact: Samuel B. Isaacson / Michael S.
Poulos

SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza,
10 South Dearborn Street,
Chicago, IL  60603
Tel: (312) 853- 7850
Contact: Hillie R. Sheppard

SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza,
10 South Desrborn Street,
Chicago, IL  60603
Tel: (312) 853- 7279
Contact: Eugene A. Schoon

SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza,
10 South Dearborn Street,
Chicago, IL  60603
Tel: (312) 853- 7734
Contact: Walter C. Carlson

SONNENSCHEIN NATH & ROSENTHAL
8000 Sears Tower,
Chicago, IL 60606
Tel: (312) 876- 8224
Contact: Christopher Q. King

APP041

NU00011536

APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

SONNENSCHEIN NATH & ROSENTHAL
8000 Sears Tower,
Chicago, IL 60606
Tel: (312) 876- 7483
Contact: David L. Schiavone

### LOUISIANA

LOCKE LIDDELL & SAPP LLP
601 Poydras Street, Suite 2400,
New Orleans, LA 70130- 6036
Tel: (504) 558- 5100
Contact: Brad Foster / John McElhaney /
W.C. (Peter) Flynn

### MASSACHUSETTS

EDWARDS & ANGELL LLP
101 Federal Street,
Boston, MA 02110- 1800
Tel: (617) 951- 3373
Contact: John D. Hughes

HALE & DORR LLP
60 State Street,
Boston, MA 02109
Tel: (617) 526- 6000
Contact: Jeffrey B. Rudman / William H. Paine /
Andrea J. Robinson

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center,
Boston, MA 02111
Tel: (617) 542- 6000
Contact: Patrick J. Sharkey / Peter M. Saparoff

ROPES & GRAY
One International Place,
Boston, MA 02110- 2624
Tel: (617) 951- 7566
Contact: John D. Donovan

TESTA, HURWITZ & THIBEAULT, LLP
125 High Street,
Boston, MA 02110
Tel: (617) 248- 7363
Contact: Jordan D. Hershman

TESTA, HURWITZ & THIBEAULT, LLP
125 High Street,
Boston, MA 02110
Tel: (617) 248- 7253
Contact: Brian E. Pastuszenski

### MINNESOTA

DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500,
Minneapolis, MN 55402
Tel: (612) 340- 2600
Contact: Brian E. Palmer / Edward J.
Pluimer / J. Jackson / Peter W. Carter /
Roger J. Magnuson

FAEGRE & BENSON LLP
90 South Seventh Street,
Minneapolis, MN 55402- 3901
Tel: (612) 336- 3000
Contact: Robert L. Schnell / Thomas L. Kimer

WINTHROP & WEINSTINE, PA
3000 Dain Rauscher Plaza,
60 South Sixth Street,
Minneapolis, MN 55402
Tel: (612) 347- 0700
Contact: David P. Pearson / Thomas H. Boyd

### NEW YORK

ARNOLD & PORTER
399 Park Avenue,
New York, NY 10022- 4690
Tel: (212) 715- 1000
Contact: Kent A. Yalowitz / Scott B. Schreiber

BLANK ROME LLP
The Chrysler Building,
405 Lexington Avenue,
New York, NY 10174
Tel: (212) 885- 5000
Contact: Robert J. Mittman

CADWALADER, WICKERSHAM & TAFT
100 Maiden Lane,
New York, NY 10038
Tel: (212) 504- 6000
Contact: Dennis J. Block / Gregory A.
Markel / Howard R. Hawkins / Jonathan M.
Hoff

CAHILL GORDON & REINDEL
Eighty Pine Street,
New York, NY 10005
Tel: (212) 701- 3000
Contact: Charles A. Gilman / Immanuel Kohn /
Thomas J. Kavaler

APP042

NU00011537

APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

CLIFFORD CHANCE US  LLP
200 Park Avenue,
New York, NY 10166
Tel: (212) 878- 8000
Contact: James B. Weidner / James N.
Benedict / John K. Carroll / Mark Holland

CRAVATH, SWAINE & MOORE
Worldwide Plaza,
825 Eighth Avenue,
New York, NY 10019- 7475
Tel: (212) 474- 1000
Contact: Evan R. Chesler / Francis P.
Barron / Julie A. North / Keith R. Hummel /
Paul C. Saunders / Peter T. Barbur /
Richard W. Clary / Robert H. Baron /
Ronald S. Rolfe / Rory O. Millson /
Thomas G. Rafferty

FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON
One New York Plaza,
New York, NY 10004
Tel: (212) 859- 8000
Contact: William G. McGuinness / Alexander R.
Sussman / Debra M. Tores / Douglas H. Flaum /
Barry G. Sher / John A. Borek

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue,
New York, NY 10166- 0193
Tel: (212) 351- 4000
Contact: Wesley G. Howell / Robert F. Serio /
Peter Beshar

GREENBERG TRAURIG
885 Third Avenue, 21st Floor,
New York, NY 10022
Tel: (212) 801- 3134
Contact: Robert A. Horowitz

KATTEN MUCHIN ZAVIS ROSENMAN
575 Madison Avenue,
New York, NY 10022
Tel: (212) 940- 8800
Contact: David Kistenbroker, Robert W. Gottlieb
and Joel W. Sternman.

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER
425 Park Avenue,
New York, NY 10022
Tel: (212) 836- 8663
Contact: Fredric W. Yerman

KIRKLAND & ELLIS
Citicorp Center, 153 East 53rd Street,
New York, NY 10022- 4675
Tel: (212) 446- 4800
Contact:  Yosef J. Riemer

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 Third Avenue,
New York, NY 10022
Tel: (212) 715- 9100
Contact: Gary P. Naftalis / Alan Friedman

MAYER, BROWN ROWE & MAW
1675 Broadway,
New York, NY 10019
Tel: (212) 506- 2500
Contact: Dennis P. Orr / Richard A. Spehr /
Steven Wolowitz

MILBANK, TWEED, HADLEY & MCCLOY
1 Chase Manhattan Plaza,
New York, NY 10005
Tel: (212) 530- 5832
Contact: Michael L. Hirschfeld

MILBANK, TWEED, HADLEY & MCCLOY
1 Chase Manhattan Plaza,
New York, NY 10005
Tel: (212) 530- 5149
Contact: Scott A. Edelman / Michael L.
Hirschfeld

MORRISON & FOERSTER LLP
1290 Avenue of the Americas,
New York, NY 10104
Tel: (212) 468- 8000
Contact: Anthony M. Radice / Jack C. Auspitz

PAUL, HASTINGS, JANOFSKY & WALKER LLP
399 Park Avenue, Thirty- First Floor,
New York, NY 10022- 4697
Tel: (212) 318- 6000
Contact: J. Allen Maines

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON
1285 Avenue of the Americas,
New York, NY 10019- 6064
Tel: (212) 373- 3000
Contact: Daniel J. Beller / Martin
Flumenbaum / Claudia Hammerman / Brad S.
Karp / Mark F. Pomerantz / Daniel J. Kramer /
Richard A. Rosen

APP043

NU00011538

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

PIPER RUDNICK LLP
1251 Avenue of the Americas,
New York, NY 10020
Tel: (212) 835- 6000
Contact: Joseph G. Finnerty III / Keara M.
Gordon

SCHULTE ROTH & ZABEL LLP
900 Third Avenue,
New York, NY 10022
Tel: (212) 756- 2000
Contact: Betty Santangelo / Howard O.
Godnick / Irwin J. Sugarman / Michael S.
Feldberg / Robert M. Abrahams

SIMPSON THACHER & BARTLETT
425 Lexington Avenue,
New York, NY 10017
Tel: (212) 455- 2000
Contact: Bruce D. Angiolillo / Michael J.
Chepiga / Paul C. Curnin / Roy L. Reardon

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane,
New York, NY 10038
Tel: (212) 806- 5400
Contact: Laurence Greenwald / Melvin A.
Brosterman / Robert Lewin

SULLIVAN & CROMWELL
125 Broad Street,
New York, NY 10004- 2498
Tel: (212) 558- 4000
Contact: D. Stuart Meiklejohn / Gandolfo V.
DiBlasi / John L. Hardiman / John L. Warden /
Philip L. Graham, Jr. / Richard H. Klapper

WACHTELL, LIPTON, ROSEN & KATZ
51 W. 52nd Street, 29th Floor,
New York, NY 10019
Tel: (212) 403- 1208
Contact:  Paul Vizcarrondo / Ted Mirvis

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue,
New York, NY 10153
Tel: (212) 310- 8000
Contact: Greg A. Danilow / Irwin H. Warren /
Joseph Allerhand

WILLKIE FARR & GALLAGHER
787 Seventh Avenue,
New York, NY 10019- 6099
Tel: (212) 728- 8000
Contact: Michael R. Young / Richard L. Posen

WILMER, CUTLER & PICKERING
520 Madison Ave.,
New York, NY 10022
Tel: (212) 230- 8800
Contact: Peter Vigeland / Robert B. McCaw

## OHIO

JONES, DAY, REAVIS & POGUE
North Point, 901 Lakeside Avenue,
Cleveland, OH 44114
Tel: (216) 586- 3939
Contact: John M. Newman / John W. Edwards

## OREGON

DAVIS WRIGHT TREMAINE
2300 First Interstate Tower,
1300 S.W. Fifth Avenue,
Portland, OR 97201
Tel: (503) 241- 2300
Contact: John F. McGrory

FOSTER PEPPER & SHEFELMAN
101 S.W. Main Street, 15th Floor,
Portland, OR 97204- 3223
Tel: (503) 221- 0607
Contact: Tim J. Filer / Roger D. Mellem

LANE POWELL SPEARS LUBERSKY LLP
601 S.W. Second Avenue, Suite 2100,
Portland, OR 97204
Tel: (503) 778- 2100
Contact: D. Meredith Wilson / Milo
Petranovich / Robert E. Maloney

## PENNSYLVANIA

BLANK ROME LLP
One Logan Square,
Philadelphia, PA 19103- 6998
Tel: (215) 569- 5500
Contact: Alan J. Hoffman / Ian Comisky

BUCHANAN INGERSOLL, PC
One Oxford Centre, 20th Floor,
301 Grant Street,
Pittsburgh, PA 15219- 8800
Tel: (412) 562- 1880
Contact: John R. Leathers

APP044

NU00011539

APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

MORGAN, LEWIS & BOCKIUS
1701 Market Street,
Philadelphia, PA 19103- 2921
Tel: (215) 963- 5000
Contact: Francis S. Chlapowski / Marc J.
Sonnenfeld / Elizabeth Hoop Fay /
Christopher (Kip) P. Hall / Alfred J.
Lechner / Karen Pieslak Pohlmann /
Kevin T. Rover / Stuart Sarnoff / Keith Olin

PEPPER HAMILTON LLP
3000 Two Logan Square, Eighteenth
and Arch Streets,
Philadelphia, PA 19103- 2799
Tel: (215) 981- 4000
Contact: Barbara W. Mather / Jon A.
Baughman / Laurence Z. Shiekman / M.
Duncan Grant / Robert L. Hickok / Thomas E.
Zemaitis

WOLF, BLOCK, SCHORR and SOLIS-
COHEN LLP
1650 Arch Street, 22nd Floor,
Philadelphia, PA 19103- 2097
Tel: (215) 977- 2058
Contact: Ian A.L. Strogatz / Jay A. Dubow /
Jerome J. Shestack / M. Norman Goldberger /
Mark L. Alderman

**TEXAS**

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
Pennzoil Place -  South Tower,
711 Louisiana Street, Suite 1900,
Houston, TX 77002
Tel: (512) 499- 6250
Contact: Paul R. Bessette / Gregg C. Laswell

AKIN, GUMP, STRAUSS, HAUER & FELD,
L.L.P.
1700 Pacific Avenue, Suite 4100,
Dallas, TX 75201- 4675
Tel: (512) 499- 6250
Contact: Paul R. Bessette / Edward S.
Koppman / Orrin L. Harrison III

