1  J. Randall Jones, Esq. (#1927)
   r.jones@kempjones.com
2  Michael J. Gayan, Esq. (#11135)
   m.gayan@kempjones.com
3  KEMP JONES, LLP
   3800 Howard Hughes Parkway
4  Seventeenth Floor
   Las Vegas, Nevada 89169
5  Telephone: (702) 385-6000
   Facsimile: (702) 385-6001
6

7  Robin L. Cohen, Esq. (*Admitted pro hac vice*)
8  Marc T. Ladd, Esq. (*Admitted pro hac vice*)
   Alexander M. Sugzda, Esq. (*Admitted pro hac vice)*
9  Jason D. Meyers, Esq. (*Admitted pro hac vice*)
   COHEN ZIFFER FRENCHMAN
10 & MCKENNA LLP
   1325 Avenue of the Americas
11 New York, NY 10019
   Telephone: (212) 584-1890
12 Facsimile: (212) 584-1891
   rcohen@cohenziffer.com
13 mladd@cohenziffer.com
   asugzda@cohenziffer.com
14 jmeyers@cohenziffer.com
15

16 *Attorneys for Plaintiffs Las Vegas Sands, Inc.*
   *n/k/a Las Vegas Sands, LLC & Las Vegas*
17 *Sands Corp.*

18                    **UNITED STATES DISTRICT COURT**
19                        **DISTRICT OF NEVADA**

20
   LAS VEGAS SANDS, INC. n/k/a LAS        Case No.: 2:22-cv-00461-JCM-BNW
21 VEGAS SANDS, LLC; and LAS VEGAS
   SANDS CORP.
22                                         **STIPULATION AND [PROPOSED]**
23                     Plaintiffs,         **ORDER TO WITHDRAW**
                                           **PLAINTIFFS' MOTION TO SEAL**
24        v.                               **[ECF NO. 93] AS TO EXHIBITS 18 &**
                                           **19**
25 NATIONAL UNION FIRE INSURANCE
   COMPANY OF PITTSBURGH, PA.,
26
27                    Defendant.
28

                                    1

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

Plaintiffs Las Vegas Sands, Inc. n/k/a Las Vegas Sands, LLC and Las Vegas Sands Corp. (together, "Plaintiffs") and Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") (collectively, the "Parties"), through their respective counsel of record, hereby stipulate and agree to withdraw Plaintiffs' Motion to Seal, ECF No. 93, as to Exhibits 18 and 19, as follows:

1.      On September 26, 2022, the Court granted the Parties' Stipulated Confidentiality and Protective Order (the "Protective Order"). *See* ECF No. 35; ECF No. 38.

2.      On September 29, 2023, Plaintiffs filed their Motion for Partial Summary Judgment, ECF No. 95, with an accompanying Motion to Seal certain exhibits, including Exhibits 18 and 19. ECF No. 93. Exhibits 18 and 19 are documents that National Union produced and marked as Confidential pursuant to the Protective Order.

3.      Plaintiffs also filed a redacted version of their Motion for Summary Judgment, ECF No. 94, with redactions relevant to the proposed sealed exhibits, including Exhibits 18 and 19. Attached as Exhibit A is an updated unredacted version of Plaintiffs' Motion for Summary Judgment (ECF No. 94) reflecting the change in status of Exhibits 18 and 19 to unsealed.

4.      On October 19, 2023, the Court issued an Order denying in part Plaintiffs' Motion to Seal as to Exhibits 18 and 19, and directing Plaintiffs to file a renewed motion to seal Exhibits 18 and 19 by November 20, 2023, that explains what compelling reasons exist for their sealing (the "Order"). ECF No. 111.

5.      On October 20, 2023, the Parties met and conferred regarding the Court's Order and whether Exhibits 18 and 19 need to be sealed. National Union did not object to unsealing Exhibits 18 and 19. Thus, the parties agree that Plaintiffs may withdraw their Motion to Seal (ECF No. 93) as to Exhibits 18 and 19 such that those documents will be publicly filed.

IT IS SO STIPULATED.

DATED this 1st day of November, 2023.

KEMP JONES, LLP

 */s/ Michael J. Gayan*
J. Randall Jones, Esq. (#1927)
Michael J. Gayan, Esq. (#11135)
3800 Howard Hughes Parkway, 17th Floor

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

Las Vegas, Nevada 89169

Robin L. Cohen, Esq. (*Admitted pro hac vice*)
Marc T. Ladd, Esq. (*Admitted pro hac vice*)
Alexander M. Sugzda, Esq. (*Admitted pro hac vice*)
Jason D. Meyers, Esq. (*Admitted pro hac vice*)
COHEN ZIFFER FRENCHMAN & MCKENNA LLP
1325 Avenue of the Americas
New York, New York 10019

*Attorneys for Plaintiffs Las Vegas Sands, Inc.*
*n/k/a Las Vegas Sands, LLC & Las Vegas Sands*
*Corp.*

DATED this 1st day of November, 2023.

PRHLAW LLC

/s/ Courtney A. Palko
Paul R. Hejmanowski, Esq. (#94)
Charles H. McCrea, Esq. (#104)
520 South Fourth Street, Suite 360
Las Vegas, Nevada 89101

Michael J. Hartley (*Admitted pro hac vice*)
Courtney A. Palko (*Admitted pro hac vice*)
BAUTE CROCHETIERE HARTLEY & McCOY LLP
777 South Figueroa Street, Suite 3800
Los Angeles, California 90017

*Attorneys for Defendant National Union Fire Insurance*
*Company of Pittsburgh, PA.*

## ORDER

Based on the foregoing stipulation by the Parties, and for other good cause appearing,

IT IS HEREBY ORDERED, ADJUDICATED, and DECREED that Plaintiffs' Motion to Seal, ECF No. 93, is withdrawn as to Exhibits 18 and 19.

IT IS SO ORDERED.

**IT IS SO ORDERED**

**DATED:** 1:31 pm, November 08, 2023

**BRENDA WEKSLER**
**UNITED STATES MAGISTRATE JUDGE**

# EXHIBIT A

J. Randall Jones, Esq. (#1927)
r.jones@kempjones.com
Michael J. Gayan, Esq. (#11135)
m.gayan@kempjones.com
KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
Facsimile: (702) 385-6001

Robin L. Cohen, Esq. (*Admitted pro hac vice*)
Marc T. Ladd, Esq. (*Admitted pro hac vice*)
Alexander M. Sugzda, Esq. (*Admitted pro hac vice*)
Jason D. Meyers, Esq. (*Admitted pro hac vice*)
COHEN ZIFFER FRENCHMAN
& MCKENNA LLP
1325 Avenue of the Americas
New York, NY 10019
Telephone: (212) 584-1890
Facsimile: (212) 584-1891
rcohen@cohenziffer.com
mladd@cohenziffer.com
asugzda@cohenziffer.com
jmeyers@cohenziffer.com

*Attorneys for Plaintiffs Las Vegas Sands, Inc.*
*n/k/a Las Vegas Sands, LLC & Las Vegas*
*Sands Corp.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SANDS, INC. n/k/a LAS VEGAS SANDS, LLC; and LAS VEGAS SANDS CORP.<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,<br><br>Defendant. | Case No.: 2:22-cv-00461-JCM-BNW<br><br>**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

*KEMP JONES LLP*
*3800 Howard Hughes Parkway, Suite 1700*
*Las Vegas, Nevada 89169*
*(702) 385-6000 Fax (702) 385-6001*
*kjc@kempjones.com*

1

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs Las Vegas Sands, Inc. n/k/a Las Vegas Sands, LLC ("LVSI") and Las Vegas Sands Corp. ("LVSC"; together with LVSI, "LVS") move for partial summary judgment against Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") on LVS's Second and Third Causes of Action (Breach of Contract for Duty to Defend/Defense Costs Coverage and Breach of Contract for Settlement Coverage) in the Complaint (the "Motion"). *See* ECF No. 1. Specifically, LVS requests summary judgment in its favor that National Union is obligated under its Directors, Officers and Private Company Liability Insurance Policy, Policy No. 360-88-71, for the policy period of October 6, 2003 to December 6, 2004 (the "Policy") to pay LVS's defense costs incurred in defending against the underlying lawsuit *Richard Suen & Round Square Co. v. Las Vegas Sands Inc. n/k/a Las Vegas Sands LLC*, No. A493744 (Nev. Dist. Ct., Clark Cnty.) (the "*Suen* Action" or "*Suen*") up to the full Policy limit, and is obligated to pay LVS's settlement payment in *Suen* only in the case and to the extent that the Court finds the Policy limit is not already exhausted by payment of defense costs.

This Motion is based upon: (1) this Notice; (2) the following Memorandum of Points and Authorities; (3) the accompanying Declaration of Marc T. Ladd (the "Ladd Declaration") filed concurrently herewith; (4) the exhibits[1] attached to the Ladd Declaration; (5) all pleadings and papers on file in this action; and (6) such other matters as may be presented to the Court at the Court's request and/or at the time of a hearing on this Motion if set.

DATED this 29th day of September, 2023.

KEMP JONES, LLP

 */s/ Michael J. Gayan*
J. Randall Jones, Esq. (#1927)
Michael J. Gayan, Esq. (#11135)
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169

Robin L. Cohen, Esq. (*Admitted pro hac vice*)
Marc T. Ladd, Esq. (*Admitted pro hac vice*)

---

[1] All "Ex." references herein are to the Ladd Declaration.