FULBRIGHT & JAWORSKI L.L.P
1301 McKinney, Suite 5100,
Houston, TX 77010- 3095
Tel: (713) 651- 5151
Contact: Frank G. Jones / Robert S. Harrell /
Gerard G. Pecht

FULBRIGHT & JAWORSKI L.L.P
2200 Ross Avenue, Suite 2800,
Dallas, TX 75201
Tel: (214) 855- 8000
Contact: Karl G. Dial

JENKENS & GILCHRIST, P.C.
1100 Louisiana, Suite 1800,
Houston, TX 77002
Tel: (713) 951- 3300
Contact: John Gilliam

JENKENS & GILCHRIST, P.C.
1445 Ross Avenue Suite 3200,
Dallas, TX 75202
Tel: (214) 855- 4306
Contact: John Gilliam

LOCKE LIDDELL & SAPP LLP
100 Congress Avenue, Suite 300,
Austin, TX 78701- 4042
Tel: (512) 305- 4700
Contact: Brad Foster / John McElhaney /
C.W. (Peter) Flynn

LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue, Suite 2200,
Dallas, TX 75201- 6776
Tel: (214) 740- 8000
Contact: Brad Foster / John McElhaney /
C.W. (Peter) Flynn

LOCKE LIDDELL & SAPP LLP
600 Travis, 3400 Chase Tower,
Houston, TX 77002
Tel: (713) 226- 1200
Contact: Brad Foster / John McElhaney /
C.W. (Peter) Flynn

THOMPSON & KNIGHT, PC
Burnett Plaza, Suite 1600,
801 Cherry Street, Unit #1,
Fort Worth, TX 76102- 6881
Tel: (817) 347- 1700
Contact: Timothy R. McCormick

THOMPSON & KNIGHT, PC
1200 Smith Street, Suite 3600,
Houston, TX 77002
Tel: (713) 654- 8111
Contact: Timothy R. McCormick

APP045

NU00011540

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

THOMPSON & KNIGHT, PC
1700 Pacific Avenue, Suite 3300,
Dallas, TX 75201
Tel: (214) 969- 1103
Contact: Timothy R. McCormick

THOMPSON & KNIGHT, PC
98 San Jacinto Boulevard, Suite 1200,
Austin, TX 78701
Tel: (512) 469- 6100
Contact: Timothy R. McCormick

WEIL, GOTSHAL & MANGES LLP
100 Crescent Court,
Dallas, TX 75201
Tel: (214) 746- 7700
Contact: Ralph I. Miller

WEIL, GOTSHAL & MANGES LLP
700 Louisiana - Suite 1600,
Houston, TX 77002
Tel: (713) 546- 5000
Contact: Ralph I. Miller

**VIRGINIA**

COOLEY GODWARD, LLP
One Freedom Square, Reston Town Center,
11951 Freedom Drive,
Reston, VA 20190- 5601
Tel: (703) 456- 8082
Contact: Robert R. Vieth

GREENBERG TRAURIG
1750 Tysons Boulevard 12th Fl.,
McLean, VA 22102
Tel: (703) 749- 1300
Contact: Joe R. Reeder / John Scalia

MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800,
McLean, VA 22102
Tel: (703) 712- 5000
Contact: Charles McIntyre

MCGUIREWOODS LLP
One James Center, 901 East Cary Street,
Richmond, VA 23219
Tel: (804) 775- 1000
Contact: Anne Marie Whittemore

WILMER, CUTLER & PICKERING
1600 Tysons Boulevard, 10th Floor,
Tysons Corner, VA 22102
Tel: (703) 251- 9700
Contact: David P. Donovan

WILSON, SONSINI, GOODRICH & ROSATI
7927 Jones Branch Drive, Suite 400,
McLean, VA 22102
Tel: (650) 320- 4904
Contact: Bruce Vanyo

**WASHINGTON**

DAVIS WRIGHT TREMAINE
2600 Century Square, 1501 Fourth Avenue,
Seattle, WA 98101- 1688
Tel: (206) 622- 3150
Contact: Stephen M. Rummage

DAVIS WRIGHT TREMAINE
2600 Century Square, 1501 Fourth Avenue,
Seattle, WA 98101- 1688
Tel: (206) 622- 3150
Contact: Ladd B. Leavens

FOSTER PEPPER & SHEFELMAN
1111 Third Avenue, Suite 3400,
Seattle, WA 98101- 3299
Tel: (206) 447- 8998
Contact: Tim J. Filer / Roger D. Mellem

GRAY CARY
701 Fifth Avenue, Suite 7000,
Seattle, WA 98104- 7044
Tel: (206) 839- 4800
Contact: Stellman Keehnel

LANE POWELL SPEARS LUBERSKY LLP
1420 Fifth Avenue, Suite 4100,
Seattle, WA 98101- 2338
Tel: (206) 223- 7000
Contact: Christopher B. Wells / James B.
Stoetzer / James L. Robart / Larry S. Gangnes /
Rudy A. Englund

PERKINS COIE LLP
1201 Third Avenue, Ste. 4800,
Seattle, WA 98101- 3099
Tel: (206) 583- 8888
Contact: Barry M. Kaplan / Harry H. Schneider /
Ronald L. Berenstain

APP046

NU00011541

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

### ALABAMA

LLOYD GRAY & WHITEHEAD
Two Perimeter Park South
Suite 100
Birmingham, AL 35423
Tel: (205) 967-8822
Contact: Steven E. Whitehead, Esq.
*Class Action Approved*

LUTHER OLDENBURG & RAINEY
63 S. Royal Street
Mobile, AL
Tel: (334) 433-8088
Contact: Rudene C. Oldenburg, Esq.

### ALASKA

LANE POWELL SPEARS LUBERSKY LLP
420 L. Street
Suite 300
Anchorage, AK 99501-1937
Tel: (206) 223-7019
Contact: James B. Stoetzer, Esq.
*Class Action Approved*

### ARIZONA

SHUGART THOMPSON/GOODWIN RAUP PC
One Columbus Plaza
Suite 1200
Phoenix, AZ 85012-1942
Tel: (602) 650-2000
Contact: Calvin Raup
*Class Action Approved*

CAMPBELL YOST
234 North Central Avenue
Suite 600
Phoenix, AZ 85004
Tel: (602) 322-1600
Contact: Martin P. Clare, Esq.
*Class Action Approved*

### ARKANSAS

HUCKABAY MUNSON ROWLETT & TILLEY
1900 West Capital Avenue
Suite 1900
Little Rock, AR 72201
Tel: (501) 374-6535
Contact: Bruce Munson, Esq.
*Class Action Approved*

### CALIFORNIA

EPSTEIN BECKER & GREEN PC
Two Embarcadero Center
Suite 1650
San Francisco, CA 94111
Tel: (415) 398-3500
Contact: Ron Souza, Esq
*Class Action Approved*

IRELL & MANELLA
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4275
Tel: (310) 277-1010
Contact: James F. Elliot, Esq.
*Class Action Approved*

JACKSON LEWIS SCHNITZLER & KRUPMAN
1888 Century Park East
Suite 1600
Los Angeles, CA 90067
Tel: (310) 203-0200
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved-All Locations*

1215 K Street, Suite 1800
Sacramento, CA 95814
Tel: (916) 341-0404
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.

199 Freemont Street, 10th Floor
San Francisco, CA 94105
Tel: (415) 394-9400
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.

KUTAK ROCK
117 E. Colorado Avenue
Suite 210
Pasadena, CA 91105
Tel: (626) 432-1630
Contact: Gregory Hurley, Esq.

LEWIS D'AMATO BRISBOIS & BISGAARD LLP
221 N. Figueroa Street, Suite 1200
Los Angeles, CA 90012
Tel: (213) 500-1800
Contact: Robert F. Lewis, Esq. &
  Gary S. Rattet, Esq.

APP047
NU00011542

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

One Sansome Street, Suite 1900
San Francisco, CA 94104
Tel: (415) 362- 2580
Contact: Duane C. Musfelt, Esq.

550 West C Street, Suite 800
San Diego, CA 92101
Tel: (619) 233- 1006
Contact: R. Gaylord Smith, Esq.

650 Town Center Drive, Suite 1400
Costa Mesa, CA 92626
Tel: (714) 545- 9200
Contact: Mercedes Cruz, Esq.

Suite 600, 650 East Hospitality La
Tel: (909) 387- 1130
Contact: Joseph Arias, Esq.

2500 Venture Oaks Way, Suite 200
Sacramento, CA 95833
Tel: (916) 564- 5400
Contact: David L. Cohen, Esq

O'MELVENY & MYERS LLP
610 Newport Center Driver
Newport Beach, CA 92660
Tel: (714) 760- 9600
Contact: Stephen P. Page, Esq.
*Class Action Approved-All Locations*

Embarcadero Center West
275 Battery Street
San Francisco, CA 94111- 3305
Tel: (415) 984- 8700
Contact: Douglas Dexter, Esq.

400 South Hope Street
15th Floor
Los Angeles, CA 90071- 2899
Tel: (213) 430- 6000
Contact: Gordon E. Krischer, Esq.

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER
1055 West Seventh Street
Los Angeles, CA 90017
Tel: (213) 624- 3044
Contact: James A. Stankowski, Esq.

650 California Street
San Francisco, CA 94108
Tel: (415) 433- 0990
Contact: Louis H. Castoria, Esq.

COLORADO

KUTAK ROCK
717 Seventeenth Street
Suite 2800
Denver, CO 80202
Tel: (303) 297- 2400
Tel: (626) 432- 1630
Contact: Gregory Hurley, Esq.

SHERMAN & HOWARD
633 17th Street
Suite 3000
Denver, CO 80202
Tel: (303) 297- 2900
Contact: Andrew Bolin, Esq.

PATTON BOGGS
1660 Lincoln Street
Suite 1900
Denver, CO 80264
Tel: (303) 830- 1776
Contact: Timothy D. Kraus, Esq.

CONNECTICUT

EPSTEIN BECKER & GREEN PC
One Landmark Plaza
Suite 1800
Stamford, CT 06901- 2601
Tel: (212) 351- 4500
Contact: Howard Pianko, Esq
*Class Action Approved*

JACKSON LEWIS SCHNITZLER &
KRUPMAN
55 Farmington Avenue
Suite 1200
Hartford, CT 06105
Tel: (860) 522- 0404
Tel: (914) 328- 0404
Contact: Steven Baderian, Esq.
*Class Action Approved-All Locations*

177 Broad Street
Post Office Box 251
Stamford, CT 06904- 0251
Tel: (203) 961- 0404
Tel: (914) 328- 0404
Contact: Steven D. Baderian, Esq.

APP048
NU00011543

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

### DELAWARE

WOLF BLOCK SCHORR & SOLIS- COHEN
One Rodney Square
10th & King Street
Wilmington, DE 19801
Tel: (302) 777- 5860
Contact: Barry M. Klayman, Esq.
*Class Action Approved*

GREENBERG TRAURIG
The Brandy Wine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Tel: (302) 661- 7000
        (302) 661- 1604

### DISTRICT OF COLUMBIA

DRINKER BIDDLE PITNEY HARDEN
1500 K Street, N.W.
Suite 110
Washington, DC 20005
Tel: (202) 842- 8857
Contact: Jennifer Smith, Esq.

PATTON BOGGS LLP
2550 M Street, N.W.
Washington, DC 20037
Tel: (202) 457- 6000
Contact: Douglas B. Mishkin, Esq. or
        Sally D. Garr, Esq.
*Class Action Approved*

JACKSON LEWIS SCHNITZLER &
KRUPMAN
13501 I Street, NW
Suite 510
Washington, DC 20005
Tel: (202) 347- 5200
Tel: (914) 328- 0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER
1341 G. Street NW
Washington, DC 20005
Tel: (202) 626- 7660
Contact: Paul D. Krausse, Esq.
        Robert B. Wallace, Esq.
*Class Action Approved*

JORDON COYNE & SAVITS, LLP
1100 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 496- 2810
Contact: Deborah Murrell Whelihan, Esq.
*Class Action Approved*

FORD & HARRISON
1300 19th Street NW
Suite 700
Washington, DC 20036
Tel:  (202) 719- 2012
        (202) 719- 2000
Contact: David Rosenberg, Esq.