PROOF OF SERVICE

1   Alexander M. Sugzda, Esq. (*Admitted pro hac vice*)
    Jason D. Meyers, Esq. (*Admitted pro hac vice*)

2   COHEN ZIFFER FRENCHMAN
    & MCKENNA LLP

3   1325 Avenue of the Americas
    New York, New York 10019

4

5   *Attorneys for Plaintiffs Las Vegas Sands, Inc.*
    *n/k/a Las Vegas Sands, LLC & Las Vegas Sands*

6   *Corp.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

3

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.    <u>INTRODUCTION</u>**

3

The underlying *Suen* Action was litigated for over a decade in the Nevada state courts,

4

through years of discovery, motion practice, two full jury trials and the start of a third trial, and

5

it reached Nevada's highest court twice before ultimately settling in 2019. However, the issue

6

of whether National Union improperly evaluated coverage and denied its obligation to pay

7

LVS's defense costs in *Suen* that entire time is straightforward. Under Nevada law, determining

8

whether an insurer owes a defense obligation is achieved by comparing the allegations of the

9

complaint with the terms of the policy, and the insured is entitled to defense coverage if there is

10

even a "potential for coverage" based on those allegations."[2] Here, National Union never even

11

did this analysis. Rather, within *24 hours* of receiving notice of *Suen*, National Union made the

12

decision to deny defense coverage, based entirely on a single Policy exclusion intended for loss

13

arising from a claim for "contractual liability" under an "express contract or agreement." In the

14

process, however, National Union completely missed the *Suen* complaint's other allegations and

15

causes of action beyond breach of contract, including a claim for quantum meruit that, by

16

definition, *could not* arise out of an "express contract." Since then, National Union has spent the

17

last decade attempting to backfill that initial incomplete and hasty denial by claiming that the

18

quantum meruit claim was "impliedly" denied (it was not), by arguing that LVS never contested

19

the denial (it did), and by alleging all-new coverage defenses. However, none of this changes

20

the simple fact that National Union had an obligation to contemporaneously pay LVS's defense

21

costs for *Suen* until its Policy limit was exhausted.

22

*Suen* arose from a business relationship between Hong Kong citizen Richard Suen (and

23

his company Round Square Company Limited ("Round Square")) and LVS, LVS's then-

24

Chairman and CEO Sheldon Adelson, and LVS's then-president William Weidner. *Suen* alleged

25

that Mr. Suen and his associates had provided services to LVS in and around 2000-01 to assist

26

LVS in getting approved to conduct gambling-related activities in the Macau Special

27

28

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

---

[2] *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1155 (Nev. 2004); *see also Andrew v. Century Sur. Co.*, 2014 WL 1764740, at *6 (D. Nev. Apr. 29, 2014).

4

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

Administrative Region ("Macau SAR") in the People's Republic of China, such as by introducing Messrs. Adelson and Weidner to government officials and advising on potential investors. When, after that, LVS continued with the formal concession process, plaintiffs alleged LVS and Mr. Suen exchanged three short faxes in July and September 2001 stating that Mr. Suen would get a 2% ownership interest and a "success fee" of $5 million if LVS obtained the concession and opened a casino property. However, when LVS opened the Macau SAR property later in 2004, LVS refused Suen's request for payment because in the years after those faxes Suen had done nothing to help LVS obtain the concession. The parties' subsequent negotiations for an alternative fee fell through, and Mr. Suen and Round Square sued in October 2004 (the "*Suen* Complaint") asserting claims for (1) breach of contract (based on the three 2001 faxes allegedly making a "contract"), (2) fraud, and (3) quantum meruit for the reasonable value of the services the plaintiffs alleged they provided. National Union received LVS's notice of the *Suen* Complaint on November 2, 2004. On November 3, National Union decided to deny coverage.

While National Union acknowledged in 2004 that LVSI and its executives were insureds under the Policy, and that the *Suen* Action would trigger the Policy's coverage grant, National Union claimed it had reviewed the *Suen* Complaint and the Policy and found defense coverage was precluded under the Policy's exclusion 4(h) (the "Contract Exclusion"). The Contract Exclusion, as written, excludes coverage for loss in connection with a claim alleging, arising out of, or based on the "actual or alleged contractual liability of the Company under any express contract or agreement[.]" However, it was apparent from National Union's denial letter—and it has since been confirmed by National Union's internal documents produced in this action—that National Union did not evaluate the *entire Suen* Complaint for defense coverage. Specifically, National Union missed that the Complaint sought non-contractual relief under a claim for quantum meruit that was irrespective of any contract,[3] and it failed to evaluate the allegations of the fraud cause of action. When LVS's broker wrote to National Union on LVS's behalf to point

---

[3] ECF No. 1-4 at 2 (denial letter stating incorrectly "[t]he Complaint states two claims for relief, breach of contract and fraud").

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

1  out the many inaccuracies in the denial letter, National Union's claims handler ignored it, never

2  logged that it happened in the claim log, and falsely reported internally to her superiors that

3  National Union "did not receive a response" to the letter.[4] With no support from its insurer, LVS

4  turned its attention fully toward defeating *Suen* on the merits.

5      Through two separate jury trials, the court and then a jury in *Suen* determined that there

6  was no contract between the parties. Rather, each time, the only basis for plaintiffs' recovery

7  was quantum meruit, which, under Nevada law, is not "contractual liability" and only exists "*in

8  the absence* of an express contract" or agreement,[5] elements that are required for the Contract

9  Exclusion to apply. Thus, while National Union breached its duty to pay defense costs for the

10 *Suen* Action at the outset—because the *Suen* Complaint allowed for the possibility of coverage

11 outside the Contract Exclusion—that the Exclusion never applied was borne out in the *Suen*

12 Action verdicts in 2008 and 2013. As such, in 2017, after the Supreme Court's second decision

13 that affirmed the liability on quantum meruit, LVS's broker reached out again to National Union

14 to conduct an actual coverage analysis this time. On the surface, National Union agreed to take

15 another look; however, National Union had no intention of "re-visiting" its prior denial, a

16 decision made even "eas[ier]" by the fact that LVS no longer purchased insurance with National

17 Union.[6] Tellingly, National Union's re-review of the file confirmed that it never analyzed

18 coverage for the quantum meruit claim in the first denial. Nevertheless, based solely on the

19 Policy and first amended complaint, National Union now insisted that quantum meruit—the

20 claim LVS was just found liable on—also fell under the Contract Exclusion.

21      There is no dispute that the Contract Exclusion would apply to the *Suen* plaintiffs' claims

22 for breach of contract and breach of the covenant of good faith and fair dealing (the latter added

23 by amendment in *Suen* in 2005). Those claims sought damages for alleged contractual liability

24 based on an alleged contract (the 2001 faxes). But National Union's interpretation in 2017 that

25 expanded the scope of the Contract Exclusion to the quantum meruit claim to avoid *all* coverage

26

27 [4] Ex. 1 at APP00003-04.

28 [5] *Atwell v. Westgate Resorts, Inc.*, 2019 WL 4738010, at *4 (D. Nev. Sept. 28, 2009) (emphasis
   added).

   [6] Ex. 2 at APP00021.

6

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

1   not only ran contrary to Nevada law, it required that National Union rewrite the terms of the

2   Exclusion. Under Nevada law, an insurer has a defense obligation for the entire lawsuit as long

3   as a single allegation in the complaint is arguably covered, and exclusions are interpreted

4   narrowly and only apply when the insurer's reading is the "only reasonable" interpretation.[7] The

5   quantum meruit claim never arose from, or was based on, alleged contractual liability under an

6   express contract pursuant to the Contract Exclusion: there was no express contract, and, if Suen

7   never sent the three 2001 faxes that he alleged had formed a "contract," the *Suen* plaintiffs still

8   had the same allegations and claim for quantum meruit that they ultimately prevailed on. And

9   the fraud count was always potentially covered—which National Union tacitly admitted in

10  2017—meaning National Union should have been, at a minimum, paying LVS's defense costs

11  from 2004 until the fraud count was dismissed in 2010. But National Union has paid nothing,

12  and it now maintains that the Contract Exclusion always applied to the fraud count as well.

13          In addition to the Contract Exclusion, National Union has also asserted that the Policy's

14  Exclusion 4(a) bars coverage. Exclusion 4(a), referred to as the "Illegal Profit Exclusion,"

15  precludes coverage where the insured made a profit or gained an advantage to which it was "not

16  legally entitled" and a "final adjudication" establishes that such conduct took place. Courts have

17  held that this Exclusion is intended for corporate malfeasance, such as insider trading, where an

18  insured must return illegal profits or gains. The *Suen* Action never accused the LVS insureds of

19  obtaining a profit or advantage that was illicit in nature or that the LVS insureds were not legally

20  entitled to (nor was there any final adjudication establishing this took place). Rather, the *Suen*

21  plaintiffs sought their fair compensation for the alleged services they rendered to LVS. Same as

22  with the Contract Exclusion, National Union's interpretation of the Illegal Profit Exclusion to

23  the facts here exceeds all reasonable bounds.

24          The *Suen* Action has always satisfied the Policy's insuring agreement, and no exclusion

25  applies. Thus, National Union owed LVS a defense obligation from the outset of the *Suen* Action

26  until the Policy limit was exhausted. LVS's defense costs alone for the *Suen* Action are

27  approximately $34 million, far in excess of the Policy's $250,000 retention and $20 million

28

---

[7] *Century Sur. Co. v. Casino W.*, 329 P.3d 614, 616 (Nev. 2014).

7

limit. Even if National Union had the right to challenge the reasonableness of these costs despite having denied coverage (it does not), LVS's costs were reviewed for reasonableness in real time by in-house attorneys, and were reasonable and necessary under the *Brunzell*[8] factors, given the size and nature of the *Suen* litigation. Accordingly, LVS respectfully requests judgment on its Second Cause of Action for the Duty to Pay Defense Costs for the full Policy limit. LVS also requests judgment on its Third Cause of Action for the Duty to Indemnify the *Suen* settlement only if the Court finds that the Policy limit was not already exhausted by defense costs.