GREENBERG TRAURIG
800 Connecticut Avenue, NW Ste 500
Washington, DC 20036
Tel: (202) 331- 3100
Contacts: C. Allen Foster, Esq., Eric C.
Rowe, Esq., & Joe Reeder, Esq.
*Class Action Approved*

### FLORIDA

AKERMAN SENTERFITT
Suntrust International Center
One Southeast 3rd Ave, 28th FL
Miami, FL 33131- 1714
Tel: (305) 982- 5543
Contact: Michael Marsh, Esq.
*Class Action Approved*

JACKSON LEWIS SCHNITZLER &
KRUPMAN
First Union Financial Center
200 South Biscayne Boulevard
Suite 2600
Miami, FL 33131
Tel: (305) 577- 7600
Tel: (914) 328- 0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved-All Locations*

390 North Orange Avenue
Suite 1285
Orlando, FL 32801- 1641
Tel: (407) 246- 8440
Tel: (914) 328- 0404
Contact: Steven D. Baderian, Esq.

APP049

NU00011544

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

VERNIS & BOWLING
517 Northlake Blvd
North Palm Beach, FL 33408
Tel: (561) 845- 8781
Contact: G. Jeffrey Vernis, Esq.

CARLTON FIELDS WARD EMMANUAL
SMITH & CUTLER PA
100 S.E. 2nd Street
Suite 4000
Miami, FL 33131
Tel: (305) 539- 7225
Contact: Nancy H. Henry, Esq.

KUBICKI DRAPER
25 West Flagler Street Penthouse
Miami, Florida 33130
Tel: (305) 374- 1212
Contact: Gene Kubicki
*Class Action Approved*

GREENBERG TRAURIG
515 East Las Olas Boulevard
Ft. Lauderdale, FL 33301
Tel: (954) 765- 0500
Contact: Frank Scruggs, Esq.
*Class Action Approved-All Locations*

1221 Brickell Avenue
Miami, FL 33131
Tel: (305) 579- 0500
Contact: Ron Rosengarten, Esq.

KATZ BARRON SQUITERO FAUST
2699 So. Bayshore Drive
7th Floor
Miami, FL 33133- 5408
Tel: (305) 856- 2444
Contact: Todd Boyd, Esq.

### GEORGIA

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309- 3424
Tel: (404) 881- 7000
Contact: Peter Q. Bassett, Esq. or
Robert P. Riordan, Esq.
*Class Action Approved*

FISHER & PHILLIPS LLP
1500 Resurgens Plaza
945 East Paces Ferry Road
Atlanta, GA 30326
Tel: (404) 240- 4235
Contact: D. Albert Brannen, Esq. or
Ilene W. Berman, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
1900 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA 30303- 1226
Tel: (404) 525- 8200
Tel: (202) 328- 0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

LONG ALDRIDGE & NORMAN
One Peachtree Center
5300
Atlanta, GA 30308
Tel: (404) 527- 8312
Contact: Phillip A. Bradley, Esq.

### HAWAII

LOVE YAMAMOTO & MOTOOKA
1000 Bishop Street
Honolulu, HI 96813
Tel: (808) 532- 7900
Contact: Chad Love, Esq.
*Class Action Approved*

### IDAHO

QUANE SMITH LLP
US Bank Plaza, Suite 1600
101 South Capital Blvd
Boise, ID 83702
Tel: (208) 345- 0960
Contact: Jeremiah A. Quane, Esq.
*Class Action Approved*

### ILLINOIS

CLAUSEN MILLER PC
10 South La Salle Street
Suite 1600
Chicago, IL 60603- 1098
Tel: (312) 855- 1010
Contact: James S. Barber, Esq. or
James Nolan, Esq.

Revised (12/02)     *Archive Copy*     4

APP050

NU00011545

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

FREEBORN & PETERS
311 South Wacker Drive
Suite 3000
Chicago, IL 60606- 6677
Tel: (312) 360- 6000
Contact: David H. Kistenbroker, Esq. or
    Steven M. Hartmann, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
320 West Ohio Street
Suite 500
Chicago, IL 60610
Tel: (312) 787- 4949
Tel: (914) 328- 0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

SIDLEY & AUSTIN
One First National Plaza
Chicago, IL 60603
Tel: (312) 853- 7000
Contact: James S. Whitehead, Esq.,
    Julie O. Allen, Esq., Lawrence
    Lawrence I. Kipperman, Esq.,
    Thomas A. Roberts, Esq.
*Class Action Approved*

SONNENSCHEIN NATH & ROSENTHAL
800 Sears Towers
Chicago, IL 60601- 1692
Tel: (312) 876- 3112
Contact: Roger T. Brice, Esq.
*Class Action Approved*

VEDDER PRICE KAUFMAN &
KAMMHOLZ
222 N. La Salle Street
Chicago, IL 60601- 1003
Tel: (312) 609- 7745
Contact: Barry Hartstein, Esq.
*Class Action Approved*

### INDIANA

KIGHTLINGER & GRAY
Market Square Center, Suite 660
151 North Delaware
Tel: (317) 638- 4521
Contact: Donald L. Dawson, Esq.
*Class Action Approved*

### IOWA

NYEMASTER GOODE VOIGTS WEST
HANSELL & O'BRIEN
700 Walnut Street
Des Moines, IA 50309
Tel: (515) 283- 3100
Contact: Hayward Draper, Esq.
*Class Action Approved*

### KENTUCKY

BOEHL STOPHER & GRAVES
400 West Market Street
Suite 2300
Louisville, KY 40222
Tel: (502) 589- 5980
Contact: Ed Stopher, Esq.
*Class Action Approved*

HARLIN, PACKER ALCOTT &
SHOULDOIN
519 East Tenth Street
PO Box 390
Bowling Green, KY 42102- 0390
Tel: (270) 842- 5611
Contact: William J. Parker, Esq.
*Class Action Approved*

### LOUISIANA

ADAMS & REESE
4500 One Shell Square
New Orleans, LA 70139
Tel: (504) 581- 3234
Contact: Janis VanMeerveld, Esq.
*Class Action Approved*

DEUTSCH KERRIGAN & STILES LLP
755 Magazine Street
New Orleans, LA 70130
Tel: (504) 581- 5141
Contact: Ellis B. Muorv, Esq.

LOCKE LIDDLE & SAPP LLP
Pan American Life Center
601 Poydras Street, Suite 2400
New Orleans, LA 70130- 6036
Tel: (504) 558- 5106
Contact: Amelia W. Koch, Esq.

APP051

NU00011546

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

MCGLINCHEY STAFFORD
643 Magazine Street
New Orleans, LA 70130
Tel: (504) 586- 1200
Contact: E. Frederick Preis, Jr., Esq.

THE JUNEAU FIRM
The Harding Center
1018 Harding Strret, Suite 202
Lafayette, LA 70503- 2412
Tel: (337) 269- 0052
Contact: Mike Juneau

**MAINE**

MOON MOSS MCGILL & BACHELDER PA
10 Free Street
PO Box 7250
Portland, ME 04112- 7250
Tel: (207) 228- 1526
Contact: Richard O. Moon, Esq.

**MARYLAND**

WHITEFORD TAYLOR & PRESTON LLP
Seven St. Paul Street
Baltimore, MD 21202
Tel: (410) 347- 8700
Contact: William Ryan, Jr., Esq.

JORDAN COYNE & SAVITS, LLP
33 Wood Lane
Rockville, MD 20850
Tel: (301) 424- 4161
Contact: Deborah Murrell Whelihan

**MASSACHUSETTS**

FOLEY HOAG & ELIOT LLP
One Post Office Square
Boston, MA 02109
Tel: (617) 832- 1000
Contact: Peter M. Rosenblum

HUTCHINS WHEELER & DITTMAR PC
101 Federal Street
Boston, MA 02110
Tel: (617) 951- 6624
Contact: David S. Rosenthal, Esq.
*Class Action Approved*

JACKSON LEWIS SCHNITZLER & KRUPMAN
One Beacon Street
33rd Floor
Boston, MA 02108
Tel: (617) 367- 0025
Tel: (914) 328- 0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, PC
One Financial Center
Boston, MA 02110
Tel: (617) 542- 6000
Contact: Patrick Sharkey, Esq. &
          Robert Gault, Esq.
*Class Action Approved*

GETMAN, STACEY, TAMPOSI, SCHULTESS & STEERE, PA
163 South River Road
Bedford, NH 03110
Tel: (603) 634- 4300
Contact: Laurence W. Getman, Esq. or
          Dona Feeney, Esq.
*Western Mass. Only*

NIXON PEABODY LLP
101 Federal Street
Boston, Ma. 02110
Tel: (516) 832- 7564
Contact: Joseph J. Ortego, Esq.
*Class Action Approved*

MURPHY HESSE TOOMEY & LEHANE
300 Crown Colony, Suite 410
Quincy, MA 02269
Tel: (617) 479- 6467
Contact: James Toomey, Esq.

PEABODY & ARNOLD
50 Rowes Wharf
Boston, MA 02110
Tel: (617) 951- 2100
Contact: William A. Cotter, Esq.

**MICHIGAN**

DYKEMA GOSSETT, LLP
1577 N. Woodward Avenue
Bloomfield Hills, MI 48304
Tel: (248) 203- 0705
Contact: Robert L. Duty, Esq.

APP052
NU00011547

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

MADDIN HOUSER WARTELL ROTH
28400 Northwestern Highway
PO Box 215
Southfield, MI 48034
Tel: (248) 354- 4080
Contact: Harvey Heller, Esq.

MILLER CANFIELD PADDOCK AND
STONE PLC
1200 Campau Square Plaza
99 Monroe Avenue, NW
Grand Rapids, MI 49503
Tel: (616) 454- 8656
Contact: Charles S. Mishkind, Esq.
*Class Action Approved-All Locations*

150 West Jefferson, Suite 2500
Detroit, MI 48226
Tel: (313) 963- 6420
Contact: Charles S. Mishkind, Esq. or
        Carl H. Von Ende, Esq.

PLUNKETT & COONEY
505 N. Woodward Avenue
Suite 3000
Bloomfield Hills, MI 48304
Tel: (248) 901- 4005
Contact: Teresa Smith Lloyd, Esq.

BRADY HATHAWAY & BRETZ
1330 Buhl Building
Detroit, MI 48226- 3602
Tel: (313) 965- 3700
Contact: Dannel Bertz

### MINNESOTA

DORSEY & WHITNEY LLP
Philsbury Center South
220 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 340- 2600
Contact: Robert R. Reinhart, Esq., or
        Peter S. Hendrickson, Esq.
*Class Action Approved*

JACKSON LEWIS SCHNITZLER &
KRUPMAN
150 Fifth Street Towers
150 South Fifth Street, Suite 2800
Minneapolis, MN 55402
Tel: (612) 341- 8131
Tel: (516) 364- 0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

MEAGHER & GEER LLP
4200 Multifoods Tower
Minneapolis, MN 55402
Tel: (612) 338- 0661
Contact: James F. Roegge, Esq.

### MISSOURI

ARMSTRONG & TEASDALE LLP
2345 Grand Blvd
Suite 2000
Kansas City, MO 64108
Tel: (816) 221- 3420
Contact: Lynn W. Hursh, Esq.
*Class Action Approved*

BROWN & JAMES, PC
705 Olive Street
Suite 1100
St. Louis, MO 63101- 2270
Tel: (314) 421- 3128
Contact: Charles E. Reis, IV, Esq.