## II.   STATEMENT OF UNDISPUTED FACTS

### A.   The Policy Provides Broad Defense Costs And Indemnity Coverage For The Company And Its Executives

The Policy was issued to Interface Group Holding Company, Inc., an LVS-related company, for the policy period of October 6, 2003 to October 6, 2004, which was extended twice by endorsement to December 6, 2004. ECF No. 49-1, Declarations Item 3, and Endts. 23 and 24. Las Vegas Sands, Inc. (LVSI), LVS's primary operating company at the time of issuance, was added as a named insured by endorsement. *Id.*, Endt. 12. The Policy provides $20 million in coverage, excess of a $250,000 self-insured retention, for "Loss" arising from a "Claim" first made during the Policy period for allegations of "Wrongful Acts." *Id.*, Declarations Items 4 and 5 and § 1. The Policy defines "Loss" to include "damages . . . settlements, pre- and post-judgment interest, and Defense Costs," the latter of which is defined as the "reasonable and necessary fees, costs and expenses consented to by [National Union] resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds . . . ." *Id.* §§ 2(k) and 2(e).

The Insuring Agreement further provides that National Union "shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition" based on "a Claim . . . for any actual *or* alleged Wrongful Act." *Id.* § 1.B (emphasis added). Similarly, the Defense Provisions subsection provides that, "[r]egardless of whether [a] defense is . . . tendered, [National Union] shall advance Defense Costs (excess of the applicable retention

---

[8] *Brunzell v. Golden Gate Nat'l Bank*, 455 P.2d 31 (Nev. 1969).

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

amount) of such Claim prior to its final disposition." *Id.* § 1.[9] Under Clause 8 of the Policy, LVS has the option to (1) tender to National Union an obligation to carry out the defense, "even if such Claim is groundless, false or fraudulent," or (2) retain its own attorneys, and in that event, National Union "shall advance nevertheless, at the written request of [LVS], Defense Costs prior to the final disposition of a Claim." *Id.* § 8. Accordingly, the Policy requires that National Union contemporaneously advance Defense Costs based on allegations. Furthermore, there is no provision in the Policy for the allocation or limitation of coverage for Defense Costs based on covered and non-covered claims or causes of action included in a single lawsuit.

National Union's almost 20-year refusal to cover any costs associated with *Suen* is based on the Contract Exclusion. That Exclusion provides that National Union "shall not be liable to make any payment for Loss in connection with a Claim made against an Insured . . . alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company under any express contract or agreement." *Id.*, Endt. 6. In its legal briefing, National Union also has cited Exclusion 4(a), the Illegal Profit Exclusion, which provides, in relevant part, that National Union shall not be liable to make payment for Loss in connection with a Claim "arising out of, based upon or attributable to the gaining of any profit or advantage to which a final adjudication adverse to the Insured(s) or an alternative dispute resolution proceeding establishes the Insured(s) were not legally entitled." *Id.*, Endt. 4.

### B.   The *Suen* Action

On or about October 15, 2004, Richard Suen, a citizen of Hong Kong, and his company, Round Square, filed the *Suen* Action in the District Court of Clark County, Nevada, against LVSI, LVSC, and Messrs. Adelson and Weidner, both officers of LVS.[10] ECF No. 1-2. The

---

[9] Additionally, a "Notice" clause on the first page of the Policy states: "IN ALL EVENTS, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM." *Id.*, Declarations.

[10] LVSI was incorporated in Nevada in April 1988 (Ex. 3) and acted as the primary operating company until August 2004, when LVSC was formed and incorporated in Nevada to act as the new parent company over all LVS entities (Ex. 4 at APP00031-32). Accordingly, on December 17, 2004, LVSI became a wholly-owned subsidiary of LVSC after LVSC acquired 100% of LVSI's capital stock in "a reorganization of entities under common control, in a manner similar to pooling-of-interests." *Id.*; Ex. 5. On July 28, 2005, LVSI converted into a limited liability

*PROOF OF SERVICE*

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

Amended *Suen* Complaint was filed in the *Suen* Action on or about May 17, 2005. ECF No. 1-3. The Amended *Suen* Complaint contained essentially the same allegations as the original *Suen* Complaint, the primary differences being that it (1) dismissed LVSC as a defendant since LVSI was the operating company at the time of the acts alleged in the Complaints, not LVSC[11] (*see* Ex. 9, dismissing LVSC), and (2) added a cause of action for Breach of the Implied Covenant of Good Faith and Fair Dealing. ECF No. 1-3 ¶¶ 32-37.

The original and Amended *Suen* Complaints alleged that Suen and Round Square had performed certain activities to assist LVS in obtaining a concession to conduct casino and resort activities in the Macau SAR, such as meeting with defendants on strategy, advising on presentations for meetings with government officials, and introducing defendants to such officials and other influential individuals in 2000 and 2001. *See* ECF No. 1-2 ¶¶ 14, 18, 40-41; ECF No. 1-3 ¶¶ 13, 17, 46-47. These services allegedly provided by Suen and his group were described in paragraphs 14 and 18, and 13 and 17, of the original and Amended *Suen* Complaints, respectively. As LVS moved forward with the formal process for the gaming concession, Messrs. Suen and Weidner exchanged three faxes in 2001 negotiating a payment to plaintiffs if a casino was opened in the Macau SAR, including that Suen would get a $5 million "success fee" and a 2% ownership interest in the property being opened. ECF No. 1-2 ¶¶ 15-17; ECF No. 1-3 ¶¶ 14-16; ECF Nos. 71-1, 71-2, and 71-3.

A few years later in 2004, after LVS was granted a gaming concession in the Macau SAR and opened its first property, Mr. Suen reached out to LVS for compensation. However, LVS denied that the plaintiffs had done anything to help procure the concession: defendants claimed the meetings Mr. Suen played a part in arranging did not impact (and under applicable law, could not have impacted) the decision by the Macau SAR authorities to grant the concession

_____

company called Las Vegas Sands, LLC, of which LVSC remains the sole member and parent corporation to this day. Exs. 6 and 7.

[11] In 2013, the *Suen* case caption was mistakenly changed to "Las Vegas Sands Corp." based on LVS's counsel's erroneous statement in a hearing that LVSC was the correct party. On March 26, 2019, the court entered an order on stipulation of the parties rectifying that error and amending the case caption to reflect that Las Vegas Sands, Inc. (n/k/a Las Vegas Sands, LLC, *supra* n.10) was (and always was) the proper defendant. Ex. 8.

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

1    to LVS. *See, e.g.*, Ex. 10 at APP00205-08; Ex. 11 at APP00267-68. Rather, it was LVS's

2    substantial experience in the gaming industry and diligent efforts during the application process

3    in the Macau SAR well after the meetings that got LVS the concession. *See id.* The parties

4    discussed an alternative fee for Mr. Suen, including a "procurement deal" under which Mr. Suen

5    would work for LVS as a purchasing agent. *See, e.g.*, Ex. 10 at APP00191 and APP00224-26;

6    Ex. 11 at APP00246. However, Mr. Suen declined the offer, and following subsequent requests

7    for compensation which LVS rejected, Mr. Suen brought suit in October 2004. *See id.*; ECF No.

8    1-2. According to the *Suen* Complaint, plaintiffs asserted that the three, cursory faxes in 2001

9    made up a "contract" that LVS breached, and the Amended *Suen* Complaint alleged that LVS

10   had additional liability for breaching the contract in bad faith. ECF No. 1-2 ¶¶ 15-17, 24-31;

11   ECF No. 1-3 ¶¶ 14-16, 24-37. However, the plaintiffs' Complaints also contended that LVS and

12   Messrs. Adelson and Weidner had committed fraud, and that, regardless of any supposed

13   contract, they should be compensated for the reasonable value of the services they performed

14   (*i.e.*, introductions to influential government officials and advising on the presentations for those

15   officials) under a claim for quantum meruit. ECF No. 1-2 ¶¶ 32-42; *id.* ¶ 40 (quantum meruit

16   claim referencing allegations of services in ¶ 18 as supporting that claim); ECF No. 1-3 ¶¶ 38-

17   48.

18          After four years of litigation, in April 2008, the *Suen* trial court granted summary

19   judgment to LVS on the two contract claims (breach and covenant of good faith and fair dealing),

20   holding that "[t]here was no contract between" the plaintiffs and LVS, and it also dismissed the

21   cause of action for fraud, leaving only quantum meruit. *Suen v. Las Vegas Sands, Inc.*, No.

22   A493744, 2008 WL 2692509, at *1 (Nev. Dist. Ct., Clark Cnty., Apr. 4, 2008); *Suen v. Adelson*,

23   No. A493744, 2006 WL 5894934, at *1 (Nev. Dist. Ct., Clark Cnty., Mar. 15, 2006). At trial,

24   LVS was found liable on quantum meruit. *Suen v. Las Vegas Sands, Inc.*, 2008 WL 2660819, at

25   *1 (Nev. Dist. Ct., Clark Cnty., May 24, 2008) (Pls.' Special Verdict Form); *see also Suen v.