GALLOP JOHNSON & NEUMAN LC
Interco Corporate Tower
101 South Hanley
St. Louis, MO 63105
Tel: (314) 862- 1200
Contact: Ron Hack, Esq.

LEWIS RICE & FINGERSH, L.C.
500 N. Broadway, Suite 2000
St. Louis, MO 63102- 2147
Tel: (314) 444- 7600
Contacts: Robert J. Golterman, Esq.
         Neal F. Perryman, Esq.
*Class Action Approved*

### MISSISSIPPI

BUTLER SNOW O'MARA STEVENS &
CANNADA PLLC
210 East Capitol Street
Jackson, MS 39201
Tel: (601) 948- 5711
Contact: Jeffrey Walker, Esq.
*Class Action Approved*

WATKINS & EAGER PLLC
400 East Capitol Street
Jackson, MS 39201
Tel: (601) 948- 6470
Contact: Kenneth E. Milan, Esq.

APP053

NU00011548

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

### MONTANA

MATOVICH AND KELLER PC
225 First Citizens Bank
2812 First Avenue N.
Billings, MT 59101
Tel: (406) 252- 5500
Contact: E. Matovich, Esq.

### NEBRASKA

KUTAK ROCK
1630 Farnam Street
Omaha, NE 68102
Tel: (402) 346- 6000
Contact: Gregory Hurley, Esq.

### NEW HAMPSHIRE

GETMAN STACEY TAMPOSI
SCHULTESS & STEERE, PA
163 South River Road
Bedford, NH 03110
Tel: (603) 634- 4300
Contact: Laurence W. Getman, Esq. or
         Dona Feeney, Esq.

### NEW JERSEY

DRINKER BIDDLE PITNEY HARDEN
105 College Road
Suite 300
Princeton, NJ 08542
Tel: (609) 716- 6500
Contact: Jon Epstein, Esq.

EPSTEIN BECKER & GREEN PC
One Riverfront Plaza, 7th Floor
Newark, NJ 07102
Tel: (973) 639- 8262
Contact: Howard Pianko, Esq.
*Class Action Approved*

HARWOOD LLOYD
130 Main Street
Hackensack, NJ 07601
Tel: (201) 487- 1080
Contact: Frank Lloyd, Esq.
         Elizabeth Lorell, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
60 Washington Street
Morristown, NJ 07960- 6844
Tel: (973) 538- 6890
Tel: (914) 328- 0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

LINDABURY MCCORMICK &
ESTABROOK
53 Cardinal Drive
PO Box 2369
Westfield, NJ 07091
Tel: (908) 233- 6800
Contact: Richard Cino, Esq.

SAIBER, SCHLESINGER, SATZ &
GOLDSTEIN
One Gateway Center, 13th Floor
Newark, NJ 07102- 5311
Tel: (973) 622- 3333
Contact: Jeffrey Lorell, Esq.

THOMPKINS MCGUIRE WACHENFELD &
BARRY
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102- 4070
Tel: (973) 622- 3000
Contact: William B. McGuire, Esq.

### NEVADA

BARKER BROWN BUSBY CHRISMAN &
THOMAS
300 South Fourth Street
Suite 800
Las Vegas, NV 89101
Tel: (702) 386- 1086
Contact: James P. Chrisman, Esq.

### NEW MEXICO

BUTT THORNTON & BAEHR PC
4101 Indian School Road NE
Suite 3005
Albuquerque, NM 87110
Tel: (505) 884- 0777
Contact: Agnes Fuentevilla Padilla, Esq.

APP054
NU00011549

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

**NEW YORK**

D'AMATO & LYNCH
70 Pine Street
New York, NY 10270
Tel: (212) 269-0927
Contact: Luke Lynch Jr., Esq.

EPSTEIN BECKER & GREEN PC
250 Park Avenue, 12th Floor
New York, NY 1010019
Tel: (212) 351-4500
Contact: Howard Pianko, Esq.
*Class Action Approved*

GARBARINI & SCHER PC
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 764-4000
Contact: James Kachadoorian, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
101 Park Avenue
37th Floor
New York, NY 10178
Local Tel: (212) 697-8200, (212) 545-4000
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved-All Locations*

1000 Woodbury Road
Suite 402
Woodbury, NY 11797
Tel: (516) 364-0404
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.

One North Broadway
White Plains, NY 10601-2305
Contact: Steve Baderian, Esq.
Tel: (914) 328-0404

JONES HIRSCH CONNORS BULL
101 East 52nd Street
New York, NY 10022
Tel: (212) 507-1000
Contact: Richard Steer

KAUFMAN BORGEEST & RYAN
747 Third Avenue
New York, NY 10017
Tel: (212) 980-9600
Contact: Julianna Ryan

KRAMER LEVIN NAFTALIS & FRANKEL
919 Third Avenue
New York, NY 10022
Tel: (212) 715-9100
Contact: Kevin LeBlang, Esq.

OHRENSTEIN & BROWN LLP
One World Trade Center
85th Floor
New York, NY 10048
Tel: (212) 682-4500
Contact: Michael D. Brown, Esq.

WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, NY 10019-6099
Tel: (212) 728-8000
Contact: Stephen Greiner, Esq.
*Class Action Approved*

HODGSOM, RUSS, ANDREWS, WOODS
& GOODYEAR, LLP
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Tel: (716) 848-1496
Contact: Patrick J. Tomovic, Esq

NIXON PEABODY LLP
990 Stewart Avenue
Garden City, NY 11530
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq
*Class Action Approved-All Locations*

Omni Plaza
300 South Pearl St.
Albany NY 12207
Tel: (518) 427-2650
Contact: Joseph J. Ortego, Esq

437 Madison Avenue
New York NY 10022
Tel: (212) 940-3000
Contact: Joseph J. Ortego, Esq

APP055
NU00011550

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

Clinton Square, PO Box 31051
Rochester, NY 14603
Tel: (716) 263- 1000
Contact: Joseph J. Ortego, Esq

### NORTH CAROLINA

COZEN & O'CONNOR
2100 One First Union Center
301 South College St. Suite 2100
Charlotte, NC 28202
Tel: (704) 376- 3400
Contact: Jay Goldstein, Esq.

PARKER POE ADAMS & BERNSTEIN
401 S. Tyon Street, Suite 3000
Charlotte, NC 28202
Tel: (704) 372- 9000
Contact: Jonathan M. Crotty

### OHIO

DINSMORE SHOAL
175 South 3rd Street
10th Floor
Columbus, OH 43215
Tel: (614) 628- 6220

GALLAGHER SHARP FULTON &
NORMAN
Seventh Floor Bulkley Building
1501 Euclid Avenue
Cleveland, OH 44115
Tel: (216) 241- 5310
Contact: Alton Stephens, Esq.
*Class Action Approved*

JANIK & DORMAN
Building Two
8223 Brecksville Road
Cleveland, OH 44141
Tel: (440) 838- 7600
Contact: Steven G. Janik, Esq.
*Class Action Approved*

### OKLAHOMA

RHODES HIERONYMUS JONES TUCKER
& GABLE PLLC
P.O. Box 21100
Tel: (918) 582- 1173
Contact: Chris L. Rhodes, III, Esq.

### OREGON

BULLIVANT HOUSER BAILEY
300 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204- 2089
Tel: (503) 228- 6351
Contact: Chrys A. Martin, Esq.

LANE POWELL SPEARS LUBERSKY LLP
601 SW Second Avenue
Suite 2100
Portland, OR 97204
Tel: (206) 223- 7019
Contact: James B. Stoetzer, Esq.
*Class Action Approved*

LINDSAY HART NEIL & WEIGLER LLP
1300 West Fifth Avenue
Suite 3400
Portland, OR 97201- 5696
Tel: (503) 226- 7677
Contact: Lisa F. Rackner, Esq.
          Jerard S. Weigler, Esq.

### PENNSYLVANIA

COZEN AND O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665- 2000
Contact: Jeffrey Pasek, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
One PPG Place
29th Floor
Pittsburgh, PA 15222- 5414
Tel: (412) 232- 0404
Tel: (914) 328- 0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

MARSHALL DENNEHY
1845 Walnut Street
Philadelphia, PA 19103
Tel: (215) 575- 2600
Contact: Phil Torin, Esq.
          Jay Rothman, Esq.

APP056
NU00011551

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103- 2799
Tel: (215) 981- 4000
Contact: Anthony B. Haller, Esq.
*Class Action Approved*

WILSON ELSER MOSKOWITZ EDELMAN
& DICKER LLP
The Curtis Center
Suite 1130 East
Philadelphia, PA 19106
Tel: (215) 627- 6900
Contact: Lou Isaacsohn, Esq.
*Class Action Approved*

WOLF BLOCK SCHORR & SOLIS -  COHEN
LLP
1650 Arch Street
Philadelphia, PA 19103 -  2097
Tel: (215) 977- 2588
Contact: Alan Kessler, Esq.
*Class Action Approved*

HAMBURG & GOLDEN
1601 Market Street, Suite 565
Philadelphia, PA 19103- 1443
Tel: (215) 255- 8590
Contact: Neil Hamburg, Esq.

### RHODE ISLAND

ROPES & GRAY
30 Kennedy Plaza
Providence, RI 02903- 2328
Tel: (401) 455- 4400
Contact: William S. Eggeling, Esq.
*Class Action Approved*

NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903
Tel: (516) 832- 7564
Contact: Joseph J. Ortego, Esq
*Class Action Approved*

### SOUTH CAROLINA

JACKSON LEWIS SCHNITZLER &
KRUPMAN
2100 Daniel Building
301 S. Main Street
Greenville, SC 29601
Tel: (914) 328- 0404
Contact: Steve Baderian, Esq.
*Class Action Approved*

YOUNG CLEMENT RIVERS & TISDALE
LLP
P.O. Box 993
28 Boad Street
Charleston, SC 29402
Tel: (864) 557- 4000
Contact: Shawn D. Wallace, Esq.

### SOUTH DAKOTA

COSTELLO PORTER HILL HEISTERKAMP
BUSHNELL & CARPENTER LLP
200 Security Building
P.O. Box 290
Rapid City, SD 57709
Tel: (605) 343- 2410
Contact: Robert L. Lewis, Esq.

DAVENPORT EVANS HURWITZ & SMITH
LLP
P.O. Box 1030
513 South Main Avenue
Sioux Falls, SD 57101- 1030
Tel: (605) 336- 2880
Contact: Susan Brunick Simons, Esq.
            Jean H. Bender, Esq.

### TENNESSEE

LEITNER WILLIAMS DOOLEY &
NAPOLITAN PLLC
Pioneer Building
3rd Floor
Chattanooga, TN 37402
Tel: (423) 265- 0214
Contact: Paul R. Leitner, Esq.

APP057
NU00011552

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

WEINTRAUB, STOCK BENNETT
GRISHAM & UNDERWOOD
One Commerce Square
Suite 2560
Memphis, TN 38103
Tel: (901) 526-0431
Contact: James H. Stock, Esq.

**TEXAS**

CLARK WEST KELLER BUTLER & ELLIS
LLP
4800 Renaissance Tower
1201 Elm Street
Dallas, TX 75270-2146
Tel: (214) 741-1001
Contact: Mark Shank, Esq.

FULBRIGHT & JAWORSKI LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201
Tel: (214) 855-8188
Contact: Bob Herrell, Esq.
          A.J. Harper, Esq.
*Class Action Approved-All Locations*

1301 McKinney
Suite 5100
Houston, TX 77101-3095
Tel: (713) 651-5442
Contact: Frank Jones, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
3811 Turtle Creek Boulevard
Suite 500
Dallas, TX 75219
Tel: (214) 520-2400
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*EPLI Class*

LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue
Suite 2200
Dallas, TX 75201-6776
Tel: (214) 740-8000
Contact: John McElhaney, Esq.