26   Las Vegas Sands, Inc.*, No. A493744, 2008 WL 6831952, at *1 (Nev. Dist. Ct., Clark Cnty.,

27   June 30, 2008). Both sides appealed, and on November 17, 2010, the Supreme Court of Nevada

28   affirmed the dismissal of the plaintiffs' fraud count, but reversed the earlier decision dismissing

---

11

the breach of contract counts and ordered a new trial. *Las Vegas Sands, Inc. v. Suen*, 367 P.3d 792 (Table), 2010 WL 4673567, at *1 (Nev. 2010). The Supreme Court also rejected LVS's argument that Suen could not recover in quantum meruit for the "efforts" of his business associates, stating that a valid claim for quantum meruit can be asserted "[w]hen there is no express agreement but the plaintiff asserts a right to reasonable compensation." *Id.* at *2.

In 2013, a second trial was conducted, and the court instructed the jury that plaintiffs sought to establish liability on one of two alternative legal theories: contract and quantum meruit. ECF No. 49-2, at APP114. The court instructed the jury on the quantum meruit claim as follows:

> Plaintiffs' second claim is for *quantum meruit*. If you find there was not an enforceable contract, Plaintiffs seek in the alternative to establish a claim of *quantum meruit* against Las Vegas Sands.

*Id.* at APP136. The trial court continued:

> To establish a claim for *quantum meruit*, a Plaintiff must prove . . . [t]he Plaintiff performed [a] service at the request of or with the knowledge and acquiescence of the Defendant; and . . . Plaintiff performed under such circumstances as reasonably notified Defendant that the Plaintiff expected to be compensated.

*Id.* at APP137.

The jury again rejected that there existed a contract or agreement with the plaintiffs that LVS breached, and instead found LVS liable solely on the theory of quantum meruit. ECF No. 49-3; *Suen v. Las Vegas Sands Corp.*, No. 04A493744, 2013 WL 3142652, at *1 (Nev. Dist. Ct., Clark Cnty., May 28, 2013). LVS appealed, and in 2016, the Supreme Court of Nevada ordered a new trial, agreeing with LVS that the jury's award for the reasonable value of the plaintiffs' efforts on the quantum meruit claim was not supported by the evidence. *Las Vegas Sands Corp. v. Suen*, 132 Nev. 998 (Table), 2016 WL 4076421, at *5 (2016). LVS continued defending itself against the *Suen* Action, including preparing for the third trial, until 2019, when the parties entered into a confidential settlement resolving the case. Ex. 12.

Over the course of its fifteen-year defense of the *Suen* Action, LVS incurred and paid approximately $34,176,225.49 in defense costs and related expenses. *See* Ex. 13.

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

12

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

### C.   <u>National Union's Coverage Denial</u>

On October 29, 2004, LVS, through its broker representatives at Aon, gave notice to National Union and attached the *Suen* Complaint. ECF No. 49-4; *see also* ECF No. 1-4 at 1. The notice stated that LVS had not yet retained defense counsel and made the following request of National Union:

> Please acknowledge receipt of this claim and provide AIG's consent to the retention of defense counsel, and authorization to incur defense costs. If there are any litigation management guidelines, which you would request the Insureds to comply with, please provide a copy of those guidelines.

ECF No. 49-4 at NU00012156. The notice specifically called out to National Union that the *Suen* Complaint alleged three causes of action: "Breach of Contract, Fraud, and Quantum Meruit," and it requested that Joe McManus, LVS's representative at Aon, be copied on any response. *Id.*; *see also* Ex. 14 (Conboy Tr.) 167:9-14; Ex. 15 (National Union sending Policy information and documents to Mr. McManus as LVS's representative). Unbeknownst to Aon or LVS (until this litigation), fewer than 24 hours after receiving the notice on November 2, 2004 (Ex. 1 at APP00018), National Union decided to deny coverage. On November 3rd, Assistant Vice President Anthony Tatulli, who would later become head of AIG's financial lines for North America, wrote on the assignment sheet for complex claims: "breach of contract suit" and under "Coverage" he concluded: "Denial – Breach of contract exclusion; 4(q) exclusions . . . 4(a) + 4(c) [exclusions]." *Id.* at APP00017. A day later, on November 4th, Mr. Tatulli wrote to LVS, copying Mr. McManus, stating that AIG Complex Claims Director Maureen Conboy was assigned to the *Suen* claim and would be providing a coverage letter. *Id.* at APP00018.

On November 30, 2004, Ms. Conboy sent a letter copying Mr. McManus denying coverage. ECF No. 1-4. The letter stated that LVSI and Messrs. Adelson and Weidner were Insureds under the Policy, and acknowledged that the Complaint triggered the coverage grant. *Id.* at 1-2; Ex. 14 (Conboy Tr.) 243:15-244:6 (no dispute that *Suen* alleged "Claims" for "Wrongful Acts"). Nevertheless, based on National Union's "review of the Complaint and the provisions of the Policy," the letter stated that there was no coverage for *Suen* under the Contract Exclusion because the allegations in *Suen* were "totally based upon and attributable to the

13

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

1  alleged agreement," *i.e.*, the 2001 faxes. ECF No. 1-4 at 1 and 3; *see also* Ex. 14 (Conboy Tr.)

2  247:20-248:4. Ms. Conboy's letter missed, however, that the *Suen* Complaint had alleged a

3  separate claim for quantum meruit, stating that "[t]he [*Suen*] Complaint states two claims for

4  relief, breach of contract and fraud." ECF No. 1-4 at 2; Ex. 14 (Conboy Tr.) 261:7-11. As such,

5  there was no evaluation of the quantum meruit claim. Ex. 14 (Conboy Tr.) 245:10-246:11; *see*

6  *also id.* 250:22-25. ("[T]here is no analysis in this letter of the allegations supporting the

7  quantum meruit claim for relief."). Moreover, there also was no attention given to the allegations

8  of fraud either, even though the common practice, including at National Union, was to determine

9  defense coverage separately for each cause of action asserted in a suit. *Id.* 250:6-21; Ex. 16

10  (Trager Tr.) 215:5-10. Instead, the November 30th letter exactly followed Mr. Tatulli's

11  November 3rd directive—it denied coverage based on the Contract Exclusion; it cited exclusions

12  4(a) and 4(c), even though those exclusions required a "final adjudication" establishing the

13  excluded conduct; and it said Exclusions 4(q)(2) and (q)(3) precluded coverage, even though

14  these exclusions—relating to anti-trust claims and the failure of LVS to render professional

15  services to a client—never remotely applied to the allegations in *Suen*. *Compare* ECF No. 1-4

16  at 3 *with* Ex. 1 at APP00017.[12] National Union's failure to evaluate the allegations in *Suen* was

17  carried over into its internal claim logging system. Ex. 17 (claim note repeating that *Suen* alleged

18  two causes of action). Mr. McManus at Aon was copied on the denial letter. ECF No. 1-4 at 4.

19  A week later, on December 7, Mr. McManus sent an email on LVS's behalf to a contact

20  of his at National Union (Mr. David Guild) that attached the denial letter and provided a separate,

21  numbered rebuttal to each ground asserted in National Union's letter. Ex. 18; Ex. 16 (Trager

22  Tr.) 174:16-20. Mr. McManus, among other things, disputed that the Contract Exclusion applied

23  to the entire suit ("it is far from clear that any 'express' agreement existed at any time"),

24  commented that there was no analysis of the fraud count ("the complaint sounds in fraud as

25  well"), remarked that exclusions 4(a) and (c) required final adjudication and *Suen* had just been

26  filed, and asked "how in the world does [exclusion 4(q)(3)] apply???" Ex. 18. Mr. McManus

27

28

[12] During discovery in this lawsuit, National Union finally conceded these exclusions did not apply on their face. Ex. 16 (Trager Tr.) 73:20-74:13.

14

understood it was "appropriate to issue a reservation [of National Union's rights]" but questioned "[h]ow [wa]s this an outright denial?" based on the presence of the two other non-contract claims. *Id*. Mr. McManus said a more formal response would be forthcoming, but in the meantime he asked National Union to consider all of these points, and requested that National Union respond "as soon as you can." *Id*.

Mr. Guild forwarded Mr. McManus's December 7th email to Ms. Conboy that same day (he also sent it to AIG's head of financial lines (Ex. 19, Ex. 20 (Hughes Tr.) 177:19-20)), saying "see broker comments/questions." Ex. 18. However, there is nothing in National Union's files indicating that National Union did anything in response to Mr. McManus's email, and no documentation that coverage for *Suen* was further evaluated. To the contrary: Ms. Conboy represented to her superiors in emails and in the internal claim log that National Union never "receive[d] a response" to the denial letter (Ex. 1 at APP00003-04 and Ex. 17), which she conceded at deposition may not have been accurate. Ex. 14 (Conboy Tr.) 280:3-17 ("Maybe it's right. Maybe it's wrong [that no response was received]. I don't – I don't really know why it matters but it says what it says."). Ultimately, there is no evidence that National Union again considered coverage for *Suen*. Without support from its insurer, LVS turned its focus toward defending itself against the *Suen* Action and defeating the case. Ex. 21 (Little Tr.) 42:11-17.