MILLS SHIRLEY ECKEL & BASSETT, LLP
400 Washington Building
2228 Mechanic, P.O. Box 1943
Galveston, TX 77553
Tel: (409) 763-2341
Contact: Carla Cotropia, Esq.

PATTON BOGGS LLP
2626 Cole Avenue
Suite 700
Dallas, TX 75204
Tel: (214) 871-2141
Contact: D. Patrick Long, Esq.
*Class Action Approved*

THOMPSON & KNIGHT LLP
1700 Pacific Avenue
Suite 3300
Dallas, TX 75201-4693
Tel: (214) 969-1700
Contact: Timothy R. McCormick, Esq.

**UTAH**

CHRISTENSON & JENSEN PC
50 South Main Street
Suite 1500
Salt Lake City, UT 84101
Tel: (801) 355-3431
Contact: Phillip S. Ferguson, Esq.

**VERMONT**

CLEARY SHAHI ASSOCIATES
110 Merchants Row
P.O. Box 6740
Rutland, VT 05702
Tel: (802) 775-8800
Contact: David L. Cleary, Esq.

**VIRGINIA**

GENTRY LOCKE RAKES & MOORE
P.O. Box 40013
Roanoke, VA 24022-0013
Tel: (540) 983-9300
Contact: W. David Paxton, Esq.
*Class Action Approved-All Locations*

305 Harrison Street, SE
LeeBurg, VA 20175
Tel: (202) 496-2810
Debra M. Whelihan, Esq

APP058
NU00011553

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

MCGUIRE WOODS BATTLE & BOOTHE
LLP
901 East Cary Street
Richmond, VA 23219
Tel: (804) 775- 4378
Contact: Stephen D. Busch, Esq.

### WASHINGTON

COZEN AND O'CONNOR
1201 Third Avenue
Suite 5200
Seattle, WA 98101
Tel: (206) 340- 1000
Contact: Thomas M. Jones, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
1420 Fifth Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 405- 0404
Tel: (914) 328- 0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

LANE POWELL SPEARS LUBERSKY LLP
1420 Fifth Avenue
Suite 4100
Seattle, WA 98101- 2338
Tel: (206) 223- 7019
Contact: James B. Stoetzer, Esq.
*Class Action Approved

### WEST VIRGINIA

STEPTOE & JOHNSON LLP
Bank One Center
P.O. Box 2190
Clarksburg, WV 26302- 2190
Tel: (304) 624- 8000
Contact: C. David Morrison, Esq.
*Class Action Approved

### WISCONSIN

MELLI WALKER PEASE & RUHLY SC
19 Martin Luther King Blvd
Madison, WI 53701
Tel: (608) 257- 4812
Contact: Jack D. Walker, Esq.

### WYOMING

HIRST & APPLEGATE
1720 Carey Avenue
Suite 200
Cheyenne, WY 82001
Tel: (307) 632- 0541
Contact: Thomas A. Nicholas, Esq.

APP059
NU00011554

## ENDORSEMENT# *1*

This endorsement, effective *12:01 a.m.  October 6, 2003*          forms a part of policy number  *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
           *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NEVADA CANCELLATION/NONRENEWAL
### AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", "named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the Declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

CANCELLATION/NONRENEWAL

A.   The cancellation provision of the policy is replaced with the following:

1.   The First Named Insured may cancel this policy by mailing or delivering to the Insurer advance written notice of cancellation.

2.   MIDTERM CANCELLATION

If this policy has been in effect for seventy (70) days or more, or if this policy is a renewal of a policy the Insurer issued, the Insurer may cancel only for one or more of the following reasons:

a.   Nonpayment of premium;

b.   Conviction of the Insured or Other Insured(s) of a crime arising out of acts increasing the hazard insured against;

c.   Discovery of fraud or material misrepresentation in obtaining the policy or in presenting a claim thereunder;

d.   Discovery of an act or omission or a violation of any condition of the policy which occurred after the first effective date of the current policy, and substantially and materially increases the hazard insured against;

e.   A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

f.   A determination by the commissioner that continuation of the Insurer's present volume of premiums would jeopardize the Insurer's solvency or be hazardous to the interests of the Insurer's policyholders, creditors or the public; or

g.   A determination by the commissioner that the continuation of the policy would violate, or place the Insurer in violation of, any provision of the code.

If this policy is cancelled by the Insurer based on 2. b. through g. above, the Insurer shall mail or deliver a written notice to the First Named Insured thirty (30) days before the effective date of cancellation. If this policy is cancelled for nonpayment

### *END 001*

APP060

NU00011555

ENDORSEMENT# *1*    (continued)

of premium, the Insurer will mail or deliver a written notice to the First Named Insured ten (10) days before the effective date of cancellation.

3.    ANNIVERSARY CANCELLATION

If this policy is written for a term longer than one year, the Insurer may cancel for any reason at an anniversary, by mailing or delivering written notice of cancellation to the First Named Insured at the last mailing address known to the Insurer at least sixty (60) days before the anniversary date.

4.    The following is added as an additional condition and supersedes any other provision to the contrary:

NONRENEWAL

a.    If the Insurer elects not to renew this policy; the Insurer will mail or deliver to the First Named Insured a notice of intention not to renew at least sixty (60) days before the agreed expiration date.

b.    The Insurer need not provide this notice if:

1.    The First Named Insured has accepted replacement coverage;

2.    The First Named Insured has requested or agreed to nonrenewal; or

3.    The policy is expressly designated as nonrenewable.

5.    NOTICES

a.    Notice of cancellation or nonrenewal in accordance with the above, will be mailed, first class or certified, or delivered to the First Named Insured at the last mailing address known to the Insurer and will state the reason for cancellation or nonrenewal.

b.    The Insurer will also provide a copy of the notice of cancellation, for both policies in effect less than seventy (70) days and policies in effect seventy (70) days or more, to the agent who wrote the policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 001*

APP061

NU00011556

ENDORSEMENT# *2*

This endorsement, effective *12:01 a.m.    October 6, 2003*        forms a part of
policy number   *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
        *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OUTSIDE ENTITY ENDORSEMENT

In consideration of the premium  charged, it is hereby understood and agreed that the
following entities shall be deemed an "Outside Entity" with respect to its corresponding
Continuity Date below:

| OUTSIDE ENTITY | CONTINUITY DATE |
| --- | --- |
| 1)   a not-for-profit organization under section 501 (c)(3) of the Internal Revenue Code of 1986 (as amended). | *October 6, 2000* |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 002*

BRANCH *Archive Copy*

APP062

NU00011557

ENDORSEMENT# *3*

This endorsement, effective *12:01 a.m.   October 6, 2003*           forms a part of
policy number   *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
          *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s):

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly the hazardous properties of nuclear material, including but not limited to:

   (1)   nuclear material located at any nuclear facility owned by, or operated by or on behalf of, the Company, or discharged or dispersed therefrom; or

   (2)   nuclear material contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the Company; or

   (3)   the furnishing by an Insured or the Company of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

   (4)   claims for damages to the company or its shareholders which alleges, arises from, is based upon, is attributed to or in any way involves, directly or indirectly, the hazardous properties of nuclear material.

B.   (1)   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its Limit of Liability; or,

   (2)   with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means source material, special nuclear material or byproduct material;

**END 003**

APP063

NU00011558

## ENDORSEMENT# *3*    (continued)

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

   (a)    any nuclear reactor,

   (b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 003*

APP064

NU00011559

**ENDORSEMENT# 4**

This endorsement, effective *12:01 a.m.    October 6, 2003*        forms a part of
policy number  *360-88-71*
issued to     *INTERFACE GROUP HOLDING COMPANY, INC.*
              *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FINAL DETERMINATION WORDING

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.
Exclusions (a), (b) and (c) are deleted in their entirety and replaced with the following:

(a)    arising out of, based upon or attributable to the gaining of any profit or
advantage to which a final adjudication adverse to the Insured(s) or an
alternative dispute resolution proceeding establishes the Insured(s) were not
legally entitled; provided however that the foregoing exclusions shall not
apply to an Employment Practice Claim(s);

(b)    arising out of, based upon or attributable to: (1) the purchase or sale by an
Insured of securities of the Company within the meaning of Section16(b) of
the Securities Exchange Act of 1934 and amendments thereto or similar
provisions of any state statutory law if a final adjudication or an alternative
dispute resolution proceeding establishes that such 16(b) violation occurred;
or (2) the payment to any Insured(s) of any remuneration without the
previous approval of the stockholders of the Company, if a final adjudication
adverse to the Insured(s) or any alternative dispute resolution proceeding
establishes such payment to be illegal;

(c)    arising out of, based upon or attributable to the committing of any criminal,
fraudulent or dishonest act, or any willful violation of any statute, rule or
law, if a judgment or other final adjudication adverse to the Insured(s) or an
alternative dispute resolution proceeding establishes that such criminal,
fraudulent, dishonest act or willful violation of any statute, rule or law
occurred;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*BRANCH* *Archive Copy* *END 4*

AUTHORIZED REPRESENTATIVE

APP065

NU00011560

ENDORSEMENT# *5*

This endorsement, effective *12:01 a.m.    October 6, 2003*    forms a part of
policy number  *360-88-71*
issued to    *INTERFACE GROUP HOLDING COMPANY, INC.*
            *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## EXCLUSION (J) AMENDED TO SOLELY APPLY
## TO PUBLIC OFFERINGS OF EQUITY SECURITIES

In consideration of the premium charged, it is hereby understood and agreed that Exclusion
(j) is deleted in its entirety and replaced with the following:

(j)    alleging, arising out of, based upon or attributable to any public offering of equity
       securities by the Company, an Outside Entity or an Affiliate or alleging a purchase
       or sale of such equity securities subsequent to such public offering;

       provided, however, that this exclusion will not apply to:

       (1)    any purchase or sale of securities exempted pursuant to section 3(b) of the
              Securities Act of 1933. Coverage for such purchase or sale transaction shall
              not be conditioned upon payment of any additional premium; however, the
              Named Entity shall give the Insurer written notice of any public offering
              exempted pursuant to section 3(b), together with full particulars and as soon
              as practicable, but not later than 30 days after the effective date of the
              public offering;

       (2)    to any public offering of equity securities (other than a public offering
              described in paragraph (1) above) , as well as any purchase or sale of such
              securities subsequent to such public offering, in the event that within 30
              days prior to the effective time of such public offering: (i) the Named Entity
              shall give the Insurer written notice of such public offering together with full
              particulars and underwriting information required thereto and (ii) the Named
              Entity accepts such terms, conditions and additional premium required by the
              Insurer for such coverage. Such coverage is also subject to the Named
              Entity paying when due any such additional premium. In the event the
              Company gives written notice with full particulars and underwriting
              information pursuant to (i) above, then the Insurer must offer a quote for
              coverage under this paragraph;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*BRANCH* *Archive Copy* *END 5*

APP066

NU00011561

ENDORSEMENT# *6*

This endorsement, effective *12:01 a.m.    October 6, 2003*              forms a part of
policy number  *360-88-71*
issued to    *INTERFACE GROUP HOLDING COMPANY, INC.*
             *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CONTRACT EXCLUSION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Exclusion
(h) is deleted in its entirety and replaced with the following:

(h)     alleging, arising out of, based upon or attributable to any actual or alleged
        contractual liability of the <u>Company</u> under any express contract or agreement;
        provided, however, that:

        (1)     with respect to Employment Practice Claims, this exclusion shall not apply to
                the extent any liability does not arise under such express contract or
                agreement;

        (2)     this exclusion shall not apply to <u>Securities Claims</u>;


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*BRANCH*  Archive Copy *END 6*

APP067

NU00011562

ENDORSEMENT# 7

This endorsement, effective *12:01 a.m.    October 6, 2003*    forms a part of
policy number  *360-88-71*
issued to    *INTERFACE GROUP HOLDING COMPANY, INC.*
              *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCLUSION K AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Exclusion (k) is deleted in its entirety and replaced with the following:

(k)    alleging, arising out of, based upon or attributable to the purchase by the Company of securities of a "publicly traded entity" in a transaction which resulted, or would result, in such entity becoming an Affiliate or Subsidiary of the Company; provided, however, this exclusion shall not apply in the event that within 30 days prior to it becoming an Affiliate or Subsidiary, the Named Entity gives written notice of the transaction to the Insurer together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this policy required by the Insurer relating to the transaction. Further, coverage as shall be afforded to the transaction is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to the transaction. An entity is a "publicly traded entity" if any securities of such entity have previously been subject to a public offering;

Notwithstanding the foregoing, this exclusion shall not apply to a public company that is currently not traded on a securities exchange.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*BRANCH* Archive Copy *END 7*

APP068

NU00011563

**ENDORSEMENT# 8**

This endorsement, effective *12:01 a.m.    October 6, 2003*          forms a part of
policy number  *360-88-71*
issued to    *INTERFACE GROUP HOLDING COMPANY, INC.*
             *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCLUSION L AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Exclusion
(l) is deleted in its entirety and replaced with the following:

(l)      for bodily injury, sickness,  disease or death of  any person, or  damage to or
         destruction of  any  tangible  property,  including  the  loss  of  use  thereof;
         provided, however, that this exclusion shall not apply to Securities Claims;


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
                                                    AUTHORIZED REPRESENTATIVE

*BRANCH* Archive Copy *END 8*

APP069

NU00011564

**ENDORSEMENT# 9**

This endorsement, effective *12:01 a.m.    October 6, 2003*                forms a part of
policy number *360-88-71*
issued to    *INTERFACE GROUP HOLDING COMPANY, INC.*
             *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CLAUSE 8 AMENDED

In consideration of the premium charged, it is hereby understood and agreed that the last paragraph of Clause 8 is deleted in its entirety and replaced with the following:

> Furthermore and solely with respect to Employment Practices Claims under Coverage B, in the event the Insureds do not consent to the first Settlement Opportunity within the time prescribed, then, subject to the applicable limit of liability, the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer, ("Settlement Opportunity Amount") plus (2) 50% of covered Loss in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 50% of such Loss excess of the Settlement Opportunity Amount shall be carried by the Company and the Insureds at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the Retention amount stated in Item 5 of the Declarations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*BRANCH*  *Archive Copy*  *END 9*

APP070

NU00011565

ENDORSEMENT# *10*

This endorsement, effective *12:01 a.m.   October 6, 2003*        forms a part of
policy number  *360-88-71*
issued to   *INTERFACE GROUP HOLDING COMPANY, INC.*
            *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## PUNITIVE EXEMPLARY AND MULTIPLE DAMAGES COVERAGE

In consideration of the premium charged, it is hereby understood and agreed that the
Definition of "Loss" is amended by adding the following paragraph:

> Notwithstanding the foregoing, solely in regard to a Securities Claim and an
> Employment Practices Claim, Loss shall specifically include (subject to the
> policy's other terms, conditions and exclusions, including but not limited to
> exclusions relating to personal profit or advantage, illegal remuneration,
> deliberate fraud or criminal acts) punitive, exemplary and multiple damages
> (including the multiple or liquidated damages awards under the Age
> Discrimination in Employment Act and the Equal Pay Act).

It is further understood and agreed that the enforceability of this endorsement shall be
governed by such applicable law which most favors coverage for punitive, exemplary and
multiple damages.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*BRANCH* Archive Copy *END 10*

APP071

NU00011566

**ENDORSEMENT# *11***

This endorsement, effective *12:01 a.m.    October 6, 2003*    forms a part of
policy number  *360-88-71*
issued to  *INTERFACE GROUP HOLDING COMPANY, INC.*
*c/o ASSET PROTECTION SERVICES GROUP, INC.*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

### AMEND DEFINITION OF SUBSIDIARY

In consideration of the premium charged, it is hereby understood and agreed that Clause 2. Definitions (s) is deleted in its entirety and replaced by the following:

(s)    "Subsidiary" means:

(1)    (A) any for profit organization of which the Named Corporation owns on or before the inception of the Policy Period more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its Subsidiaries or (B) any for profit organization of which the Named Corporation owns on or before the inception of the Policy Period exactly 50% of the issued and outstanding voting stock and which, pursuant to or in connection with a written agreement with the owner(s) of the remaining 50% of the issued and outstanding voting stock of such corporation, solely controls such corporation (a "Controlled Joint Venture"), in each case either directly, or indirectly through one or more of its Subsidiaries;

(2)    automatically any for profit organization whose assets total less than 25% of the total consolidated assets of the Company as of the inception date of this policy, which corporation becomes a Subsidiary during the Policy Period. The Named Corporation shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period;

(3)    any organization which becomes a Subsidiary during the Policy Period (other than a corporation described in paragraph (2) above) but only upon the condition that within 90 days of its becoming a Subsidiary, the Named Corporation shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Corporation paying when due any additional premium required by the Insurer relating to such new Subsidiary;

(4)    a not-for-profit organization under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by the Company.

*BRANCH*  *Archive Copy* *END 11*

APP072

NU00011567

**ENDORSEMENT# *11*    (Continued)**

This endorsement, effective *12:01 a.m.    October 6, 2003*    forms a part of
policy number    *360-88-71*
issued to    *INTERFACE GROUP HOLDING COMPANY, INC.*
            *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


An organization becomes a Subsidiary when the Named Corporation (1) owns more than 50% of the issued and outstanding voting stock or (2) in the case of a Controlled Joint Venture, owns exactly 50% of the issued and outstanding voting stock and, pursuant to or in connection with a written agreement with the owner(s) of the remaining 50% of the issued and outstanding voting stock of such corporation, solely controls such corporation, in each case either directly, or indirectly through one or more of its Subsidiaries. An organization ceases to be a Subsidiary when the Named Corporation (1) ceases to own more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries or (2) in the case of a Controlled Joint Venture, ceases to own exactly 50% of the issued and outstanding voting stock or solely to control, pursuant to or in connection with a written agreement with the owner(s) of the remaining 50% of the issued and outstanding voting stock of such corporation, such corporation, in each case either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded with respect to a Claim made against a Subsidiary or any Natural Person Insured thereof shall only apply for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

*BRANCH* Archive Copy *END 11*

APP073

NU00011568

ENDORSEMENT# *12*

This endorsement, effective *12:01 a.m.   October 6, 2003*          forms a part of
policy number  *360-88-71*
issued to    *INTERFACE GROUP HOLDING COMPANY, INC.*
              *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## AMEND DEFINITION OF COMPANY

In consideration of  the premium charged,  it is hereby  understood and agreed  that Clause
2., Definitions (c), is amended to include:

    The Interface/Adelson Companies which are identified in Appendix B


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.



**Appendix B**


Sheldon G. Adelson
Interface Group Holding Company, Inc.
Interface Group - Massachusetts, LLC
GWV International, a Division of Interface Group, Massachusetts, LLC
GWV Travel
Needham Corporation
Interface Group Massachusetts, Inc.
Galilee Tours
Interface Group Massachusetts Business Trust
TIG Management, Inc.
Three Hundred Realty Trust
Interface Group - Nevada, Inc.
Las Vegas Sands, Inc.
Venetian Casino Resort, LLC
Grand Canal Shops Mall Construction, LLC
Grand Canal Shops MM, Inc.
Mall Intermediate Holding Company, LLC
LVSI Asset Protection, LLC
Grand Canal Shops Mall Holding Company, LLC
Grand Canal Shops Mall, LLC
1160 Investors, LLC
Lido Casino Resort MM, Inc.
Lido Intermediate Holding Company, LLC
Lido Casino Resort Holding Company, LLC
Lido Casino Resort, LLC
Interface Partners International, Ltd.
IMD Soft, Inc.



*BRANCH* Archive Copy *END 12*

ENDORSEMENT# *12*    (Continued)

This endorsement, effective *12:01 a.m.    October 6, 2003*        forms a part of
policy number *360-88-71*
issued to    *INTERFACE GROUP HOLDING COMPANY, INC.*
             *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


**Appendix B**

Colorbus Holding Company & Subsidiaries
SGA Acquisition, LLC
SGA Development, Inc.
Interface Group Guaranty Corp.
Silver State I Realty Trust
Yona Aviation Corp.
IMD Soft, Ltd.
Denex
Auto Depot, Ltd
Interface Group Guarantee Group
Nevada Funding Group
Precious Legacy Tours
Venetian Marketing, Inc.


_____
                                        AUTHORIZED REPRESENTATIVE

**BRANCH** Archive Copy **END 12**

APP075

NU00011570

**ENDORSEMENT# *13***

This endorsement, effective *12:01 a.m.   October 6, 2003*          forms a part of
policy number  *360-88-71*
issued to    *INTERFACE GROUP HOLDING COMPANY, INC.*
            *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### AMEND DEFINITION OF SECURITIES CLAIMS

In consideration of the premium charged, it is hereby understood and agreed that Clause 2. Definitions (r) is deleted in its entirety and replaced by the following:

(r)   "Securities Claim" means a Claim (including a civil lawsuit or criminal proceeding brought by any governmental body) made against an Insured and brought anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is

   (1)   brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale or offer or solicitation of an offer to purchase or sell, any securities of the Company, or

   (2)   in the form of a securities holder derivative claim brought on the behalf of the Company, or

   (3)   brought by a securities holder of the Company, with respect to such securities holder's interest in such securities of the Company, whether directly or by class action.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.

*BRANCH* Archive Copy *END 13*

_____
AUTHORIZED REPRESENTATIVE

APP076

NU00011571

ENDORSEMENT# *14*

This endorsement, effective *12:01 a.m.    October 6, 2003*        forms a part of
policy number  *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
         *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### "NO LIABILITY" PROVISION DELETED

In consideration of the premium charged, it is hereby understood and agreed that the
policy is hereby amended as follows:

(1)    The Definition of "No Liability" is hereby deleted in its entirety; and

(2)    The last paragraph of Clause 6. RETENTION CLAUSE is hereby deleted in its
       entirety.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 014*

**BRANCH** Archive Copy

APP077

NU00011572

ENDORSEMENT# *15*

This endorsement, effective *12:01 a.m.    October 6, 2003*         forms a part of
policy number  *360-88-71*
issued to    *INTERFACE GROUP HOLDING COMPANY, INC.*
             *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### AMEND DISCOVERY - ONE YEAR BILATERAL PREMIUM @ [Redacted]

In consideration of the premium charged, it is hereby understood and agreed that the policy
(and any endorsement amending  Clause 10. DISCOVERY  CLAUSE) is hereby  amended to
the extent necessary for the policy to provide the following:

> Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity**
> or the **Insurer** shall refuse to renew this policy, the  **Named Entity** shall have the
> right to a period of one year following the effective date of such cancellation  or
> nonrenewal (the   " **Discovery Period**") upon payment of the respective "
> **Additional Premium Amount**"  described below  in which  to give to the **Insurer**
> written notice pursuant to Clause  7(a) and 7(c) of the  policy of: (i) **Claims** first
> made against an **Insured**; and (ii) circumstances of  which an **Organization** or an
> **Insured** shall  become aware,  in either  case during said **Discovery Period** and
> solely with respect  to a **Wrongful Act** occurring prior  to the end  of the **Policy
> Period** and otherwise covered by this policy.

> The **Additional Premium  Amount** for one  year shall be  no more than  250% of
> the **Full Annual  Premium**.   As used herein, " **Full Annual Premium**" means  the
> premium level in effect immediately prior to the end of the **Policy Period**.

> In the event of a **Transaction** as defined in Clause 12(a), the **Named Entity** shall
> have the right to  request an offer from  the **Insurer** of a  **Discovery Period** (with
> respect to  **Wrongful Acts**  occurring prior  to the  effective  time of  the
> **Transaction**). The  **Insurer** shall  offer such **Discovery  Period** pursuant  to such
> terms, conditions, exclusions and  additional premium as the  **Insurer** may
> reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period**
> shall not otherwise exist except as indicated in this paragraph.