However, following years of litigation, after the Nevada Supreme Court's second decision in the *Suen* Action in 2016 that affirmed liability solely on quantum meruit, it was clear LVS would be liable for *Suen*. Accordingly, Ron Goldstein at Aon, on LVS's behalf, reached out to Kieran Hughes, AIG Vice President of Financial Lines, in the hopes of getting a serious coverage evaluation for *Suen*. Ex. 2 at APP00022. However, it was clear no such consideration would be given. Mr. Hughes responded (after removing LVS's in-house counsel from the email) to Aon's request for a coverage evaluation that LVS should "be prepared" that National Union would "not [be] re-visiting" coverage for this claim in part because the claim log said no response to National Union's denial was received (which was incorrect), and, in any event, LVS was not presently purchasing coverage from AIG. *Id*. at APP00021 ("I'm also informed that Patrick [Dumont, LVS's CFO,] has no intention of doing any business w[ith] AIG. This

*PROOF OF SERVICE*

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

1  [decision to deny] is easy."). Tellingly, when Mr. Hughes did review the *Suen* file, Mr. Hughes

2  not only incorrectly believed that no response to the denial was received, but he also mistakenly

3  thought (based on Ms. Conboy's denial letter) that the original *Suen* Complaint had only two

4  causes of action for breach of contract and fraud, and assumed that the claim for quantum meruit

5  that was not addressed in the 2004 denial letter must have been added in by the Amended *Suen*

6  Complaint filed in 2005. Ex. 22 at APP00397-400.

7      Mr. Hughes assigned *Suen* to Complex Claims Director Andrew Trager, and on June 29,

8  2017, Mr. Trager sent a letter reiterating that *Suen* satisfied the elements for triggering coverage.

9  ECF No. 1-5 at 3. Contrary to the November 2004 letter, the June 2017 letter addressed coverage

10  for each claim in the Amended *Suen* Complaint, and this time, National Union said the Contract

11  Exclusion excluded coverage for the two contract claims (breach of contract and breach of the

12  covenant of good faith and fair dealing) *and* the quantum meruit claim. *Id.* at 4. The final letter

13  contained Mr. Hughes' comments intended to be directed to Mr. Trager (evidencing Mr. Trager

14  did not review Mr. Hughes' edits before sending it to LVS[13]) and demanded that LVS provide

15  National Union with a dozen categories of *Suen* documents, even though its denial was based

16  on the Amended *Suen* Complaint alone. *Id.* at 5. Nevertheless, National Union acknowledged

17  that the fraud count—which was fully dismissed by 2010—did not unambiguously fall within

18  the Contract Exclusion, and asked for billings by LVS's defense counsel that could be possibly

19  allocated just to that fraud count, which was impossible now thirteen years into *Suen*. *Id.* at 4

20  (after denying coverage for breach and quantum meruit counts, stating, "[a]s to the fraud count,

21  we reserve rights . . . ."); *see also* ECF No. 1-6 at 3 ("We are continuing to investigate and

22  consider coverage as to plaintiffs' fraud claim."); Ex. 23 at APP00402 (National Union 2017

23  claim notes stating that National Union is considering "potential coverage pursuant to the fraud

24  count"); Ex. 20 (Hughes Tr.) 150:17-151:2; *id.* 153:18-155:2; *id.* 157:5-12 (Mr. Hughes

25  agreeing that National Union acknowledged potential coverage for the fraud count in August

26  2017).

27

28

---

[13] *Id.* at 2 (Mr. Hughes writing to Mr. Trager "? (I don't understand this phrase)" which was included in the final letter sent to LVS).

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

1    A week later, LVS challenged National Union's position that the Contract Exclusion

2    applied to the quantum meruit claim, which was separate from any alleged contract. *See* ECF

3    No. 49-5 at NU00011654-55. National Union responded on August 8, 2017 that LVS's reading

4    of the Contract Exclusion was "too narrow," and it applied to the quantum meruit claim too,

5    even though the quantum meruit claim exists only in the absence of an express agreement. ECF

6    No. 1-6 at 1.[14] National Union again admitted at the very least that the fraud count would not

7    automatically fall under the Contract Exclusion. ECF No. 1-6 at 3. Nevertheless, it became clear

8    to LVS that National Union was not going to pay any amounts for the *Suen* Action. Ex. 24

9    (Batarseh Tr.) 64:2-17.

10   **III.    APPLICABLE LEGAL STANDARDS**

11        **A.    Summary Judgment Standard**

12        "The purpose of summary judgment is to avoid unnecessary trials when there is no

13   dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F. 3d

14   1468, 1471 (9th Cir. 1994). The court shall grant summary judgment "if the movant shows that

15   there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

16   matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

17   (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat

18   [summary judgment]"; rather, "the requirement is that there be no *genuine* issue of *material*

19   fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue of fact is genuine

20   only if there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict

21   for that party." *Id.* at 249. Once the moving party shows the absence of material fact, the

22   nonmoving party "may not rely on denials in the pleadings but must produce specific evidence,

23   through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v.*

24   *NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). "In essence . . . the inquiry [is] whether

25   the evidence presents a sufficient disagreement to require submission to a jury[.]" *Id.* at 251-52.

26

27   _____

[14] Moreover, National Union continued to ignore that the Contract Exclusion, by its plain terms,

28   applied only to the liability of the "Company," and would not under any circumstance apply to
coverage for the fraud count alleged against Messrs. Adelson and Weidner in the *Suen* Action.
*Id.*; *see also* ECF No. 49-1, Endt. 6.

17

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

1   Issues of insurance policy interpretation, including the triggering of an insurer's defense

2   obligation, involve objective analysis of questions of law and are appropriate on summary

3   judgment. *See Century Sur. Co. v. Casino W., Inc.*, 2010 WL 762188, at *2 (D. Nev. Mar. 4,

4   2010), *aff'd*, 578 F. App'x 720 (9th Cir. 2014).

5         **B.**    **Rules Of Insurance Policy Interpretation And The Insurer's Duty To**

6                   **Defend And Pay Defense Costs**

7           "In the insurance context," Nevada courts "broadly interpret clauses providing coverage,

8   to afford the insured the greatest possible coverage." *Fed. Ins. Co. v. Am. Hardware Mut. Ins.*

9   *Co.*, 184 P.3d 390, 392 (Nev. 2008) (citation omitted). "When construing an insurance policy

10  under Nevada law, the Court must read the policy 'as a whole,' and 'its language should be

11  analyzed from the perspective of one untrained in law or in the insurance business. Policy terms

12  should be viewed in their plain, ordinary and popular connotations.'" *Danganan v. Am. Family*

13  *Mut. Ins. Co.*, 2019 WL 4855140, at *3 (D. Nev. Sept. 30, 2019) (citation omitted). "If a term

14  in an insurance policy is ambiguous, it will be construed against the insurer, because the insurer

15  drafted the policy." *Id.* (citation omitted). Lastly, "clauses excluding coverage are interpreted

16  narrowly against the insurer." *Nat'l Union Fire Ins. Co. of State of Pa., Inc. v. Reno's Exec. Air,*

17  *Inc.*, 682 P.2d 1380, 1383 (Nev. 1984).

18          A liability policy "creates two contractual duties between the insurer and the insured: the

19  duty to indemnify and the duty to defend," and "[t]he duty to defend is broader than the duty to

20  indemnify." *Century Sur. Co. v. Andrew*, 432 P.3d 180, 183 (Nev. 2018) (citation omitted);

21  *United Nat'l*, 99 P.3d at 1158 (citation omitted). Whereas the duty to indemnify arises when

22  there is "actual coverage" under the policy's coverage grant for settlements or judgments, the

23  duty to defend arises when there is simply "arguable or possible coverage" or the "potential" for

24  coverage under the policy, and "[i]f there is any doubt about whether the duty to defend arises,

25  this doubt must be resolved in favor of the insured." *United Nat'l*, 99 P.3d at 1158 (citation

26  omitted). Furthermore, as both parties now agree,[15] Nevada follows the "four corners" or

27   

28  [15] Previously, National Union refused to admit in its filings to the Court that its obligation to pay defense costs was determined by the potential for coverage based on a complaint's allegations

*PROOF OF SERVICE*

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

1   "complaint" rule for an insurer's defense obligation, *i.e.*, "[d]etermining whether an insurer owes

2   a duty to defend is achieved by comparing the allegations of the complaint with the terms of the

3   policy," *id.* (citation omitted), and this determination is made at the outset of the litigation.

4   *Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, 497 P.3d 625, 631 & n.9 (Nev. 2021); *Centex*

5   *Homes v. Zurich Specialties London Ltd.*, 2017 WL 2232134, at *3 (D. Nev. May 19, 2017)

6   (Mahan, J.); *Andrew*, 2014 WL 1764740, at *6 (rejecting insurer's attempt to look beyond facts

7   alleged in complaint to find grounds to deny defense coverage; "the Nevada Supreme Court

8   would adopt the four corners rule"). Importantly, each cause of action in a suit is analyzed for

9   defense coverage, and "it is well established that where an insurer has a duty to defend, the

10  obligation generally applies to the entire action, even though the suit involves both covered and

11  uncovered claims, or a single claim only partially covered by the policy." *Jaynes Corp. v. Am.*

12  *Safety Indem. Co.*, 2013 WL 5428095, at *2 (D. Nev. Sept. 26, 2013); *Hanover Ins. Co. v. Paul*

13  *M. Zargis, Inc.*, 714 F. App'x 735, 737 (9th Cir. 2018) (same).

14      Moreover, National Union's obligation to advance defense costs is governed by the same

15  standard as if it had carried out the defense. *See, e.g.*, *Acacia Research Corp. v. Nat'l Union Fire*

16  *Ins. Co. of Pittsburgh, Pa.*, 2008 WL 4179206, at *11 (C.D. Cal. Feb. 8, 2008) (holding that

17  National Union's "duty to advance defense costs is [as] broad as the duty to defend . . . [t]he

18  agreement to advance defense costs must be similarly interpreted; it would be an anomaly to

19  require [National Union] to advance defense costs only for meritorious claims." (citation

20  omitted)). Accordingly, the "duty to advance defense costs extends to costs incurred defending

21  against claims that are potentially covered under the policy." *Braden Partners, LP v. Twin City*

22  *Fire Ins. Co.*, 2017 WL 63019, at *10-11 (N.D. Cal. Jan. 5, 2017); *see also Lexington Ins. Co.*

23  *v. Devaney*, 50 F.3d 15 (Table), 1995 WL 105985, at *2 (9th Cir. 1995) ("[The insurer] correctly

24  points out that it had no duty to defend, but only to reimburse defense costs as part of the loss

25

26  under the four corners rule. *See* ECF No. 61 at 15-16. However, now National Union submitted
    an expert rebuttal report on its bad faith that repeatedly states that Nevada "is a four corners
27  jurisdiction," and National Union's witnesses in discovery testified they excluded defense
    coverage based on the *Suen* Complaints alone. Ex. 25 at APP00444 & n.49, APP00445,
28  APP00450. *See also* Ex. 14 (Conboy Tr.) 65:15-21; 240:12-19 (coverage is determined by
    comparing complaint to policy); Ex. 20 (Hughes Tr.) 124:18-125:12 (same).