> The **Discovery Period** is not cancelable and the additional premium charged shall
> be fully earned at inception.  This Clause 10 shall not  apply to any cancellation
> resulting from non-payment of premium. The rights  contained in this Clause 10
> shall terminate unless written notice  of election of a **Discovery  Period** together
> with any additional premium  due is received by  the **Insurer** no later  than thirty
> (30) days subsequent  to the effective  date of the  cancellation, nonrenewal or
> **Transaction**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*BRANCH* *Archive Copy* *END 15*

APP078

NU00011573

ENDORSEMENT# *16*

This endorsement, effective *12:01 a.m.    October 6, 2003*          forms a part of
policy number  *360-88-71*
issued to     *INTERFACE GROUP HOLDING COMPANY, INC.*
              *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FAILURE TO EFFECT AND/OR MAINTAIN INSURANCE EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the
Insurer shall not be liable for any Loss in connection with any Claim(s) made against any
Insured alleging, arising out of, based upon, or attributable to any failure or omission on the
part of the Insureds or the Company to effect or maintain adequate insurance.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*BRANCH* Archive Copy *END 16*

APP079

NU00011574

ENDORSEMENT# *17*

This endorsement, effective *12:01 a.m.   October 6, 2003*        forms a part of
policy number  *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
         *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SEPARATE RETENTION FOR
## THIRD PARTY EMPLOYMENT PRACTICES CLAIMS

In consideration of the premium charged, it is hereby understood and agreed that Item 5
RETENTION of the DECLARATIONS page is hereby deleted in its entirety and replaced with
the following:

ITEM 5.      RETENTION:

Judgments, Settlements and
Defense Costs (non-Indemnifiable Loss)          None

Employment Practices Claims
(other than Third Party Employment Practices Claims)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)
                                     *$350,000*
                                     for Loss arising from Claims
                                     alleging the same Wrongful
                                     Act or Related Wrongful Acts
                                     (waivable under Clause 6 in
                                     certain circumstances)

Third Party Employment Practices Claims
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)
                                     *$500,000*
                                     for Loss arising from Claims
                                     alleging the same Wrongful
                                     Act or Related Wrongful Acts
                                     (waivable under Clause 6 in
                                     certain circumstances)

Securities Claims (other than private placement)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)
                                     *$250,000*
                                     for Loss arising from Claims
                                     alleging the same Wrongful
                                     Act or Related Wrongful Acts
                                     (waivable under Clause 6 in
                                     certain circumstances)

All Other Claims (including private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)
                                     *$250,000*
                                     for Loss arising from Claims
                                     alleging the same Wrongful
                                     Act or Related Wrongful Acts
                                     (waivable under Clause 6 in
                                     certain circumstances)

*END 017*

APP080

NU00011575

ENDORSEMENT# _17_  (continued)

For the purposes of this endorsement, the term "Third Party Employment Practices Claims" means, with respect to any customer or client of the Company, whether individually or as a class or group, any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 017*

2 of 2

*BRANCH* Archive *Copy*

APP081

NU00011576

## ENDORSEMENT# *18*

This endorsement, effective *12:01 a.m.   October 6, 2003*          forms a part of
policy number   *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
         *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCLUSION (o) AMENDED
### (FAIR LABOR STANDARDS ACT)

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), Clause 4. EXCLUSIONS, is hereby amended by deleting Exclusion (o) in its entirety and replacing it with the following:

(o)    for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a Claim for Retaliation; provided, further, however, there is no coverage provided under this policy for any Claim related to, arising out of, based upon, or attributable to the refusal, failure or inability of any Insured(s) to pay wages or overtime pay for services rendered (hereinafter, "earned Wages") (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any Insured(s) from any Employee(s) or purported employee(s), including, but not limited to, (i) any unfair business practice claim alleged because of the failure to pay Earned Wages, or (ii) any Claim seeking earned Wages because any Employee(s) or purported employee(s) was improperly classified or mislabeled as "exempt;"

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

### *END 018*

APP082

NU00011577

**ENDORSEMENT#** *19*

This endorsement, effective *12:01 a.m.    October 6, 2003*        forms a part of
policy number   *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
        *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY.**

**THIS IS ACCIDENT ONLY COVERAGE.  IT DOES NOT COVER SICKNESS OR DISEASE**

**TRAVEL ACCIDENT INSURANCE ENDORSEMENT**
**Private Edge®**
**(Nevada Only)**

The Policy is amended as follows:

I.    **ADDITIONAL DECLARATIONS** - For the purpose of the coverage provided by this
Endorsement, the following is added to the Declarations page:

1.    **Travel Accident Insurance Effective Date:** *October 6, 2003*

2.    **Classification of Eligible Persons:**

All current, duly elected and appointed Directors and Corporate Officers of the
**Named Entity**.

3.    **Principal Sum Amount** (per **Covered Person**): *$250,000*

4.    **Covered Hazard(s):**

Coverage is provided for **Injury** sustained by a **Covered Person While on the
Business** of the **Named Entity** including traveling to, during the course of, and
while returning from:

(a)    meetings of the **Named Entity's** or any **Subsidiary's** Board of Directors
or any of its' committees; and

(b)    any **Trip** taken at the direction of the **Named Entity** or any **Subsidiary**
for which the **Named Entity** or **Subsidiary** reimburses expenses incurred
by the **Covered Person** for that **Trip**.

With respect to any period of time such **Covered Person** is traveling on a
conveyance during the course of any such **Trip**, coverage applies only with
respect to **Injury** sustained by the person:

1.    While operating or riding in or on (including getting in or out of, or on or
off of), or by being struck or run down by any conveyance being used as
a means of land or water transportation, except:

a.    Any such conveyance the **Covered Person** has been hired to
operate or for which the **Covered Person** has been hired as a crew
member;

*END 019*

APP083

NU00011578

ENDORSEMENT# *19*    (continued)

      b.    Any such conveyance the **Covered Person** is operating, or for which the **Covered Person** is performing as a crew member, (including getting in or out of, or on or off of) for the transportation of passengers or property for hire, profit or gain; or

   2.    While riding as a **Passenger** in or on (including getting in or out of, or on or off of):

      a.    Any **Named Entity** or any **Subsidiary Aircraft**
      b.    Any **Civilian Aircraft**; or
      c.    Any **Military Air Transport Aircraft**; or

   3.    By being struck or run down by any aircraft.

  5.    **Accident Aggregate Limit:** 10 times **Principal Sum** per accident.

**II.**   **INSURING AGREEMENT - TRAVEL ACCIDENT INSURANCE -** For the purpose of the coverage provided by this Endorsement, the following is added to the end of Clause 1., INSURING AGREEMENTS:

▪   **TRAVEL ACCIDENT INSURANCE**

This Policy insures **Covered Persons** against a covered Accidental Death or Dismemberment or Paralysis loss arising from an **Injury** that results from an accident that occurs on or after the **Travel Accident Insurance Effective Date** and during a **Covered Hazard** as set out below. The **Principal Sum** Amount and the **Covered Hazard(s)** applicable to each **Covered Person** are set out in the **Schedule**.

  **A.**   **Accidental Death Benefit.** If **Injury** to the **Covered Person** results in death within 365 days of the date of the accident that caused the **Injury**, the **Insurer** will pay 100% of the **Principal Sum**.

  **B.**   **Accidental Dismemberment and Paralysis Benefit**. If **Injury** to the **Covered Person** results, within 365 days of the date of the accident that caused the **Injury**, in any one of the **Injury Losses** specified below, the **Insurer** will pay the percentage of the **Principal Sum** shown below for that **Injury Loss**:

| For Injury Loss of | Percentage of Principal Sum |
|---|---|
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| Speech and Hearing in Both Ears | 100% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Speech or Hearing in Both Ears | 50% |
| Hearing in One Ear | 25% |
| Thumb and Index Finger of Same Hand | 25% |
| Quadriplegia | 100% |
| Paraplegia | 50% |

*END 019*

APP084

NU00011579

**ENDORSEMENT#** *19*    (continued)

| | |
|---|---|
| Hemiplegia | 50% |
| Uniplegia | 25% |

**"Injury Loss"** of a hand or foot means complete severance through or above the wrist or ankle joint. **"Injury Loss"** of sight of an eye means total and irrecoverable loss of the entire sight in that eye. **"Injury Loss"** of hearing in an ear means total and irrecoverable loss of the entire ability to hear in that ear. **"Injury Loss"** of speech means total and irrecoverable loss of the entire ability to speak. **"Injury Loss"** of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

**"Quadriplegia"** means the complete and irreversible paralysis of both upper and both lower limbs. **"Paraplegia"** means the complete and irreversible paralysis of both lower limbs. **"Hemiplegia"** means the complete and irreversible paralysis of the upper and lower limbs of the same side of the body. **"Uniplegia"** means the complete and irreversible paralysis of one limb. **"Limb"** means entire arm or entire leg.

If more than one **Injury Loss** is sustained by a **Covered Person** as a result of the same accident, only one amount, the largest, will be paid.

III.   **DEFINITIONS** - For the purpose of the coverage provided by this Endorsement, the following is added to the end of Clause 2., DEFINITIONS:

- **Airworthiness Certificate** - means the "Standard" Airworthiness Certificate issued by the Federal Aviation Agency of the United States of America or its equivalent issued by the governmental authority having jurisdiction over civil aviation in the country of registry.

- **Civilian Aircraft** - means a civil or public aircraft having a current and valid **Airworthiness Certificate** and piloted by a person who has a current and valid medical certificate and pilot certificate with appropriate ratings for the aircraft. A **Civilian Aircraft** does not include a **Named Entity Aircraft**.

- **Immediate Family Member** - means a person who is related to the **Covered Person** in any of the following ways: spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or stepchild).

- **Injury** - means bodily **Injury**: (1) which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and that occurs while the injured person's Travel Accident coverage is in force; (2) which occurs under the circumstances described in a **Covered Hazard** applicable to that person; and (3) which directly (independent of sickness, disease or any other cause) causes a covered loss under a Benefit applicable to such **Covered Hazard**.

- **Covered Person** - means a person: (1) who is a member of an eligible class of persons as described in the **Classification of Eligible Persons** section of the **Schedule**; (2) for whom premium has been paid; and (3) while such person's Travel Accident coverage is in force.

- **Military Air Transport Aircraft** - means an aircraft having a current and valid **Airworthiness Certificate**; piloted by a person who has a current and valid medical

*END 019*

APP085
NU00011580

## ENDORSEMENT# *19*    (continued)

certificate and pilot certificate with appropriate ratings for the aircraft; and operated by the United States of America, or by the similar air transport service of any duly constituted governmental authority of any other recognized country.

- **Passenger** - means a person not performing as a pilot, operator or crew member of a conveyance.

- **Physician** - means a licensed practitioner of the healing arts acting within the scope of his or her license who is not: (1) the **Covered Person**; (2) an **Immediate Family Member**; or (3) retained by any **Named Entity** or any **Subsidiary**.

- **Schedule** - means the **Additional Declarations** section of this Travel Accident Insurance Endorsement.

- **Named Entity Aircraft** - means any aircraft with a current and valid **Airworthiness Certificate** and owned, leased or operated by the **Named Entity** or any **Subsidiary**.

- **Trip** - means a trip taken by a **Covered Person** which begins when the **Covered Person** leaves his or her residence or place of regular employment for the purpose of going on the trip (whichever occurs last), and is deemed to end when the **Covered Person** returns from the trip to his or her residence or place of regular employment (whichever occurs first). However, the trip is deemed to exclude any period of time during which the **Covered Person** is on an authorized leave of absence or vacation or travel to and from the **Covered Person's** place of regular employment.