19

1   under the policy. However, under California law a breach of the duty to pay the costs of defense

2   under a D&O policy will be treated much the same as a breach of the duty to defend.").

3   **IV.   <u>ARGUMENT</u>**

4        **A.   <u>The *Suen* Action Satisfies The Policy's Coverage Grant</u>**

5        The allegations contained in the *Suen* Action are precisely the type of liability for which

6   the Policy provides coverage. The Insuring Agreement provides that National Union will pay

7   LVS's Loss for Claims first made against LVS or an Individual Insured "during the Policy

8   Period . . . and reported to [National Union] pursuant to the terms of this policy for any actual

9   or alleged Wrongful Act . . . ." ECF No. 49-1 § 1. National Union admitted that the allegations

10  in *Suen* constituted a covered "Claim" for "Wrongful Acts" under the Policy, and that the Action

11  was filed against both LVSI and Messrs. Adelson and Weidner, all of whom were insureds under

12  the Policy. *Supra* at Section II.C. Finally, the *Suen* Action was filed during the Policy period

13  and was timely reported to National Union on October 29, 2004. ECF No. 49-1, Endt. 24; ECF

14  No. 49-4 at NU00012156; *see also* ECF No. 1-4 at 1. Accordingly, the allegations in the *Suen*

15  Action triggered National Union's duty to pay defense costs unless an exclusion to coverage

16  applied.

17       **B.   No Policy Exclusion Applies To Preclude Coverage For Defense Costs**

18               **Incurred In The *Suen* Action**

19       Because the *Suen* Action falls within the coverage grant provided by the Policy, National

20  Union has argued that a Policy exclusion, specifically the Contract Exclusion, applies to bar

21  coverage. Under Nevada law, in order for an exclusion to apply, the insurer must: (1) draft the

22  exclusion in "obvious and unambiguous language," (2) "demonstrate that the interpretation

23  excluding coverage is the only reasonable interpretation of the exclusionary provision," and (3)

24  establish that the exclusion "plainly applies to the particular case before the court." *Casino W.*,

25  329 P.3d at 616. Neither the Contract Exclusion nor the Illegal Profit Exclusion unambiguously

26  establishes that coverage is excluded for the allegations in the *Suen* Complaints, and therefore,

27  National Union had a duty to advance LVS's Defense Costs for the *Suen* Action until the $20

28  million Policy limit was exhausted.

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

*PROOF OF SERVICE*

1

## 1.   The Contract Exclusion Does Not Apply To Preclude Coverage For The *Suen* Action

From the time that National Union first denied coverage the day after it received notice in November 2004 until the time that it denied coverage again in August 2017, the only real basis National Union has put forward for avoiding coverage has been the Contract Exclusion. However, National Union's unduly broad reading of the Contract Exclusion is not supported by the plain language of the Policy, it ignores the allegations of the *Suen* Action, and it is contrary to longstanding tenets of Nevada law, including those regarding insurance policy interpretation.

The Contract Exclusion applies to Loss from a Claim that alleges, arises out of, is based upon or is attributable to actual or alleged "contractual liability" under an "express contract or agreement." *Supra* at Section II.A. While the *Suen* plaintiffs' breach of contract claim was the only cause of action that National Union actually considered when it quickly denied coverage in 2004, the original and Amended *Suen* Complaints contained two other causes of action—quantum meruit and fraud—that always were potentially covered for the purposes of defense coverage, and never unambiguously fell within the Contract Exclusion.

Regarding the quantum meruit claim, both Nevada courts and the Ninth Circuit hold that a claim for quantum meruit arises only in the *absence* of an express contract. *Atwell v. Westgate Resorts, Inc.*, 2019 WL 4738010, at *4 (D. Nev. Sept. 28, 2009) ("In the absence of an express contract, a party may be able to recover under the theory of quantum meruit."); *Mobius Connections Grp. v. TechSkills, LLC*, 2012 WL 194434, at *8 (D. Nev. Jan. 23, 2012) (stating that, only where "there is *no express agreement* as to compensation, then one can recover the reasonable value of their services under a quantum meruit claim"); *Gov't Comp. Sales Inc. v. Dell Mktg.*, 199 F. App'x 636, 639 (9th Cir. 2006) ("A plaintiff cannot recover in quantum meruit if there is an express contract . . . ."). Indeed, the Nevada Supreme Court *in Suen* underscored what was evident from the *Suen* Complaints when it stated that the plaintiffs could obtain compensation under quantum meruit only "[w]hen there is *no express agreement*[.]" *Las Vegas Sands, Inc.*, 2010 WL 4673567, at *2 (emphasis added); *Mielke v. Standard Metals Processing Inc.*, 2015 WL 18886709, at *5 (D. Nev. Apr. 24, 2015). Nevada courts are not alone; it is well-established elsewhere that "a party may recover under quantum meruit only

21

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

1  when there is no express contract covering the services or materials furnished." *See, e.g.*, *Vortt*

2  *Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990); *Zawada v. Pa.*

3  *Sys. Bd. Of Adjustment, Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emps.*,

4  140 A.2d 335, 338 (Pa. 1958) ("That the two actions—quantum meruit and express contract—

5  are utterly distinct in nature is clear beyond question." (citations omitted)).

6        The original *Suen* Complaint's claim for quantum meruit always presented the

7  possibility of coverage for the purposes of defense coverage because that claim was by necessity

8  pled if there were no contract damages under an "express contract or agreement" as required by

9  the Exclusion. Indeed, the elements for a claim for quantum meruit do not require *any* contract

10  or agreement, let alone an "express" one, for LVS to have been held liable. *Suen*, 2010 WL

11  4673567, at *2.[16] Quantum meruit simply requires a service provided with the knowledge of the

12  defendant, in circumstances where the plaintiff would expect to be compensated. *Id*.[17] *See also*

13  *Cass, Inc. v. Prod. Pattern & Foundry Co.*, 2017 WL 1128597, at *19 (D. Nev. Mar. 23, 2017)

14  (plaintiff was allowed to assert claim for quantum meruit in the alternative in the event there

15  was no express contract). Nor was LVS's potential liability for the quantum meruit claim arising

16  out of "contractual liability" under an express contract as required by the Contract Exclusion.

17  Indeed, the *Suen* Action plaintiffs stated their quantum meruit claim as one for providing some

18  service to the insureds—services detailed in paragraphs 14 and 18 of the original *Suen*

19  Complaint, and included meeting with defendants on strategy, advising on presentations for

20  meeting with government officials, and introducing defendants to such officials and other

21  influential individuals. ECF No. 1-2 ¶¶ 14 and 18. These services were performed irrespective

22

23  _____

24  [16] Since Ms. Conboy missed the quantum meruit claim in the *Suen* Action, she did not consider
or analyze the elements of quantum meruit under Nevada law when she wrongly denied LVS's

25  coverage claim. Ex. 14 (Conboy Tr.) 251:1-252:4.

26  [17] *See also, e.g.*, *Indian Harbor Ins. Co. v. Satterfield & Pontikes Construction, Inc.*, 2011 WL
3502483, at *3 (S.D. Tex. Aug. 10, 2011) (because the liability for quantum meruit arose only

27  in the absence of an express contract or agreement, the policy's breach of contract exclusion did
not apply to coverage for defense costs). National Union contended that *Indian Harbor* was
distinguishable from *Suen* on the ground that the quantum meruit claim in *Indian Harbor* was

28  asserted in the alternative to the breach of contract claim (*see* ECF No. 1-6 at 2); however, that
was exactly the case here as well. *See supra* at Section II.B.; ECF No. 49-2 at APP114.

*PROOF OF SERVICE*

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

of the three faxes subsequently sent in 2001 that the plaintiffs claimed made up a "contract" in paragraphs 15-17. ECF No. 1-2 ¶¶ 15-17 and 40; *see also* ECF No. 1-3 ¶¶ 14-16 and 46.[18] And, in the Complaints, plaintiffs sought "compensation for the reasonable value of their services" rendered for their quantum meruit claim (ECF No. 1-2 ¶ 41, ECF No. 1-3 ¶ 47), not contractual liability. And while, under the law, National Union had a duty to pay LVS's Defense Costs at the outset of the case triggered by the *Suen* Complaints' allegations alone (*supra* at Section III.B.), nothing transpired in the fifteen-year *Suen* case that would have negated that initial defense obligation: plaintiffs ultimately prevailed on the alternative ground of quantum meruit because there was no "express contract or agreement" between plaintiffs and LVS, as recognized by the trial court in the jury instructions in both *Suen* Action trials and by the Nevada Supreme Court. *See supra* at Section II.B.; 2016 WL 4076421, at *4-5.[19]

Within twenty-four hours of receiving notice, National Union made the snap decision to deny coverage for *Suen* based on an exclusion for "breach of contract," and a host of other inapplicable exclusions. Ex. 1 at APP00017. National Union then sent a letter denying coverage based on an incomplete review of the *Suen* Complaint's allegations, completely missing the Complaint's third cause of action for quantum meruit, and then it simply ignored the email sent by LVS's broker representative contesting National Union's grounds for denial. *Supra* at Section II.C. And National Union has been trying to backfill that initial, incorrect evaluation for the *Suen*

---

[18] For example, in *Netherlands Insurance Co. v. Lexington Insurance Co.*, 2013 WL 2120817, at *4 (W.D. Ky. May 15, 2013), the defendant insurer (an AIG-affiliated company) argued that the plaintiff insurer could not recover under quantum meruit because "quantum meruit only applies to situations when there is no applicable contract." The court rejected the argument because quantum meruit could apply "in the alternative, meaning that if there *was no express contract* between the parties, the theory applies." *Id.* (emphasis added).