- While on the Business of the **Named Entity** means while on assignment by or at the direction of the **Named Entity** or any **Subsidiary** for the purpose of furthering the business of the **Named Entity** or any **Subsidiary**, but does not include any period of time: (1) while the **Covered Person** is working at his or her regular place of employment; (2) during the course of everyday travel to and from work; or (3) during an authorized leave of absence or vacation.

IV.  **EXCLUSIONS** - For the purpose of the coverage provided by this Endorsement, Clause 4., EXCLUSIONS, is deleted in its entirety and replaced with the following **Exclusions**:

- **EXCLUSIONS** No coverage shall be provided for Travel Accident insurance and no payment shall be made for any Travel Accident loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks:

    1.  suicide or any attempt at suicide or intentionally self-inflicted **Injury** or any attempt at intentionally self-inflicted **Injury** or auto-eroticism.

    2.  war, whether declared or not, or any act or condition incident to war, civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

    3.  full-time active duty in the armed forces, National Guard or organized reserve corps of any country or international authority (unearned premium will be returned if the **Covered Person** enters military service); (National Guard or reserve active duty for regularly scheduled training purposes is not excluded.)

*END 019*

APP086

NU00011581

ENDORSEMENT# *19*    (continued)

4.  the **Covered Person** being under the influence of intoxicants while operating any vehicle or means of transportation or conveyance.

5.  the **Covered Person** being under the influence of drugs unless taken under the advice of and as specified by a **Physician**.

6.  the **Covered Person's** commission of or attempt to commit a crime.

7.  travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, whether as a pilot, operator or crew member.

8.  sickness, or disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these.

9.  infections of any kind regardless of how contracted, except bacterial infections that are directly caused by botulism, ptomaine poisoning or an accidental cut or wound independent and in the absence of any underlying sickness, disease or condition including but not limited to diabetes.

10.  the medical or surgical treatment of sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from the treatment.

11.  stroke or cerebrovascular accident or event; cardiovascular accident or event; myocardial infarction or heart attack; coronary thrombosis; aneurysm.

**V.    LIMITS OF INSURANCE** - For the purpose of the coverage provided by this Endorsement, the following is added to the end of Clause 5., LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS):

▪   **Travel Accident Aggregate Limit.**  The maximum amount payable under the Travel Accident Benefit may be reduced if more than one **Covered Person** suffers a loss as a result of the same accident. The maximum amount payable for all such losses for all **Covered Persons** will not exceed the amount shown as the **Accident Aggregate Limit** in the **Schedule**.  If the combined maximum amount otherwise payable for all **Covered Persons** must be reduced to comply with this provision, the reduction will be taken by applying the same percentage of reduction to the individual maximum amount otherwise payable for each **Covered Person** for all such losses. The **Travel Accident Aggregate Limit is** in addition to the Policy's Limit of Liability.

**VI.    CLAIMS PROVISIONS** - For the purpose of coverage provided by this Endorsement, Clause 7., NOTICE OF CLAIM/REPORTING PROVISIONS, is deleted in its entirety and replaced with the following:

▪   **Notice of Claim.** Written notice of a claim for benefits must be given to the **Insurer** within 20 days after a **Covered Person's** loss, or as soon thereafter as reasonably possible.  Notice given by or on behalf of the claimant to the **Insurer** at American International Companies®, Accident and Health Claims Division, P.O. Box 15701, Wilmington, DE 19850-5701, with information sufficient to identify the **Covered Person**, is deemed notice to the **Insurer**.

▪   **Claim Forms.** The **Insurer** will send claim forms to the claimant upon receipt of a written notice of claim.  If such forms are not sent within 15 days after the giving of notice of a claim, the claimant will be deemed to have met the proof of loss

*END 019*

APP087

NU00011582

**ENDORSEMENT#** _19_    (continued)

requirements upon submitting, within the time fixed herein for filing proof of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the **Covered Person's** name, the **Named Entity** name and the Policy number.

- **Proof of Loss.** Written proof of loss must be furnished to the **Insurer** within 90 days after the date of the loss. If the loss is one for which this Endorsement requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as the **Insurer** may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

- **Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of a **Covered Person** will be made, in equal shares, to the survivors in the first surviving class of those that follow: the **Covered Person's** (1) spouse; (2) children; (3) parents; or (4) brothers and sisters. If no class has a survivor, the beneficiary is the **Covered Person's** estate.

  Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the **Covered Person** suffering the loss. If a **Covered Person** dies before all payments due have been made, the amount still payable will be paid as described above for loss of life.

  If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at the **Insurer's** option, to any relative by blood or connection by marriage of the payee, who, in the **Insurer's** opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

  Any payment the **Insurer** makes in good faith fully discharges the **Insurer's** liability to the extent of the payment made.

- **Time of Payment of Claims.** Benefits payable for any loss other than loss for which this Endorsement provides any periodic payment will be paid immediately upon the **Insurer's** receipt of due written proof of the loss. Subject to the **Insurer's** receipt of due written proof of loss, all accrued benefits for loss for which this Endorsement provides periodic payment will be paid at the expiration of each month during the continuance of the period for which the **Insurer** is liable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

- **Physical Examination and Autopsy.** The **Insurer** at its own expense has the right and opportunity to examine the person of any individual whose loss is the basis of claim hereunder when and as often as it may reasonably require during the pendency of the claim and to make an autopsy in case of death where it is not forbidden by law.

VII. **ADDITIONAL PROVISIONS** - For the purpose of the coverage provided by this Endorsement, the following is added to the Policy:

**_END 019_**

APP088

NU00011583

ENDORSEMENT# *19*    (continued)

▪ **Covered Person's Effective Date.** A **Covered Person's** Travel Accident Insurance coverage begins on the latest of: (1) the **Travel Accident Insurance Effective Date**; (2) the date the person becomes a member of an eligible class of persons as described in the **Classification of Eligible Persons** section of the **Schedule**; or (3) the date the appropriate premium is paid for the **Covered Person**.

▪ **Covered Person Termination Date.** A **Covered Person's** Travel Accident Insurance coverage ends on the earliest of: (1) the date the Policy is terminated; (2) the date this Endorsement is terminated; (3) (10) days after the date notice of cancellation for nonpayment of premium is mailed; or (4) the date the **Covered Person** ceases to be a member of any eligible class of persons as described in the **Classification of Eligible Persons** section of the **Schedule**.

Termination of coverage will not affect a claim for a covered loss that occurred while the **Covered Person's** Travel Accident Insurance coverage was in force.

All other terms, conditions, and exclusions of the Policy shall remain unchanged. However, Clauses 5B, 6, 8, 9, 10, 12, 13, 14, 17, 19 of the Policy do not apply to the coverage provided by this Endorsement.

_____

AUTHORIZED REPRESENTATIVE

*END 019*

APP089

NU00011584

**ENDORSEMENT#** *20*

This endorsement, effective *12:01 a.m.    October 6, 2003*        forms a part of
policy number  *360-88-71*
issued to *INTERFACE GROUP HOLDING COMPANY, INC.*
            *c/o ASSET PROTECTION SERVICES GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## TERRORISM EXCLUSION

### (WITH AN EXCEPTION FOR CERTIFIED ACTS OF TERRORISM
### UNDER THE TERRORISM RISK INSURANCE ACT OF 2002)

This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of or in connection with "terrorism" including but not limited to, any contemporaneous or ensuing loss caused by fire, looting or theft.

DEFINITION - The following definition of terrorism shall apply:

"Terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

(1) A government;
(2) The civilian population of a country, state or community; or
(3) To disrupt the economy of a country, state or community.

This exclusion does not apply to a certified "act of terrorism" defined by Section 102. Definitions, of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments. For purposes of this endorsement and in compliance with the Terrorism Risk Insurance Act of 2002, an "act of terrorism shall mean:

(1)   Act of Terrorism -

(A)   Certification. - The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States - -

(i)    to be an act of terrorism;
(ii)   to be a violent act or an act that is dangerous to - -
(I)    human life;
(II)   property; or
(III)  infrastructure;
(iii)  to have resulted in damage within the United States, or outside of the United States in the case of - -
(I)    an air carrier or vessel described in paragraph (5)(B); [for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid

*END 020*

APP090
NU00011585

ENDORSEMENT# *20*    (continued)

       and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs, or at the premises of any United States mission];

    (II)   the premises of a United States mission; and

  (iv)  to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

(B)  Limitation. - - No act shall be certified by the Secretary as an act of terrorism if - -

  (i)  the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or

  (ii)  property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

(C)  Determinations Final. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.

(D)  Nondelegation. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

All other terms and conditions of the policy are the same.

_____

AUTHORIZED REPRESENTATIVE

*END 020*

81288 (12/02)    *BRANCHive Copy*    Page 2 of 2

APP091

NU00011586

**National Union Fire Insurance Company of Pittsburgh, PA.**

Executive Offices
175 Water Street, New York, NY  10038
212/770- 7000

 A Member Company of American International Companies

DIRECT DIAL:

*AON RISK SVCS, INC. OF SO. CA.*
*707 WILSHIRE BLVD., SUITE 6000*
*LOS ANGELES, CA 90017*

RE:   *INTERFACE GROUP HOLDING COMPANY, INC.*
      *c/o ASSET PROTECTION SERVICES GROUP, INC.*

POLICY NUMBER: *DOP  360-88-71*

Dear Broker:

The countersignature endorsement will be forwarded to you shortly.

Thank you.

Very truly yours

*Amy Liang*

*Administration Division*

Enc.

*BRANCH Copy*

APP092

NU00011587

**National Union Fire Insurance Company of Pittsburgh, PA.**

*Executive Offices*
*175 Water Street*
*New York, NY 10038*

 A Member Company of American International Companies

DATE: *November 3, 2003*

*Minerva Galloza*
*Manager*
*American International Group - Producer Licensing*
*1 Connell Drive, Suite 2100*
*Berkley Heights, NJ  07922*

RE:    *INTERFACE GROUP HOLDING COMPANY, INC.*
       *c/o ASSET PROTECTION SERVICES GROUP, INC.*

POLICY NUMBER:  *DOP 360-88-71*

Dear Sir:

Enclosed please find the above captioned policy/endorsement for your authorized countersignature together with a copy of the daily for your files.

Upon completion of this countersignature, please forward:

ORIGINAL COPY:    To Broker with original policy in enclosed stamped self-addressed envelope.

SECOND COPY:    To National Union in the enclosed self-addressed stamped envelope.

THIRD COPY:    Countersignature Agent's copy.

Thank you in advance for your prompt attention to this matter.

Very truly yours,

Amy Liang
Administration Division

**BRANCH Copy**

APP093

NU00011588

**National Union Fire Insurance Company of Pittsburgh, PA.**

DATE: *November 3, 2003*

**REQUEST FOR COUNTERSIGNATURE**

*Minerva Galloza*
*Manager*
*American International Group - Producer Licensing*
*1 Connell Drive, Suite 2100*
*Berkley Heights, NJ  07922*

Please countersign the endorsement attached below and promptly return the original copy in the postage paid reply envelope provided. Keep the second copy of this request for your records. RETURN ENTIRE FIRST COPY - Do not detach this portion from the endorsement below.

Requested by:
*Amy Liang*

Department:
*Administration Division*

## COUNTERSIGNATURE ENDORSEMENT

Issue To: *INTERFACE GROUP HOLDING COMPANY, INC.*
*c/o ASSET PROTECTION SERVICES GROUP, INC.*

Effective Date: *October 6, 2003*

The countersignature hereto is to be considered the valid countersignature of the undermentioned policy, is so far as concerns that portion of the Risk located in the State named below.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements, declarations or warranties of the undermentioned policy.

State for which this endorsement is issued: *Nevada*

Attached to and forming a part of Policy No.: *DOP  360-88-71*

Issue by: (Company): *National Union Fire Insurance Company of Pittsburgh, Pa.*

Countersigned at _____ the _____ day of _____, _____

Resident Agent: _____

Form 2261    **BRANCH** *Archive Copy*

APP094

NU00011589