[19] Moreover, even if the *Suen* plaintiffs or the Nevada courts had couched the quantum meruit claim as one for breach of an "implied contract," that still would not be sufficient to deny coverage for Defense Costs because the Contract Exclusion requires an "*express* contract or agreement." Had National Union sought to broaden the Contract Exclusion to apply to implied contracts, it could have easily done so—as other policies provide. *See, e.g., Evanston Ins. Co. v. Rells Fire Prot. Inc.*, 2018 WL 3603066, at *2 (W.D. Wash. Apr. 4, 2018) ("The breach-of-contract exclusion applies to '[c]laims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied-in-fact contract' . . . ."); *Am. Int'l Specialty Lines Ins. Co. v. U.S. Olympic Comm.*, 219 A.D.2d 458, 458-59 (N.Y. App. Div. 1995) (finding that quantum meruit claims based on implied contract are not subject to similar contract exclusions where the exclusions did not mention implied contracts).

*PROOF OF SERVICE*

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

Action ever since, but its continued pursuit to avoid coverage has rung hollow. For example, in 2017, when National Union *did* address coverage for the quantum meruit claim,[20] but maintained the Contract Exclusion applied to that claim as well, it stated:

> Plaintiff's quantum meruit claim . . . is based entirely and exclusively on an *alleged agreement* between Las Vegas Sands and the plaintiffs for the payment of compensation in exchange for certain services. Thus, plaintiffs' quantum meruit claim is excluded under the Contract Exclusion, as it plainly arises out of, is based upon or attributable to an alleged contractual liability of Las Vegas Sands pursuant to an *alleged agreement* between the parties.

ECF No. 1-6 at 1 (emphasis added). First, in referring to precluding all liability as arising out of an "alleged agreement," National Union sidestepped both the requirement that the loss arise out of a claim for "contractual liability" and the requirement that there must be an "express contract or agreement" for the Contract Exclusion to be triggered. The Contract Exclusion's use of the words "actual or alleged" modifies the language immediately following it, *i.e.*, the "contractual liability." In other words, the Contract Exclusion applies when contractual liability is ultimately proven or alleged—as the claim for *breach of contract* alleged in the *Suen* Action. But those words do *not* modify the Contract Exclusion's requirement for an "express contract or agreement"—there still has to be an "express contract or agreement" that the "actual or alleged contractual liability" is based on, and here for quantum meruit there was none.

Second, even if National Union's attempt to broaden the scope of the Contract Exclusion beyond its plain terms were allowed, its application is still wrong under the facts of *Suen*. Contrary to National Union's contention, the claim for quantum meruit in the Complaint was not "based entirely and exclusively on an alleged agreement." ECF No. 1-6 at 1. Rather, the quantum meruit claim was based on the services rendered (including those in the Complaint's paragraph 18), and the claim existed irrespective of the 2001 faxes, and thus did not "arise out

---

[20] National Union's corporate representative, Mr. Trager, testified in this litigation that it was National Union's position that the initial 2004 denial letter *impliedly* addressed the quantum meruit claim (Ex. 16 (Trager Tr.) 115:4-116:24; *id.* 120:9-121:21), even though this assertion was contradicted by National Union's own internal documents (*supra* at Section II.C.), and Mr. Trager's own letter in 2017 that addressed each *Suen* count specifically and individually (ECF No. 1-5 at 4).

*PROOF OF SERVICE*

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

of," nor was it "based upon" or "attributable to," contractual liability under an express contract. *See, e.g.*, *Crosby Est. at Rancho Santa Fe Master Ass'n v. Ironshore Specialty Ins. Co.*, 578 F. Supp. 3d 1123, 1133 (S.D. Cal. 2022) (holding that a nearly identical contract exclusion did not apply to claims that "could exist irrespective of the [express agreement] between the parties"); *see also Lifespan Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 59 F. Supp. 3d 427, 452 (D.R.I. 2014) ("National Union's Exclusion 4(k) does not apply to a breach of fiduciary duty claim, even if it occurs within the context of a contract or agreement."). Here, the quantum meruit claim did not arise out of an express contract; it exists only in the absence of the contract claim.

While National Union has criticized LVS's interpretation of the Contract Exclusion as "narrow" (ECF No. 1-6 at 1), that is the proper analysis under Nevada law. Nevada law holds that exclusions are construed narrowly and apply only when the insurer's interpretation is the only reasonable one, and policies are interpreted "so as to afford the greatest possible coverage to the insured." *Casino W.*, 329 P.3d at 616. And this is especially the case in the context of a defense obligation, where coverage is triggered if the claim is even potentially or arguably covered, with any doubts resolved in favor of obligating the insurer to defend. *Supra* at Section III.B. At a minimum, LVS's interpretation that the Contract Exclusion does not apply to the quantum meruit claim is reasonable, and therefore, National Union had a duty to pay all the Defense Costs incurred for *Suen* for the length of the case until the Policy limit was exhausted.

However, even if the quantum meruit claim were precluded by the Contract Exclusion (and it is not), there is no dispute that the *Suen* plaintiffs' claim for fraud was a covered "Wrongful Act" under the Policy and does not fall within the Contract Exclusion. Even in 2017, National Union's letter conceded that the Contract Exclusion did not unambiguously apply to the fraud count that was potentially covered, and it asked LVS to submit copies of defense invoices for work done to defend that specific claim (which was effectively impossible), before LVS realized that National Union was not going to pay for anything. ECF No. 1-6 at 3. Accordingly, LVS is entitled to coverage for its Defense Costs through at least November 2010, when the Nevada Supreme Court affirmed the trial court's dismissal of the fraud count.

*PROOF OF SERVICE*

2.      **The Illegal Profit Exclusion Does Not Apply To Preclude Coverage For The *Suen* Action**

While National Union's decades-long denial has been based on the Contract Exclusion, National Union has cited the Illegal Profit Exclusion 4(a) in the Policy as well. ECF No. 1-4 at 3; ECF No. 1-5 at 3-4. This Exclusion, however, does not get National Union any closer to avoiding coverage. The Illegal Profit Exclusion applies to any Claim for Loss "arising out of, based upon or attributable to the gaining of any profit or advantage" to which the insured was "not legally entitled," and requires a "final adjudication . . . establish[ing]" that such illicit conduct took place. *Supra* at Section II.A. That never happened in *Suen*, nor would it have impeded National Union's obligation to pay Defense Costs on a contemporaneous basis as the Policy required.

Indeed, courts have refused to broaden the intended scope of the Illegal Profit Exclusion as National Union attempts to do here, stating that the Exclusion's purpose is "clear—to prevent the looting of corporate assets by directors and officers and then, after being forced to remit the funds, turning to an insurer seeking indemnification for their wrongful acts under a directors and officers policy." *Nicholls v. Zurich Am. Ins. Grp.*, 244 F. Supp. 2d 1144, 1160 (D. Colo. 2003); *see also Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 376, 400 (D. Del. 2002) (analyzing a nearly identical National Union exclusion 4(a) and finding that it "would be applicable in cases of theft, such as insider trading, [where] an element of the cause of action that must be proved requires that the insured gained a profit or advantage to which [it] was not legally entitled" but is inapplicable where the gain might be incidental to the conduct). The Ninth Circuit also has rejected a similarly broad reading of the exclusion beyond this intended purpose to apply to the gaining of any economic benefit. In *Research Corp. v. Westport Insurance Corp.*, 289 F. App'x 989, 991 (9th Cir. 2008) (applying Arizona law), the court considered an exclusion for "any 'claim', or 'loss' alleging or 'arising out of' . . . [a]n 'insured's' unjust enrichment, obtaining profit, or advantage to which the 'insureds' were not entitled." The court held that applying the exclusion as broadly as the insurer argued would "amount to illusory coverage" because "no coverage [would be] afforded under the policy for any economic damages," thus "eviscerat[ing] the policy's essential coverage for all losses . . . from civil claims." *Id.* at 993.

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

*PROOF OF SERVICE*

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

Corporate looting and insider trading were not the allegations here. The *Suen* plaintiffs alleged that LVS breached a contract, or that they had performed services for which they believed they were entitled to reasonable value under quantum meruit. The plaintiffs sought "compensation" from LVS. ECF No. 1-2 ¶ 41 and ECF No. 1-3 ¶ 47. At no point was there any charge that LVS obtained a profit or advantage to which it was not legally entitled, nor was there any final adjudication establishing the same. The factfinders in *Suen* that held for the plaintiffs on quantum meruit did not find that LVS was "not legally entitled" to keep a profit or advantage that it had to return; rather, they found that LVS should separately *compensate* the *Suen* plaintiffs for their services. The Nevada Supreme Court repeatedly said that the *Suen* plaintiffs sought and then were awarded "compensation." *Suen*, 2010 WL 4673567, at *1, *2, *4, *8; *Suen*, 2016 WL 4076421, at *5 ("relying solely on the success fee does not ensure reasonable compensation" for *Suen* plaintiffs' services). Quantum meruit is not a claim for the return of "any profit or advantage to which [a defendant] was not legally entitled," but rather a claim for "reasonable compensation" where "there is no express agreement." *Suen*, 2010 WL 4673567, at *2.

The Illegal Profit Exclusion does not apply to the *Suen* Action because the factual predicates for its application are absent. That is why National Union in 2017—after the second and last Nevada Supreme Court decision—still acknowledged that, at a minimum, the fraud cause of action was potentially covered. Construing the Illegal Profit Exclusion narrowly, as required under Nevada law, the Exclusion does not retroactively apply to excuse National Union from its duty to advance LVS's Defense Costs for *Suen*, and it does not ultimately apply to National Union's duty to cover the settlement.

## C.    LVS's Defense Costs Exceeded the Policy Limit And Were Reasonable And Necessary To Its Defense Of The *Suen* Action

National Union was obligated to contemporaneously pay LVS's and Messrs. Adelson and Weidner's Defense Costs as they were incurred during *Suen*, based solely on the allegations in the *Suen* Complaints, beginning *in October 2004*. Instead, National Union breached that duty, denied coverage, and refused to pay any Defense Costs for the next fifteen years in the *Suen* Action, even after acknowledging in 2017 that, at a minimum, the fraud count was not strictly

*PROOF OF SERVICE*

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

1    excluded by the Contract Exclusion. With no insurance, LVS prudently defended *Suen*, and its

2    costs were reasonable and necessary to that defense.

3          Courts have held that a policyholder's fees and costs are presumed to be reasonable, and

4    the insurer bears the burden of proving otherwise when the insurer has wrongly denied coverage

5    and left the policyholder to defend against the underlying claim on its own, and thus has every

6    financial incentive to minimize its costs. *See, e.g.*, *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d

7    1069, 1076 (7th Cir. 2004) (finding "where there are market incentives to economize, there is

8    no occasion for a painstaking judicial review" of defense costs); *Chicago Title Ins. Co. v.

9    F.D.I.C.*, 172 F.3d 601, 606 (8th Cir. 1999) ("an insurer's ability to dispute the reasonableness

10   of attorney fees is diminished when it has improperly declined a tender of defense" (quotation

11   omitted)); *Arenson v. Nat'l Auto. & Cas. Ins. Co.*, 310 P.2d 961, 967-68 (Cal. 1957) ("An

12   insurance company may not wrongfully refuse to defend its insured and thus force the insured

13   into the position of having to engage outside counsel, and then, because the defense was not

14   handled in a manner to the liking of the [insurer], refuse to hold the insured harmless against

15   payment of fees for all services reasonably performed in such defense.").[21]

16         Assuming a showing of reasonableness is necessary, under Nevada law, the Court has

17   discretion in choosing the "method upon which a reasonable fee is determined," such as a

18   lodestar amount or a contingency fee, subject only to "reason and fairness." *Shuette v. Beazer

19   Homes Holdings Corp.*, 124 P.3d 530, 548-49 (Nev. 2005) (quotation omitted). Though the

20   Court is not limited to one specific approach, it must conduct its analysis by "considering the

21   requested amount in light of the [*Brunzell*] factors," which include "the advocate's professional

22   qualities, the nature of the litigation, the work performed, and the result." *Id.*

23         LVS's Defense Costs are reasonable under the *Brunzell* factors. First, *Suen* was one of

24   the longest and most complex civil actions in Nevada's history, a fifteen-year litigation that

25   involved years of discovery, depositions, and motion practice, two trials and the start of a third,

26

27   [21] *See also Columbus McKinnon Corp. v. Travelers Indem. Co.*, 367 F. Supp. 3d 123, 155 n.15
     (S.D.N.Y. 2018) ("[I]f Defendants are required to reimburse Plaintiff for defense costs because
28   of Defendants' breach of the duty to defend, then the fees incurred by Plaintiff must be presumed
     reasonable, and the burden to demonstrate 'unreasonableness' will lie with Defendants.").

*PROOF OF SERVICE*

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

and two separate appeals to the Nevada Supreme Court. Second, LVS's defense counsel obtained several favorable outcomes in the *Suen* Action by obtaining dismissals of claims (including the fraud claims against LVS's executives), and getting affirmances and reversals at the Nevada Supreme Court. Third, the plaintiffs in *Suen* were seeking hundreds of millions of dollars in damages. Fourth, LVS had numerous layers of in-house attorneys, including LVS's general counsel, associate general counsel, and assistant general counsel, review the defense invoices in the *Suen* Action for reasonableness and necessity before they were paid, and they disputed certain amounts that they determined were unreasonable or unnecessary. *See* Exs. 26, 27, 28; *see also* Ex. 24 (Batarseh Tr.) 73:25-74:16.[22] LVS incurred and paid at least approximately $34,176,225.49 in Defense Costs and related expenses for *Suen*, of which LVS has been able to produce the defense invoices and proofs of payment for $33,072,714.30. Ex. 13.[23] All of the Defense Costs in the *Suen* Action were both reasonable and necessary. However, at the very least, $20 million of LVS's Defense Costs were reasonable and necessary for *Suen*, which National Union cannot dispute. As such, the Policy limit is exhausted by coverage for LVS's Defense Costs alone.

### D.   To The Extent The Policy Limit Is Not Exhausted By Defense Costs, The *Suen* Settlement Exhausts Any Remaining Limit

Even if the Policy were not exhausted by Defense Costs, the settlement in *Suen* does exhaust the limit. *See* Ex. 12. The duty to indemnify provides policyholders with financial protection against judgments and settlements. *See Century Sur. Co. v. Andrew*, 432 P.3d 180, 183 (Nev. 2018); ECF No. 49-1 § 2(k). As opposed to the mere "potential for coverage" standard for defense coverage, the "duty to indemnify arises when an insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy. In other

---

[22] The reasonableness and necessity of LVS's Defense Costs in *Suen* is discussed in more detail in the Rebuttal Expert Report of Kirk Lenhard, dated July 31, 2023. Ex. 29.

[23] The proofs of payment include detailed CounselLink records, LVS processing sheets, copies of checks, ACH records, and bank statements that include defense counsel's name, defense counsel's invoice number, the purchase order or reference number, the payment reference or check number, the originating bank account number, the pay code description (*e.g.*, "CHECK," "ACH," or "WIRE"), the payment month and year, the total dollar amount, the trace number or bank reference number, and the bank statement date. *See* ECF No. 62 at 9-10.

29

*PROOF OF SERVICE*

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com

words, for an insurer to be obligated to indemnify an insured, the insured's activity and the resulting loss or damage must actually fall within the policy's coverage." *Century Sur. Co. v. Casino W., Inc.*, 2010 WL 762188, at *5 (D. Nev. Mar. 4, 2010), *aff'd*, 578 F. App'x 720 (9th Cir. 2014) (quotation omitted). Here, LVS settled the *Suen* Action for less than the amount that the court awarded in the second trial for Suen six years earlier, thus minimizing the potential exposure LVS faced. *See supra* at Section II.B. National Union has never challenged the reasonableness of LVS's settlement, nor could it in light of LVS's prudent business decision to finally end the fifteen-year litigation prior to its third trial. Additionally, for the reasons stated above, the only remaining claim in *Suen* at the time of settlement was quantum meruit, and no exclusion applies to that claim. Accordingly, to the extent that the Court finds that the $20 million Policy limit is not exhausted by reasonable and necessary Defense Costs, the *Suen* settlement is still covered, and any remaining coverage under the Policy is exhausted.

## V.     **CONCLUSION**

For the foregoing reasons, LVS respectfully requests that the Court grant this Motion for partial summary judgment on LVS's Second and Third Causes of Action, ruling that National Union breached its obligations under the Policy by failing and refusing to pay the Defense Costs and settlement incurred for the *Suen* Action.

DATED this 29th day of September, 2023.

KEMP JONES, LLP

 _/s/ Michael Gayan_____
J. Randall Jones, Esq. (#1927)
Michael J. Gayan, Esq. (#11135)
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169

Robin L. Cohen, Esq. (*Admitted pro hac vice*)
Marc T. Ladd, Esq. (*Admitted pro hac vice*)
Alexander M. Sugzda, Esq. (*Admitted pro hac vice*)
Jason D. Meyers, Esq. (*Admitted pro hac vice*)
COHEN ZIFFER FRENCHMAN
& MCKENNA LLP
1325 Avenue of the Americas
New York, New York 10019

*PROOF OF SERVICE*

*Attorneys for Plaintiffs Las Vegas Sands, Inc.*
*n/k/a Las Vegas Sands, LLC & Las Vegas Sands*
*Corp.*

## PROOF OF SERVICE

I hereby certify that on the 29th day of September, 2023, I served a true and correct copy of the foregoing **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** via the United States District Court's CM/ECF electronic filing system to all parties on the e-service list.

Paul R. Hejmanowski (#94)
Charles H. McCrea (#104)
HEJMANOWSKI & McCREA LLC
520 South Fourth Street, Suite 320
Las Vegas, Nevada 89101

Michael J. Hartley (Admitted Pro Hac Vice)
Courtney A. Palko (Admitted Pro Hac Vice)
777 South Figueroa Street, Suite 3800
Los Angeles, California 90017

*Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, Pa.*
*Attorneys for Plaintiff/Counterclaim Defendants*

/s/ Pamela McAfee
An employee of Kemp Jones LLP

KEMP JONES LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
(702) 385-6000 Fax (702) 385-6001
kjc@kempjones.com